IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>HOVENSA L.L.C.<br><br>DEFENDANT. | CASE NO. 1:11-CV-00006 |

**MEMORANDUM IN SUPPORT OF MOTION FOR INFORMAL STATUS CONFERENCE**

Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") moves for an informal status conference with the Magistrate Judge in this matter with a view towards seeking the Court's assistance in resolving disputes between Port Hamilton and the United States of America ("USA") that are preventing the case from moving forward.

## BACKGROUND

**A. HOVENSA AGREES TO THE CONSENT DECREE.**

This case has its origins in a 2011 consent decree ("the Consent Decree") entered into between HOVENSA L.L.C. ("HOVENSA"), the United States of America ("USA") and the Government of the Virgin Islands ("GVI"). At the time, HOVENSA operated the oil refinery on the south shore of St. Croix.

The Consent Decree was entered twelve years ago—on June 7, 2011—after the USA brought an action against HOVENSA for alleged violations of the Clean Air Act. The

1

GVI sought to intervene based upon allegations that HOVENSA had violated requirements of the "Territorial Implementation Plan" that the Virgin Islands implements under the Clean Air Act as well as for allegations of violations of Virgin Islands environmental laws. Rather than litigate the issues, HOVENSA, the USA and the GVI reached an agreement for the entry of the original consent decree in this action.

Seven months after entering into the Consent Decree, HOVENSA announced that it was idling the refinery.[1] There were no substantive actions taken in this case until 2020 when the parties sought a modification to the Consent Decree.

The Consent Decree included a clause that governed a transfer of ownership of the refinery from HOVENSA:

> HOVENSA shall condition any transfer, in whole or in part, of ownership of, operation of, or other interest (exclusive of any non-controlling, non-operational shareholder or membership interest) in the Refinery upon the execution by the transferee of a modification to this Consent Decree, which makes the terms and conditions of this Consent Decree applicable to the transferee.

Doc. No. 6, ¶7.

There was no requirement in the Consent Decree that provided for *subsequent* transfers of ownership after a transfer from HOVENSA to a new entity.

**B. LIMETREE BAY ENTERS THE PICTURE.**

On September 15, 2015, HOVENSA filed for bankruptcy in the United States

---

[1] Doc. No. 42, First Modification of the Consent Decree ("First Modification") at 1 (third Whereas clause).

District Court for the District of the Virgin Islands, Bankruptcy Division (the "V.I. Bankruptcy Court").[2] On December 1, 2015, the V.I. Bankruptcy Court approved the sale of, *inter alia*, the refinery assets to Limetree Bay Terminals, LLC ("LBT").[3] That Order[4] provided that it did not modify or supersede HOVENSA's obligations under the Consent Decree[5] but was otherwise silent as to any obligations of LBT related to the Consent Decree.

Following the approval of the sale, HOVENSA and LBT entered into an Asset Purchase Agreement ("2016 APA") that obligated HOVENSA and LBT to attempt to either terminate the Consent Decree without modification or negotiate a "Limited Consent Decree Modification" with the USA and the GVI.[6] If the parties were not successful in negotiating either of the above, then LBT was required by the 2016 APA to execute a modification to the Consent Decree by which LBT "assume[d] the terms, conditions, obligations and liabilities" of HOVENSA under the Consent Decree and released HOVENSA from such terms, conditions, obligations and liabilities.[7] With this final "option," HOVENSA met its obligation under the Consent Decree to ensure that

---

[2] Doc. No. 42, First Modification, at 1 (third Whereas clause).

[3] Doc. No. 42, First Modification, at 1 (fourth Whereas clause).

[4] Doc. No. 394 in the V.I. Bankruptcy Court, Case No. 1:15-bk-10003-MFW.

[5] Doc. No. 394 in the V.I. Bankruptcy Court, Case No. 1:15-bk-10003-MFW at 26.

[6] Exhibit A, extract from 2016 APA, ¶7.4(c).

[7] Exhibit A, 2016 APA, ¶7.4(c).

the obligations under the Consent Decree were transferred to a new owner.

For reasons that are not clear, a First Modification to the Consent Decree that fulfilled LBT's obligations under the 2016 APA was not executed until the Summer of 2020 and filed with the Court on August 25, 2020.[8] The First Modification was based upon the third "option" under the 2016 APA. That is, the Consent Decree was not terminated and LBT was apparently unable to persuade the USA and the GVI to enter into the Limited Consent Decree Modification; consequently, LBT was required to substitute for HOVENSA and assume all of HOVENSA's obligations under the Consent Decree. The First Modification therefore made both LBT and a related company that had subsequently obtained title over the refinery, Limetree Bay Refining, LLC ("LBR") "Parties to the Consent Decree";[9] but, more importantly the First Modification specified (1) that the terms and conditions of the Consent Decree were applicable to both LBT and LBR[10] and (2) that LBT and LBR "shall be substituted for HOVENSA as the Defendant, for all provisions of the Consent Decree, including all rights, liabilities and obligations of HOVENSA, except as set forth in this First Modification."[11]

The parties did not request entry of the First Modification until April 26, 2021.[12] In

---

[8] Doc. No. 12.

