EXECUTION COPY

AMENDED AND RESTATED

ASSET PURCHASE AGREEMENT

BY AND AMONG

LIMETREE BAY TERMINALS, LLC,

LIMETREE BAY HOLDINGS, LLC,

HOVENSA L.L.C.,

AND

HESS OIL VIRGIN ISLANDS CORP.

DATED JANUARY 4, 2016

Americas 90921623

**Exhibit A**

"**Business Intellectual Property**" shall mean all rights to Intellectual Property that are owned by Seller, other than the Excluded Intellectual Property.

"**Business IT Assets**" shall mean all rights to Information Technology that are owned by Seller, other than the Excluded IT Assets.

"**Business Real Property**" shall mean the Purchased Real Property and the Leased Submerged Lands, in each case together with all easements, appurtenances, rights and leases, and other hereditaments appurtenant to such land and all the estates and rights of Seller in and to such land.

"**Charter Agreements**" shall mean, with respect to each Tug Boat, the applicable Contract of Bareboat Charter Party, dated as of October 30, 1998, by and between Amerada Hess Shipping Corporation and Seller, as modified by the applicable Novation Agreement, dated as of July 20, 2001, by and among Amerada Hess Shipping Corporation, Seller and HOVIC.

"**Claim**" shall have the meaning assigned to such term under section 101(5) of the Bankruptcy Code.

"**Code**" shall mean the United States Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, as mirrored in the U.S. Virgin Islands.

"**Concession Agreement**" shall mean that certain agreement by and between the USVI Government and HOVIC, dated and approved by the Legislature of the Virgin Islands September 1, 1965, and amended, supplemented and clarified at various times by mutual agreement of the parties, as amended and extended by the Extension and Amendment Agreement, dated April 24, 1981 and approved by the Legislature of the Virgin Islands May 7, 1981, as further amended and extended by the Restated Second Extension and Amendment Agreement, dated July 27, 1990 and approved by the Legislature of the Virgin Islands on August 22, 1990, as further amended by the Technical Clarifying Amendment to Restated Second Extension and Amendment Agreement, dated November 17, 1993 and approved by the Governor and the Legislature of the Virgin Islands, as further amended and extended by the Third Extension and Amendment Agreement, to which PDVSA VI is added as a party, dated April 15, 1998 and approved by the Legislature of the Virgin Islands on May 18, 1998, as further amended by the Fourth Amendment Agreement.

"**Confidentiality Agreement**" shall mean that certain Confidentiality Agreement by and between Seller and ArcLight Capital Partners, LLC, dated April 24, 2015.

"**Consent**" shall mean any authorization, approval, consent, ratification, negative clearance, waiver, notice or filing, or a Final Order of the Bankruptcy Court that deems, or renders unnecessary, the same.

"**Consent Decree**" shall mean the Consent Decree entered on June 7, 2011 in the United States District Court of the Virgin Islands in the matter of <u>United States of America, and United States Virgin Islands v. Hovensa L.L.C.</u> (Civ. No.: 1:11-cv-00006).

(xii)  make or change any election or accounting method with respect to Taxes, file any amended Return, enter into any closing agreement, Tax indemnity agreement, Tax sharing agreement or other similar agreement, settle or compromise any material Tax claim or assessment, consent to an extension or waiver of the limitations period applicable to any Taxes, or make any voluntary Tax disclosure or amnesty or similar filing, in each case, to the extent such change, filing, agreement, settlement or compromise, consent, disclosure, amnesty or similar filing would result in a Lien (other than a Permitted Lien) on the Purchased Assets, adversely affect the Business, or result in Purchaser or its Affiliates becoming liable for such Taxes; or

(xiii)  authorize any of the foregoing or commit or agree to do any of the foregoing.

(c)  Notwithstanding anything to the contrary contained in this Agreement, the Parties acknowledge and agree that, effective as of the Closing, HOVIC and Seller, as applicable, shall terminate or cause to be terminated each of the Charter Agreements.

