*Execution Copy*

# REFINERY OPERATING AGREEMENT

## BY AND AMONG

## THE GOVERNMENT OF THE U.S. VIRGIN ISLANDS

## AND

## LIMETREE BAY REFINING, LLC

July 2, 2018

**Exhibit C**

(2) By Refinery Operator, if (i) there shall be any statutes, laws, rules, regulations, ordinances, orders, and codes of or by any Governmental Authority that makes consummation of the transactions contemplated hereby illegal or otherwise prohibited; or (ii) a Governmental Authority shall have issued an order, decree, or ruling or taken any other action permanently restraining, enjoining, or otherwise prohibiting the consummation of the transactions contemplated hereby, and such order, decree, ruling, or other action shall have become final and non-appealable; or (iii) any of the representations and warranties of the Government contained in this Agreement shall not be true and correct in all material respects at time of Closing; or (iv) the other party shall have failed to fulfill, in any material respect, any of its obligations under this Agreement required to be performed prior to or at Closing; or

(3) By the Government, if (i) there shall be any statutes, laws, rules, regulations, ordinances, orders, and codes of or by any Governmental Authority (other than a U.S. Virgin Islands Governmental Authority) that makes consummation of the transactions contemplated hereby illegal or otherwise prohibited; or (ii) a Governmental Authority (other than a U.S. Virgin Islands Governmental Authority) shall have issued an order, decree, or ruling or taken any other action permanently restraining, enjoining, or otherwise prohibiting the consummation of the transactions contemplated hereby, and such order, decree, ruling, or other action shall have become final and non-appealable; or (iii) any of the representations and warranties of Refinery Operator contained in this Agreement shall not be true and correct in all material respects at time of Closing; or (iv) Refinery Operator shall have failed to fulfill, in any material respect, any of its obligations under this Agreement required to be performed prior to or at Closing.

(B) **Effect of Termination.** If (i) this Agreement is terminated pursuant to Section 3.4(A) or (ii) the Closing does not occur by the date provided in the proviso of Section 3.1(A), this Agreement shall become void and of no further force or effect, and the Original Terminal Operating Agreement shall remain in full force and effect unless otherwise terminated in accordance with its terms.

### ARTICLE 4
### REFINERY PERMITS

Section 4.1. **Permits**.

(A) Refinery Operator shall use commercially reasonable efforts to (i) obtain all current federal, territorial, and local Authorizations that are currently held by or issued to Terminal Operator, and any necessary modification(s) thereof, including but not limited to those under Environmental Laws, required to restart and maintain Refinery Operations as contemplated by the Agreement as soon as commercially reasonable and (ii) thereafter maintain such Authorizations. Refinery Operator shall use commercially reasonable efforts to obtain and maintain any other federal, territorial, and local Authorizations, and any necessary modification(s) thereof, including but not limited to those under Environmental Laws, in each case which, as of any date of determination, are necessary to be obtained by or on behalf of Refinery Operator at such time in light of the then current stage of development, construction

**Exhibit C**

and/or operation of the Refinery to enable restart and maintain Refinery Operations in accordance with this Agreement as soon as commercially reasonable. The Government shall use commercially reasonable efforts to assist Refinery Operator in obtaining all such Authorizations. Notwithstanding the foregoing, the Parties shall cooperate with each other and use commercially reasonable efforts to support, and shall not interfere with or delay, any effort by the other Party or any other party to obtain and maintain all necessary federal, territorial, and local Authorizations, and necessary modification(s) thereof, including but not limited to those under Environmental Laws, to enable the Refinery Restart as soon as commercially reasonable.

(B) Refinery Operator shall use commercially reasonable efforts to obtain and maintain all necessary approvals in order to restart Refinery Operations as soon as commercially reasonable, including approvals from the U.S. Department of Justice ("*USDOJ*"), the U.S. Environmental Protection Agency ("*EPA*"), the U.S. Virgin Islands Department of Planning and Natural Resources ("*DPNR*"), and the District Court for the District of the U.S. Virgin Islands ("*District Court*") to, among other things, add Refinery Operator as a named party defendant to the Clean Air Act Consent Decree and modify the Clean Air Act Consent Decree to restart Refinery Operations. Such efforts with regard to the Consent Decree shall include, but not be limited to, (i) working with the Government (and, if applicable, third parties) and negotiating with USDOJ, EPA, and DPNR the terms and conditions of one or more filings to add Refinery Operator as a named party defendant to the Clean Air Act Consent Decree and to so modify the Clean Air Act Consent Decree (and any proposed order(s) modifying the Clean Air Act Consent Decree), (ii) cooperating with USDOJ, EPA, and DPNR and taking such actions necessary to finalize and lodge with the District Court such filings and proposed orders, (iii) cooperating with and assisting as reasonably necessary USDOJ, EPA, and DPNR in responding to any public comments, and (iv) filing of any papers, provision of testimony, participating in any public meetings or hearings or court proceedings, or taking other actions reasonably necessary to support and seek District Court approval and entry of such modification. To the extent the Government is not directly involved in any aspect of Refinery Operator's efforts pursuant to this Section 4.1(B), Refinery Operator shall timely inform the Government of the status and outcome of such efforts.

(C) Notwithstanding any other provision in this Agreement, the Government hereby acknowledges and agrees that Refinery Operator may surrender all or part of existing permits under the Clean Air Act for the Refinery in order to achieve (i) compliance with the Clean Air Act Consent Decree, provided that Refinery Operator shall use commercially reasonable efforts to achieve compliance that do not require surrender of the permit or part thereof or (ii) to the extent done in conjunction with the permanent shut down of the portions of the Refinery for which such permits or parts thereof are surrendered.

(D) The Government shall cooperate with and assist Refinery Operator and Terminal Operator (if added as a party to the Clean Air Act Consent Decree) with respect to a modification to the Clean Air Act Consent Decree to toll or exempt Refinery Operator and Terminal Operator from fines, penalties and liabilities thereunder prior to the Closing or that

27

**Exhibit C**