

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

November 16, 2022

OFFICE OF
AIR AND RADIATION

*VIA ELECTRONIC MAIL-* JDomike@babstcalland.com; TEagan@rascoklock.com

Julie R. Domike, Esq.
Babst Calland, Attorneys at Law
505 9th Street NW, Suite 700
Washington, D.C. 20004

Thomas V. Eagan, Esq.
Rasco Klock Perez & Nieto
2555 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134

Dear Ms. Domike and Mr. Eagan:

In late December 2021, West Indies Petroleum Limited (WIPL) and Port Hamilton Refining and Transportation, LLLP (PHRT) submitted questions to the U.S. Department of Justice (DOJ) regarding the refinery located at 1 Estate Hope, Christiansted, St. Croix, U.S. Virgin Islands (the Refinery). One of the questions submitted concerned whether WIPL and PHRT could use existing permits to restart the Refinery and, if not, what is needed to restart the Refinery. Today's letter, and accompanying Attachments 1, 2, and 3, provide EPA's response to WIPL/PHRT's question with respect to the Clean Air Act's Prevention of Significant Deterioration (PSD) permit program. As described below, EPA has concluded that WIPL/PHRT is required to apply for and receive a final and effective PSD permit prior to restarting the Refinery or beginning actual construction as defined in 40 CFR 52.21(b)(11).

Background

In the Limetree Bay Refining bankruptcy proceeding, EPA wrote a letter dated September 24, 2021 to all potential Refinery bidders, which was placed in the reading room. The letter stated, among other things, that "[a] prospective purchaser may also be required to obtain a [PSD] permit under the Clean Air Act to restart the refinery," and noted that "EPA has required PSD permits for restarting long-dormant facilities that qualify as major stationary sources."

1

On March 2, 2022, EPA sent you a letter that, among other things, provides a brief history of the PSD permits previously issued for the Refinery and indicates that the Agency expects to follow up with a separate letter regarding additional PSD permitting issues. On March 22, 2022, EPA sent you a letter stating that, based on currently available information, "there are strong indicators to suggest that the Refinery must obtain a PSD permit prior to startup of Refinery operations." The March 22, 2022, letter also sought additional information from you to inform EPA's final determination as to PSD applicability. The letter further stated that "[b]ecause a PSD permit may be required prior to startup of the refinery operations or of any refinery unit(s), EPA strongly recommends that you not proceed with any such actions while EPA continues to evaluate PSD applicability."

PHRT provided an initial response to EPA on July 15, 2022, and a corrected response on July 27, 2022 (collectively, PHRT's "July letter"). PHRT asserted in its July letter that it is under no obligation to delay resumption of refining operations pending EPA's evaluation of PSD permitting applicability. EPA sent you an interim response on August 23, 2022, indicating that EPA was reviewing PHRT's responses to the questions in EPA's March 22, 2022, letter and reiterating that EPA strongly recommends that PHRT not resume refinery operations while EPA continues to evaluate PSD applicability.

Discussion and Conclusion

EPA has completed its review of the information in PHRT's July letter and closely examined the facts and circumstances of the Refinery since it was shut down by HOVENSA in February 2012. EPA's examination was informed by the Agency's long-standing Reactivation Policy, as articulated in *In the Matter of Monroe Electric Generating Plant Entergy Louisiana, Inc.,* Proposed Operating Permit, Petition No. 6-99-2 (June 11, 1999) (*Monroe*) and other Agency and judicial decisions on reactivation of shutdown sources. EPA is continuing to apply the Reactivation Policy, as described in *Monroe*, because it remains an appropriate method for determining whether the reactivation of a stationary source qualifies as the construction of a new source under the PSD regulations.

Based on EPA's analysis of the specific factors in the Reactivation Policy, we conclude that the Refinery was permanently shut down in 2012 and that restarting the Refinery qualifies as construction of a new major stationary source under the federal PSD permitting regulations applicable in the U.S. Virgin Islands. EPA's detailed consideration of the *Monroe* factors in Attachment 1 describes how the facts and circumstances of the Refinery's history since 2012 demonstrate that the Refinery was permanently shut down. This attachment also demonstrates that emissions from the restarted Refinery will exceed the PSD applicability thresholds for multiple New Source Review-regulated pollutants.

In addition, Attachment 2 contains a detailed explanation as to why EPA is continuing to apply the Reactivation Policy, including a demonstration of how the Policy has been, and continues to be, supported by the federal PSD regulations. Attachment 3 supplements Attachment 1 with additional facts that are germane to the Reactivation Policy analysis but cannot be included in a public document because the facts are claimed to be Confidential Business Information.

For the reasons discussed in these attachments, the Refinery must apply to EPA for, and receive, a final effective PSD permit for these pollutants prior to restarting or beginning actual construction at the Refinery, as defined in 40 CFR 52.21(b)(11). The PSD permit application should include, among other information, analyses of air quality impacts, environmental justice, and Best Available Control Technology.

If you have any questions, please contact either Joseph Siegel (212-637-3208; siegel.joseph@epa.gov) or Liliana Villatora (212-637-3218; villatora.liliana@epa.gov) of the EPA Region 2 Office of Regional Counsel.

Sincerely,

Joseph Goffman
Principal Deputy Assistant Administrator