# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, and ) <br> THE UNITED STATES VIRGIN ISLANDS, ) <br> ) <br> Plaintiffs, ) <br> ) Civ. No. 1:11-cv-00006 (RAM/EAH) <br> v. ) <br> ) <br> HOVENSA L.L.C. ) <br> ) <br> Defendants. ) | |

## THE UNITED STATES' RESPONSE TO PORT HAMILTON MOTION FOR INFORMAL STATUS CONFERENCE

## I. INTRODUCTION

The Court should deny non-party Port Hamilton's request for an informal status conference until Port Hamilton, West Indies Petroleum Limited (West Indies), and the Transition Refinery Entity, Inc. (TRE) have all become parties to this case, and each company's counsel have filed notices of appearance. The United States was seeking these parties' signature to a stipulation to make them parties to the case when Port Hamilton filed the pending motion.

As part of the Limetree Bay, LLC (LBR) bankruptcy proceeding[1], the bankruptcy court issued an order (Sale Order) authorizing the sale of substantially all of LBR's assets to the Purchaser (defined as West Indies and Port Hamilton). (Case No. 21-32351, ECF Doc. 977, p. 2 of 141). Paragraph 11 of the Sale Order provides:

> 11. Furthermore, notwithstanding anything in this Order or in the APA to the contrary, the Purchaser must become party to (i) the Consent Decree as modified by the

---

[1] On July 12, 2021, defendant Limetree Bay Refining, LLC and related entities (Debtors) filed for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas. (Case No. 21-32354, jointly administered with lead case 21-32351).

1

> First Modification and Second Modification in United States and the *United States Virgin Islands v. HOVENSA L.L.C.*, Civ. No. 1:11-cv-00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree") . . . (as each may be amended with the mutual consent of the parties);
> ............

(Case No. 21-32351, ECF Doc. 977, p. 22 of 141). West Indies and Port Hamilton both must become a party to the Consent Decree in this action (Doc. 6), as modified by the First Modification (Doc. 42) and the Second Modification.[2]

Pursuant to the terms of the bankruptcy court order approving the confirmation plan (Plan Order), the Purchaser reorganized LBR as the TRE. (Case No. 21-32351, ECF Doc. 1454, p. 46). One hundred percent of the membership interest in the TRE went to the Purchaser. (Case No. 21-32351, ECF Doc. 1454, p. 46). Paragraph 31 of the Plan Order requires, inter alia, that:

> The Transition Refinery Entity shall be fully bound by all provisions of the Consent Decree . . . and shall cooperate in the substitution of the Transition Refinery Entity as a named defendant .............

(Case No. 21-32351, ECF Doc. 1454, p. 47).

Port Hamilton's motion downplays its ties to West Indies and overlooks its ownership interest in the TRE. Although attorney Andrew Simpson filed the pending motion, the United States' primary points of contact for Port Hamilton, West Indies, and the TRE are Matthew Morrison with the law firm of Pillsbury Winthrop Shaw Pittman LLP, and Julie Domike with the law firm of Babst Calland. Attorneys Morrison and Domike have represented to the United States that they represent Port Hamilton and the TRE, but not West Indies. Despite the fact that they do not represent West Indies, attorneys Morrison and Domike are in contact with West

---

[2] The Second Modification was a non-material modification to Paragraph 79.a of the Consent Decree.

2

Indies' principals and relay the United States' communications to West Indies. Attorneys Morrison and Domike have been placed in this position because West Indies has failed to identify counsel or have counsel file a notice of appearance in this action or in the United States v. Limetree Bay Terminals, LLC et al., Case No. 1:21-cv-264, action. In addition to Port Hamilton, West Indies and the TRE are necessary parties to this action.

    A.    United States' Proposed Stipulation and Third Modification to the Consent Decree

On May 18, 2023, the United States and the U.S. Virgin Islands sent a proposed Stipulation and a proposed Third Modification to the Consent Decree to Port Hamilton, West Indies, and the TRE. (Attached as Ex. 1 to Flint Dec.). The intent of the Stipulation was to have Port Hamilton, West Indies, and the TRE become parties to this case. The intent of the Third Modification was to have Port Hamilton and West Indies become parties to the Consent Decree as modified by the First Modification and the Second Modification. The United States requested comments on those documents by June 6, 2023. Port Hamilton's response was to file the pending motion. The TRE and West Indies have not responded to the proposed Stipulation or the proposed Third Modification.