[9] Doc. No. 12, ¶4.

[10] Doc. No. 12, ¶1.

[11] Doc. No. 12, ¶5.a.

[12] Doc. No. 21. (The parties had attempted to request entry of the modification on April 8, 2021 (Doc. No. 19) but the filing was not accepted, see text "Notice of Corrected Docket Entry" entered on April 26, 2021.)

a press release accompanying the motion for entry of the First Modification, EPA acknowledged that the First Modification "will become effective if the modification is approved by the court. Until that time, the 2011 consent decree remains in effect."[13]

During the months preceding the motion for entry of the First Modification, LBR recommended refining operations. Unfortunately, due to numerous operational mistakes, LBR's operations resulted in a series of releases of regulated pollutants that exceeded the emissions limits authorized under LBR's Clean Air Act permits.[14] These releases began on February 4, 2021 and continued intermittently through May 12, 2021. Faced with four class actions resulting from these events and a Clean Air Act Section 303 Order to shut down the refinery for 60 days, LBR filed for bankruptcy in the Bankruptcy Court for the Southern District of Texas ("SD/TX Bankruptcy Court") on July 12, 2021.

**C. PORT HAMILTON ENTERS THE PICTURE.**

On December 21, 2021—while the motion for entry of the First Modification was still pending—the SD/TX Bankruptcy Court approved the sale of LBR's assets to Port Hamilton.[15] Paragraph 11 of the Sale Order specified:

> Furthermore, notwithstanding anything in this Order or in the APA to the contrary, the Purchaser must become *party*

---

[13] Exhibit B, EPA press release dated April 8, 2021, at 2.

[14] These events are summarized in *Boynes v. Limetree Bay Ventures, LLC*, No. CV 2021-0253, 2023 WL 3166603, at *1–2 (D.V.I. Apr. 28, 2023).

[15] "2021 Sale Order," Doc. No. 977 in Case No. 21-32351 in the SD/TX Bankruptcy Court.

5

>*to* (i) the Consent Decree as modified by the First Modification and Second Modification in *United States and the United States Virgin Islands v. HOVENSA L.L.C.*, Civ. No. 1:11-cv-00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree"), and (b) the Joint Stipulation in *United States v. Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-00264 *(as each may be amended with the mutual consent of the parties)*; provided, that Purchaser shall not become liable for any obligations, other than air monitoring obligations, under such Consent Decree or Joint Stipulation that do not relate to property or units purchased or to be operated by Purchaser pursuant to this Sale Order by reason of so becoming a party to such Consent Decree or Joint Stipulation. Nothing in this Order or the Sale Agreement (a) prevents the U.S. Environmental Protection Agency or other agency from issuing any order or taking other action under applicable nonbankruptcy law, or (b) modifies the Consent Decree, the Joint Stipulation, or any other applicable environmental, health and safety, or police and regulatory law.

Sale Order, ¶11 (emphasis added).

In a fashion similar to the bankruptcy sale in 2016, the Sale Order was followed by an Asset Purchase Agreement between the debtor (LBR) and the purchaser (Port Hamilton).[16] In stark contrast to the 2016 Asset Purchase Agreement between HOVENSA and LBT—and consistent with the fact that the Consent Decree only imposed a condition upon the *initial* transfer of ownership from HOVENSA to a new owner— the 2022 Asset Purchase Agreement ("2022 APA") did not impose any obligation upon Port Hamilton with respect to the Consent Decree. Presumably

---

[16] The 2021 Sale Order defined the "Purchaser" as both Port Hamilton and West Indies Petroleum Limited. 2021 Sale Order at 2. However, West Indies Petroleum Limited never acquired any of the refinery assets. It's limited involvement in the instant controversy is discussed *supra.*

because the Consent Decree did not require subsequent purchasers to assume obligations under the Consent Decree, the 2022 APA did not impose such a requirement upon Port Hamilton. Thus, the only obligation relating to the Consent Decree imposed upon Port Hamilton was the 2021 Sale Order requirement that it become "a party" to the Consent Decree. Port Hamilton was under no obligation to become a "party defendant" or to undertake LBR's obligations under the Consent Decree.