7.3  <u>Employee Relations and Benefits</u>.  Prior to the Closing Date, Seller shall make each Hovensa Consultant available to interview with Purchaser or its Affiliates for potential employment on terms and conditions as determined by Purchaser.  Prior to the Closing Date, Purchaser may offer employment to any Hovensa Consultant upon such terms and conditions it determines appropriate.  Nothing expressed or implied herein shall confer upon any Person, including any past or present employee or consultant of Seller, or his or her Representatives, beneficiaries, successors and assigns, any rights or remedies of any nature, including, any rights to continued employment or engagement with Seller or Purchaser or any of their respective Subsidiaries or any of their respective successors or Affiliates.

7.4  <u>Efforts to Close</u>.  (a) Except as otherwise provided in this <u>Section 7.4</u>, the Parties shall, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equityholders to, cooperate and use their respective commercially reasonable efforts to take, or cause to be taken, all appropriate action, and to make, or cause to be made, all filings necessary, proper or advisable under applicable Laws and to consummate and make effective the transactions contemplated by this Agreement, including their respective commercially reasonable efforts to obtain, prior to the Closing Date, all Permits, Consents and Orders of Governmental Entities as are necessary for consummation of the transactions contemplated by this Agreement and to fulfill the conditions to consummation of the transactions contemplated hereby set forth in <u>Section 8.1</u>, <u>Section 8.2</u> and <u>Section 8.3</u>; <u>provided</u>, that (w) no Party or its Affiliates shall be required to make any concessions that would adversely affect its business or be materially more burdensome to such Party (including to amend any Contract to increase the amount payable thereunder, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party or Governmental Entity, pay any amount or bear any other incremental economic burden to obtain any such Permit, Consent or Order), (x)  no Party or its Affiliates shall incur any expense that would be payable or otherwise borne by the other Party or such other Party's Affiliates without the consent of such other Party, (y) Seller shall not make any concessions that would purport to bind the Business from and after the Closing or be an Assumed Liability and (z) Purchaser shall not make any concessions that would purport to bind

Seller or any of its Affiliates (the conditions set forth in the foregoing clauses (w) – (z), the "**Efforts Conditions**").

(b)     Notwithstanding anything to the contrary contained in this Agreement, neither Seller nor any of its Affiliates or Representatives shall be required to repay any Indebtedness, amend or enter into any Contract or other arrangement, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party, pay any amount or bear any other incremental economic burden to procure any amendments, modification or termination of the Concession Agreement.

(c)     Purchaser and Seller shall timely notify all Governmental Entities required to be notified under the Consent Decree of the Purchase and the Closing. Purchaser and Seller shall use commercially reasonable efforts, in cooperation with the applicable Governmental Entities, to terminate the Consent Decree as soon as reasonably practicable, and in a manner that does not require Purchaser and Seller to execute a modification to the Consent Decree pursuant to which Purchaser would assume the terms, conditions, obligations and liabilities of Seller applicable to the Purchased Assets under the Consent Decree. If, despite Purchaser's and Seller's respective efforts, the applicable Governmental Entities do not agree to terminate the Consent Decree, regardless of whether such failure to agree occurs before or after the Closing, Purchaser and Seller promptly thereafter shall use commercially reasonable efforts, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equity holders to, use commercially reasonable efforts, in cooperation with the applicable Governmental Entities, to cooperate and take, or cause to be taken, all steps required under the Consent Decree to make the terms, conditions, obligations and liabilities of the Consent Decree applicable to the Purchased Assets, including (i) Purchaser and Seller executing a modification to the Consent Decree pursuant to which Purchaser shall assume the terms, conditions, obligations and liabilities of Seller as they relate to the Purchased Assets under the Consent Decree and Seller shall be released from such terms, conditions, obligations and liabilities (the "**Limited Consent Decree Modification**") and obtaining the appropriate signatures thereto of all Governmental Entities party to the Consent Decree, (ii) filing any motion with the United States District Court for the District of the Virgin Islands to approve the Limited Consent Decree Modification, making the terms, conditions, obligations and liabilities as they relate to the Purchased Assets with respect to the Consent Decree applicable to Purchaser and (iii) obtaining approval of the United States District Court for the District of the Virgin Islands and all other Governmental Entities party to the Consent Decree of the Limited Consent Decree Modification. If, despite Purchaser's and Seller's respective efforts, the applicable Governmental Entities do not agree to the Limited Consent Decree Modification, regardless of whether such failure to agree occurs before or after the Closing, Purchaser and Seller promptly thereafter shall, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equity holders to, cooperate and take, or cause to be taken, all steps required under the Consent Decree to make the terms, conditions, obligations and liabilities of the Consent Decree applicable to Purchaser, including (A) Purchaser and Seller executing a modification to the Consent Decree pursuant to which Purchaser shall assume the terms, conditions, obligations and liabilities of Seller under the Consent Decree and Seller shall be released from such terms, conditions, obligations and liabilities (the "**Consent Decree Modification**") and obtaining the appropriate signatures thereto of all Governmental Entities party to the Consent Decree, (B)