Given that Port Hamilton filed the pending motion, and West Indies and the TRE have failed to respond, the United States is preparing to file a motion, pursuant to Fed. R. Civ. P. 25(c), for an order substituting Port Hamilton, West Indies, and the TRE for defendant LBR. That motion will be consistent with the one filed in United States v. Limetree Bay Terminals, et al. (Case No. 1:21-cv-264, Doc. 23), which was granted by the Court on November 17, 2022 (Case No. 1:21-cv-264, Doc. 25). Because West Indies is a Jamaican entity and has no registered agent in the United States, the United States will have to properly serve West Indies in Jamaica before it may file the motion with the Court. The United States estimates that it should be in

3

position to file the motion with the court within the next 30 to 45 days.

## II. RESPONSE TO CORRECT INACCURACIES CONTAINED IN PORT HAMILTON'S MEMORANDUM

The memorandum Port Hamilton filed in support of its motion contained a number of inaccuracies. The United States provides the below responses to correct a number of these inaccuracies.

A.  <u>Paragraph 7 of the Consent Decree, as Modified</u>

On page 2 of its memorandum, Port Hamilton note that Paragraph 7 of the Consent Decree provides:

> HOVENSA shall condition any transfer, in whole or in part, of ownership of, operation of, or other interest (exclusive of any non-controlling, non-operational shareholder or membership interest) in the Refinery upon the execution by the transferee of a modification to this Consent Decree, which makes the terms and conditions of this Consent Decree applicable to the transferee.
> ………………….

Port Hamilton asserts, however, that "[t]here was no requirement in the Consent Decree that provided for subsequent transfers of ownership after a transfer from HOVENSA to a new entity." (Doc 55, p. 2). This assertion ignores the language of the First Modification.

Paragraphs 1 and 5.a of the First Modification state as follows:

> 1.   The terms and conditions of the Consent Decree are applicable to Limetree Bay Terminals, LLC, Limetree Bay Refining, LLC, and their respective successors or assigns, except as otherwise specifically set forth herein.
>
> 5.   In accordance with Paragraphs 1-4 of the First Modification, effective upon the Date of Entry of the First Modification:
>
> a.   Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC shall be substituted for HOVENSA as the

4

> Defendant for all provisions of the Consent Decree, including all rights, liabilities and obligations of HOVENSA, except as set forth in this First Modification.

(Doc. 6, pp. 6 and 7). Pursuant to these provisions, the Consent Decree, as modified, requires Limetree Bay Refining, LLC to condition any transfer on the execution by the transferee of a modification of the Consent Decree, "which makes the terms and conditions of this Consent Decree applicable to the transferee." This was one of the reasons why the Sale Order requires that Port Hamilton and West Indies become a party to the Consent Decree, as modified by the First Modification and the Second Modification.

Port Hamilton's assertion that Paragraph 7 of the Consent Decree was not controlling in the transfer from LBR to West Indies and Port Hamilton is therefore wrong.

B. <u>Port Hamilton's Comparison to the HOVENSA Bankruptcy Is Not Relevant</u>

Port Hamilton's discussion of the HOVENSA bankruptcy proceeding and its attempts to equate the operative documents in that matter to this case are overly simplistic and incomplete. It is also not relevant to Port Hamilton's obligations in this action. Port Hamilton's obligations in this action are governed by several key documents including Sale Order (Case No. 21-32351, ECF Doc. 977, Paragraph 11, p. 22 of 141), the Consent Decree (Doc. 6, Paragraph 7), the First Modification of the Consent Decree (Doc. 42, Paragraphs 1 and 5.a), and the Plan Order (Case No. 21-32351, ECF Doc. 1454, Paragraph 31, pp. 48 - 50). It is also important to clarify for the Court that 1) the United States is not a party to the Asset Purchase Agreement between LBR, West Indies, and Port Hamilton; and 2) the United States is not a party to the Operating Agreement between the Government of the Virgin Islands and LBR that was assumed by Port Hamilton. Therefore, the United States is not bound by those documents.

C. <u>Footnote 16 and West Indies</u>

Footnote 16 of Port Hamilton's memorandum (Doc. 55, p. 6) incorrectly states that West Indies' "limited involvement in the instant controversy is discussed *supra*," however, West Indies' involvement is not discussed in Port Hamilton's memorandum. West Indies' involvement is not "limited."