On May 20, 2022, six months after entering the 2021 Sale Order, the SD/TX Bankruptcy Court entered an order confirming LBR's Chapter 11 bankruptcy plan, which provided that LBR "survive[d]" as an entity named "Transition Refinery Entity."[17] Unlike the 2021 Sale Order approving the sale to Port Hamilton, the Confirmation Order expressly provided "[t]he Transition Refinery Entity shall be fully bound by all provisions of the Consent Decree and the Joint Stipulation and shall cooperate in the substitution of the Transition Refinery Entity as *a named defendant* in both cases."[18]

Nine days after the 2021 Sale Order was entered, this Court approved the First Modification on December 30, 2021.[19] And, as EPA acknowledged in its press release (Exhibit B), the First Modification did not become effective until it received such

---

[17] Findings of Fact and Conclusions of Law, ¶G.e, Doc. No. 1454 ("Confirmation Order") in Case No. 21-32351 in the SD/TX Bankruptcy Court.

[18] Confirmation Order, ¶31.

[19] Doc. No. 42.

7

approval.

### D. PORT HAMILTON'S OBLIGATIONS WITH RESPECT TO THE CONSENT DECREE.

So far, Port Hamilton's only obligation is to become "a party" to the Consent Decree. However, the Sale Order also authorized LBR to assign its Operating Agreement with the GVI to Port Hamilton.[20] In a May 18, 2022 Order, the SD/TX Bankruptcy Court ordered that the Operating Agreement "shall be assumed and assigned from" LBR effective upon the receipt by the GVI of funds drawn upon a letter of credit.[21] In late Summer 2022, the GVI received the first draw on the letter of credit and thus Port Hamilton substituted for LBR in the Operating Agreement on that date.

The Operating Agreement imposes the following obligation regarding the Consent Decree:

> (B) Refinery Operator shall use *commercially reasonable efforts* to obtain and maintain all necessary approvals in order to restart Refinery Operations as soon as commercially reasonable, including approvals from the U.S. Department of Justice ("USDOJ"), the U.S. Environmental Protection Agency ("EPA"), the U.S. Virgin Islands Department of Planning and Natural Resources ("DPNR"), and the District Court for the District of the U.S. Virgin Islands District Court") *to, among other things, add Refinery Operator as a named party defendant to the Clean Air Act Consent Decree and modify the Clean Air Act Consent Decree to restart Refinery Operations.* Such efforts with regard to the Consent Decree shall include, but not be limited to, (i) working with the Government (and, if applicable, third parties) and negotiating with USDOJ, EPA, and DPNR the terms and conditions of one or more filings to add Refinery

---

[20] 2021 Sale Order, ¶15.

[21] Doc. No. 1425 in SD/TX Bankruptcy Court.

> Operator as a named party defendant to the Clean Air Act Consent Decree and to so modify the Clean Air Act Consent Decree (and any proposed order(s) modifying the Clean Air Act Consent Decree), (ii) cooperating with USDOJ, EPA, and DPNR and taking such actions necessary to finalize and lodge with the District Court such filings and proposed orders, (iii) cooperating with and assisting as reasonably necessary USDOJ, EPA, and DPNR in responding to any public comments, and (iv) filing of any papers, provision of testimony, participating in any public meetings or hearings or court proceedings, or taking other actions reasonably necessary to support and seek District Court approval and entry of such modification.

Operating Agreement, §4.1(B) (emphasis added).[22]

Consequently, unlike the obligation imposed upon LBR in the 2016 APA, Port Hamilton is not required to become a "named party defendant" to the Consent Decree unless its "commercially reasonable" negotiations lead to a modification of the Consent Decree that will lead to a restart of refinery operations.

### THE CURRENT DISPUTE BETWEEN THE USA AND PORT HAMILTON

Port Hamilton has always expressed a willingness to join the Consent Decree as a party defendant provided that (1) certain terms of the Consent Decree are modified so that it is not placed in immediate breach of the Consent Decree by the past failures of LBR; (2) any deadlines that began to run before it purchased the refinery assets, if applicable, are extended to give it a commercially reasonable opportunity to comply with the deadlines; and (3) the modification will allow the restart of the refinery.

There are two bones of contention between Port Hamilton and the USA. The first

---

[22] *See* Exhibit C, excerpt from Operating Agreement.

concerns the timing of the addition of a flare gas recovery system to the FCCU Low Pressure Flare (a/k/a/ "Flare 8") at the refinery. The First Modification requires that if, during a specified time period during the first year after Restart of Flare 8, certain emission levels are exceeded, then "Limetree Bay" must install and operate "by not later than two years from the end of the six-month period in which the gas quantity is exceeded and" a certain report is due, a flare gas recovery system for Flare 8. Doc. No. 42, ¶50B (a)(i). As noted, the First Modification did not become effective until December 30, 2021. Flare 8 has not been restarted since December 30, 2021 and therefore has not exceeded any emissions levels since that date.