filing any motion with the United States District Court for the District of the Virgin Islands to approve the Consent Decree Modification, making the terms, conditions, obligations and liabilities with respect to the Consent Decree applicable to Purchaser and (C) obtaining approval of the United States District Court for the District of the Virgin Islands and all other Governmental Entities party to the Consent Decree or the Consent Decree Modification. Nothing in this Section 7.4(c) shall alter the rights and obligations of the Parties pursuant to Articles II and X of this Agreement.

7.5     Public Announcements.  Each Party shall (a) consult with each other Party before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement or any Transaction Document, (b) provide to the other Parties for review a copy of any such press release or public statement and (c) not issue any such press release or make any such public statement prior to such consultation and review and the receipt of the prior consent of the other Parties, unless required by Laws or regulations applicable to such Party or its Affiliates, regulations of any stock exchange applicable to such Party or its Affiliates, or the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, in which case, the Party required to issue the press release or make the public statement or filing shall, prior to issuing such press release or making such public statement or filing, use its commercially reasonable efforts to allow the other Parties reasonable time to comment on such release, statement or filing to the extent practicable and permitted by Law.  Notwithstanding anything to the contrary contained in this Agreement (including, for the avoidance of doubt, Section 7.22), each of the Parties and its legal counsel and other Representatives shall be permitted to make filings on the docket of, or statements on the record before, the Bankruptcy Court relating to this Agreement and the transactions contemplated hereby without prior approval or consultation.

7.6     Notification of Certain Matters.  Seller and Purchaser shall use their respective commercially reasonable efforts to promptly notify each other of any material Proceedings in connection with the transactions contemplated by this Agreement or the Transaction Documents commenced or, to the Knowledge of Purchaser or the Knowledge of Seller, threatened, against Seller or Purchaser, as the case may be, or any of their respective Affiliates.

7.7     Supplements to Schedules.

(a)     HOVIC and Seller shall have the right (but not the obligation) to deliver to Purchaser, from time to time but not later than five (5) Business Days prior to the Closing Date, a schedule of changes (each, an "**Update Schedule**" or, individually, a "**HOVIC Update Schedule**" or a "**Seller Update Schedule**", as applicable) to disclose any action taken by Seller and HOVIC, as applicable, or Event occurring, with respect to the Business, the Purchased Assets, the Assumed Liabilities or Tug Boats after the date hereof. Each such Update Schedule shall constitute an amendment to the representation, warranty or statement to which it relates for all purposes of this Agreement and the transactions contemplated hereby, and each Update Schedule shall be deemed to be incorporated into and to supplement and amend the Seller Disclosure Letter (and all references to the "**Seller Disclosure Letter**" and "**HOVIC Disclosure Letter**" in this Agreement shall include each such Update Schedule to the extent applicable). Except as set forth in Section 7.7(b), subject to the terms of this Agreement, Purchaser shall have the right to not consummate the transactions contemplated by this Agreement as a result of the

**Exhibit A**