The facts relating to West Indies are very straightforward. The auction for LBR's assets in the bankruptcy case was reopened specifically to allow West Indies to participate as a bidder. (Case No. 21-32351, ECF Doc. 913). West Indies and Port Hamilton were jointly designated as the winning bidder. (Case No. 21-32351, ECF Doc. 948). Charles Chambers, West Indies CEO, testified during the sale hearing that West Indies was providing approximately 70% of the purchase price. (Case No. 21-32352, ECF Doc. 1050-12, p. 172 of 248). The Sale Order (Case No. 21-32351, ECF Doc. 977) and the Asset Purchase Agreement attached as exhibit 1 of the Sale Order (ECF Doc. 977-1) both define the term "Purchaser" to mean West Indies and Port Hamilton. Finally, the Sale Order requires the "Purchaser" to become a party to the Consent Decree, as modified by the First Modification and the Second Modification. (ECF Doc. 977, Paragraph 11, p. 22 of 141). As noted in the introduction, West Indies is a necessary party to this action.

D. <u>Judicially Binding Obligation at the time of LBR's Restart</u>

On page 10 of its memorandum, Port Hamilton claims "there was no judicially binding obligation at the time of LBR's exceedances at Flare 8 to trigger an obligation upon LBR to install a flare gas recovery system." (Doc. 55, p. 10). This statement is inaccurate as it ignores Paragraphs 49, 50 and Appendix D of the Consent Decree. (Doc. 6).

The Consent Decree resolves HOVENSA's alleged pre-2011 violations of the Clean Air

6

Act (ECF Doc. 6). Among the alleged violations addressed by the Consent Decree were violations of the New Source Performance Standards (NSPS) for petroleum refineries codified in 40 C.F.R. Part 60, Subpart J. In resolving the alleged violations of NSPS Subparts J, the Consent Decree required, *inter alia*, that HOVENSA agree that the FCCU Low Pressure Flare (later redesignated as Flare 8 by LBR) be subject to the requirements of NSPS Subparts J and Ja, and comply with NSPS Subpart Ja by installing a flare gas recovery system (FGRS) on Flare 8 by June 7, 2018. (Doc. 6, Paragraphs 49, 50 and Appendix D).

When LBR initiated restart of the refinery in September 2020, it could either comply with the Consent Decree as entered on June 7, 2011, or comply with the agreement reached between the United States and LBR in the First Modification of the Consent Decree signed by LBR on June 18, 2020. (Doc. 42, p. 102). Under the former, LBR would have been in violation of the June 7, 2018 deadline for installing FGRS on Flare 8. Alternatively, in the First Modification the United States and LBR agreed to a limited opportunity that allowed LBR to restart the refinery and attempt to demonstrate that the refinery could be operated, in compliance with NSPS Subpart Ja, without having to install the FGRS on Flare 8. (Doc. 42, Paragraphs 49 and 50B.). The First Modification provided that if the emissions from Flare 8 exceeded a specified gas quantity, then LBR was required to install FGRS on Flare 8 "not later than two years from" when the gas quantity is exceeded. (Doc. 42, Paragraph 50B.a.i.). Pursuant to Paragraph 50C.b, LBR submitted a letter to EPA on April 13, 2021, notifying EPA that it exceeded the specified gas quantity on March 14, 2021, and acknowledging that the FGRS needed to be installed and operational on Flare 8 by March 14, 2023. (Attached as Ex. 2 to Flint Dec.).[3]

---

[3] West Indies and Port Hamilton were aware of this letter and the March 14, 2023 deadline when they submitted the winning $62 million bid for the refinery in the bankruptcy auction. As part of the bankruptcy, the Debtors were required to establish a digital data room (Data Room) for "maintaining and providing Potential Bidders access to information regarding the Debtors and the Assets for purposes of conducting due diligence." (Case No. 21-32351,

7

The Consent Decree's requirement to install FGRS on Flare 8 is not a mere contractual obligation. It is also a judicially binding obligation tied to HOVENSA's alleged violations, to ensure that the refinery complies with NSPS Subpart Ja. This obligation applies to Port Hamilton, West Indies, and the TRE based upon the language in the Sale Order, the Consent Decree, the First Modification of the Consent Decree, and the Plan Order as discussed above on pages 1, 2, 4, and 5. As noted in the United States' March 2, 2022 letter to counsel for Port Hamilton and West Indies, "[t]he absence of an FGRS at the Refinery was one of the causes for the excess emissions of $H_2S$ and $SO_2$ from the Refinery during the first half of 2021." (Attached as Ex. 3 to Flint Dec. at p. 3).[4]

E.  Port Hamilton Admissions Before the Third Circuit and Representations to the United States

As noted in Port Hamilton's memorandum, on November 16, 2022, EPA issued a final agency determination concluding that the refinery is required to apply for and receive a final and effective prevention of significant deterioration (PSD) permit prior to restarting. Port Hamilton filed for review of this final agency action before the Third Circuit Court of Appeals. Port Hamilton Refining and Transportation, LLLP v. United States Environmental Protection Agency, Case No. 23-1094. The matter has been fully briefed and oral argument was held on May 24, 2023.