The USA, however, insists that LBR's restart of Flare 8 in early 2021 exceeded the specified emissions levels and therefore the "clock started ticking" on an obligation to install the flare gas recovery system.[23] The USA ignores the fact that the First Modification was not effective at the time of LBR's restart and thus there was no judicially-binding obligation at the time of LBR's exceedances at Flare 8 to trigger an obligation upon LBR to install a flare gas recovery system.[24]

The second bone of contention is related to the USA's insistence that the flare gas recovery system must be installed by March 2023 (an impossibility). Even if the USA's

---

[23] Upon information and belief, EPA calculates the two-year period for installation of the flare gas recovery system as ending in March 2023.

[24] Arguably, despite the lack of a judicially-binding obligation to install the flare gas recovery system, LBR was *contractually* obligated to comply with its agreement to install the flare gas recovery system since it agreed to the entry of the First Modification. But LBR's contractual obligations were discharged in the bankruptcy and Port Hamilton did not agree to assume that contractual obligation.

argument were correct, on November 16, 2022, the USA issued a "determination" that requires Port Hamilton " to apply for and receive a final and effective PSD permit prior to restarting the Refinery or beginning actual construction as defined in 40 CFR 52.21(b)(11).[25] The referenced Code of Federal Regulations citation provides that "[b]egin actual construction means, in general, initiation of physical on-site construction activities *on an emissions unit which are of a permanent nature*. Flare 8 is an emissions unit and the USA has thus prohibited Port Hamilton from initiating construction on the flare gas recovery system at the same time that it insists that the Consent Decree requires it to initiate and complete construction of the flare gas recovery system.[26]

Port Hamilton's position for resolution of the dispute is as follows:

1. There is no obligation to install a flare gas recovery system because there has been no exceedance of emissions at Flare 8 since the First Modification was entered;

---

[25] Exhibit D, November 16, 2022 Determination (without attachments). The 2022 Determination is the subject of an administrative challenge pending in the U.S. Court of Appeals for the Third Circuit in *Port Hamilton Refining and Transportation, LLLP v. Environmental Protection Agency*, Case No. 23-1094. The Third Circuit heard oral argument in that matter on May 24, 2023 and the parties await a decision on Port Hamilton's challenge.

[26] PSD review is a complex process the requires, *inter alia*, modeling emissions and then submitting the model results and construction plans to EPA for approval before construction can commence. Even if expedited, this will take a minimum of two years. Once a PSD permit is issued, Port Hamilton would then have to design and engineer the flare gas recovery system and deliver it to the refinery for final installation and commissioning. Overall, the process from design to commissioning a flare gas recovery system is estimated to take two years.

2. Port Hamilton's only obligation at this time is to become "a party" to the Consent Decree without assuming any obligations of LBR. (Transition Refining Entity *is* required to join the Consent Decree as a substitute for LBR and be subject to LBR's *future*[27] obligations under the Consent Decree.)

3. The USA has made it commercially unreasonable for Port Hamilton to join the Consent Decree as a party defendant and thus Port Hamilton has fulfilled its obligations under the Operating Agreement and is not obligated to assume any obligations under the Consent Decree.

Despite the above, Port Hamilton is willing to join the Consent Decree as a "party defendant," including assuming the *future* obligations of LBR, *if* it can negotiate a commercially reasonable modification to the Consent Decree that will allow it to restart the refinery and have a reasonable opportunity to comply with the Consent Decree. Further, the Consent Degree should also be modified to break it into separate decrees based upon the party defendant so that the responsibilities for compliance are clearly spelled out. For example, LBT has no control over the refinery and cannot very well be expected to install a flare gas recovery system if in the future Port Hamilton triggers the requirement for installation of a flare gas recovery system (or if it negotiates a timetable for the installation a flare gas recovery system as part of a negotiated modification to the Consent Decree). Likewise, the Environmental Response Trust has independent obligations unrelated to LBT or Port Hamilton and logically

---

[27] The LBR bankruptcy eliminated all past obligations of LBR.

should be subject to a consent decree that is strictly between it and USA/GVI. In the absence of the USA's willingness to negotiate such terms, Port Hamilton will not execute any agreement that requires it to join the Consent Decree unless such agreement makes it clear that it is joining "as a party but not as a party defendant and without assuming any obligations of a party defendant."

### REQUEST FOR INFORMAL CONFERENCE

The parties are at loggerheads on these issues. While the issues can certainly be raised by motion practice, Port Hamilton believes that it is in the best interests of all, including the environment of St. Croix, to explore avenues to resolving the issues without motion practice or, alternatively, creating a framework/schedule for presenting the issues to the Court for expeditious resolution. Thus, Port Hamilton respectfully requests that the Magistrate Judge should schedule this matter for an informal conference. A proposed order is attached.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: June 5, 2023

By: Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

13