  1. Admission that as Part of Purchase it Must Become a Party to the Consent Decree

In its reply brief to the Third Circuit, Port Hamilton admitted that:

> ... EPA correctly notes that Port Hamilton was required –
> at EPA's insistence – as a condition of its purchase of the

---

ECF Doc. 392, p. 21). West Indies and Port Hamilton were aware of the April 13, 2021 letter because it, and other documents that referenced it, was included in the Data Room.

[4] While attorney Thomas Eagan of the law firm Rasco Klock Perez & Nieto represented West Indies during and after the bankruptcy, the United States has been told that he no longer represents West Indies.

8

> refinery in the Bankruptcy matter to become a party to the Consent Decree ....

(Case No. 23-1094, ECF Doc. 62, footnote 14, p. 33).

    2.      Admission that Pre-Start Conditions Must be Satisfied

In its reply brief to the Third Circuit, Port Hamilton admitted the following regarding the Consent Decree:

> To the extent that there are outstanding obligations under the Consent Decree that would apply to Port Hamilton once it becomes a party to the Decree, Port Hamilton understands that any pre-start conditions in the Consent Decree must be satisfied before it resumes implementation of its phase restart plan.

(Case No. 23-1094, ECF Doc. 62, p. 31). Now that March 14, 2023 has passed, the installation of the FGRS is a pre-start condition.

    3.      Admission that it is Subject to the Consent Decree

During the oral argument on May 24, 2023, attorney Andrew Simpson admitted that "Port Hamilton is subject to the Consent Decree." (https://www2.ca3.uscourts.gov/oralargument/audio/23-1094_PortHamiltonv.US-EPA.mp3, beginning at timestamp 37:43).

    4.      Representations to the United States

In a February 23, 2022 letter, Port Hamilton represented that as part of its preparations for installation of the FGRS, it had a contract with one contractor to develop the process engineering design and a second contractor to develop the mechanical design of the system. (Attached as Ex. 4 to Flint Dec. at p. 3). As part of United States v. Limetree Bay Terminals, et al., Case No. 1:21-cv-264, Port Hamilton is required to submit weekly reports to EPA. Between February 21, 2022 and May 23, 2022, under the heading "Flare Gas Recovery System," Port

Hamilton indicated that: process engineering data was being put together to establish the process design for the front-end loading and detailed engineering, that Becht Engineering was under contract to develop the process design specifications; and that Richard Engineering was under contract to develop the front-end loading and detailed engineering and design package. (February 21, 2022 weekly report at p. 3 and May 30, 2022 weekly report at p. 3, attached as Ex. 5 of Flint Dec.). Beginning on June 6, 2022, the "Flare Gas Recovery System" heading was expanded to indicate that the process engineering data was being put together to establish the process design for the front-end loading and detailed design and that a call will be scheduled with EPA to review the FGRS process design basis. (June 6, 2022 weekly report at p. 3 and June 20, 2022 weekly report at p. 3, attached as Ex. 6 to Flint Dec.). Beginning on June 27, 2022 and continuing until April 24, 2023, the "Flare Gas Recovery System" heading was revised to note that a meeting was held with the United States to address the FGRS design basis. (June 27, 2022 weekly report at p. 3 and April 24, 2023 weekly report at p. 2, attached as Ex. 7 to Flint Dec.). The "Flare Gas Recovery System" heading was included in the weekly reports until April 24, 2023 at which point to format of the reports changed.

Gathering data and hiring engineering contactors to develop design basis specifications, engineering design, and mechanical design are not steps a party takes unless an obligation exists. As noted *supra* in Section II.D, the obligation to install FGRS on Flare 8 is a judicially-binding obligation on Port Hamilton.

## IV. CONCLUSION

The Court should deny non-party Port Hamilton's motion for an informal status conference until Port Hamilton, West Indies, and the TRE have all become parties to this case, and each company's counsel have filed notices of appearance. Port Hamilton, West Indies, and

the TRE are all necessary parties to this action.

Dated:  June 20, 2023                                   Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*s/ Myles E. Flint, II*
Myles E. Flint, II
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice - P.O. Box 7611
Washington, DC  20044-7611
Tel: 202-307-1859
myles.flint@usdoj.gov

## CERTIFICATION OF SERVICE

The undersigned certifies that on June 20, 2023, he filed *The United States' Response to Non-Party Port Hamilton's Motion for Informal Status Conference* electronically with the Clerk of Court using the CM/ECF system, which will send notifications of this filing to all who have made appearances.

*/s/ Myles E. Flint, II*