IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>HOVENSA L.L.C.<br><br>DEFENDANT. | CASE NO. 1:11-CV-00006 |

**PORT HAMILTON'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR INFORMAL STATUS CONFERENCE**

The United States' opposition to Port Hamilton Refining and Transportation, LLLP's ("Port Hamilton") motion for an informal status conference demonstrates exactly why the motion is meritorious. The parties dispute what is required of Port Hamilton. A judicial neutral may help resolve their differences; or, if not, a briefing schedule can be established to define how the issues will be presented to Chief Judge Molloy for resolution.

**THE DISPUTE**

Port Hamilton does *not* dispute that it must become "a party" to the Consent Decree as modified by the First Modification.[1] The dispute arises because the United

---

[1] The "Second Modification" to the Consent Decree was never filed. Instead, the United States modified the First Modification to incorporate the Second Modification when it submitted its request to the Court for entry of the First Modification. *See* Doc. No. 19-1 at 26-27. Chief Judge Molloy signed this version of the First Modification. Doc. No. 42. To avoid confusion, in this Reply, Port Hamilton refers to the consent decree as originally signed by HOVENSA as the

1

States will not present Port Hamilton with a stipulation that simply says, "Port Hamilton stipulates that it is a party to the Consent Decree as modified by the First Modification to the Consent Decree." Instead, the United States seeks to have Port Hamilton agree to become a "party defendant" to the Consent Decree and to stipulate to an interpretation of the Consent Decree that the United States sets out in a proposed stipulation—specifically, that Port Hamilton be substituted as a "party defendant" for Limetree Bay Refining, LLC. But Port Hamilton does not agree that the Bankruptcy Court's Order requires that it be substituted as a "party defendant"; nor does it agree with other aspects of the United States' interpretation of the Consent Decree that the United States attempts to set out in its proposed stipulation. When Port Hamilton has attempted to negotiate acceptable terms to the proposed stipulation, the United States has refused to negotiate, saying instead that Port Hamilton must first be joined *as a party defendant* before it will negotiate.

Port Hamilton offers the United States two options: (1) it will sign a stipulation that simply says that Port Hamilton is a party to the Consent Decree; or (2) it will negotiate terms upon which it will agree to become a party defendant to the Consent Decree.[2]

---

"Original Consent Decree" and the version that is currently in place as approved by Chief Judge Molloy (Doc. No. 42) as the "Modified Consent Decree."

[2] As a courtesy, Port Hamilton has attempted to facilitate discussions between the United States and West Indies Petroleum Limited ("WIPL") regarding the bankruptcy court's order as it applies to WIPL. Port Hamilton has no control over, or interest in, WIPL. Port Hamilton's efforts to broker such a discussion have not succeeded, apparently because WIPL is as put off by the United States' "my way or the highway" attitude as Port Hamilton is.

### THE TRANSFEREE PROVISION OF THE CONSENT DECREE WAS NOT INCORPORATED IN THE SALE DOCUMENTS WHEN LBR TRANSFERRED THE REFINERY ASSETS TO PORT HAMILTON.

The United States argues that paragraphs 1 and 5.a. of the First Modification substituted LBR (and LBT) for HOVENSA as the Defendant for most provisions of the Consent Decree. This means—according to the United States—LBR was required under Paragraph 7 of the Modified Consent Decree to "condition any transfer [of the refinery assets] on the execution by the transferee of a modification of the Consent Decree, 'which makes the terms and conditions of this Consent Decree applicable to the transferee.'" But, even if the United States' interpretation is correct (which is not conceded), the problem the United States has is that LBR did *not* condition the transfer of the refinery assets to Port Hamilton with a requirement that Port Hamilton become a substituted *defendant* for LBR. Indeed, the bankruptcy court's order specifically made only Transition Refinery Entity ("TRE") a "party defendant" to the consent decree while providing that Port Hamilton was only required to become a *party* to the Consent Decree. To the extent that LBR failed to adhere to a binding obligation in the Consent Decree, the USA's remedy if any, lies against LBR, not Port Hamilton.[3]

---

[3] Further, the United States' only remedy appears to be limited to refusing to allow LBR to be removed from its obligations under the Modified Consent Decree. Paragraph 7 of the Original Consent Decree delineates a procedure for HOVENSA (and thus LBR if it is substituted for HOVENSA under the Modified Consent Decree) to file a motion to be relieved from obligations under the Original Consent Decree upon a showing that it has complied with the obligations to bind a buyer to the Original Consent Decree. (The United States agreed to consent to such a motion if the seller had complied with this obligation.)

**THE DIFFERENCES BETWEEN THE 2016 BANKRUPTCY ASSET PURCHASE AGREEMENT AND THE 2021 BANKRUPTCY SALE ORDER ILLUMINATE THE ISSUES IN DISPUTE.**

The United States takes issue with Port Hamilton's comparison of the manner in which the obligations under the Original Consent Decree were handled in the 2016 HOVENSA bankruptcy as compared to the 2021 LBR bankruptcy. But those differences shed light upon the manner in which the parties understood their rights and obligations at the respective periods of time. In 2016, HOVENSA was selling, *inter alia*, the refinery assets to Limetree Bay Terminals ("LBT") and it adhered to the obligation in paragraph 7 of the Original Consent Decree requiring it to ensure that the seller stepped into the shoes of HOVENSA under the Original Consent Decree. *See* Exh. A at 59 (Doc. No. 57-1 at ECF p.4).

The Modified Consent Decree added three parties (LBT, LBR, and the Environmental Response Trust ("ERT")) to the Original Consent Decree as "parties," in recognition of the fact that there were now three entities with responsibilities related to the obligations originally assigned solely to HOVENSA. Modified Consent Decree at para. 4. It then addressed the changes needed based upon the separate responsibilities of the three entities and specified in paragraph 5 that these entities were Defendants as to different portions of the Modified Consent Decree. Thus, whereas HOVENSA had been the sole defendant in the Original Consent Decree, under the Modified Consent Decree, LBT and LBR were jointly defendants to certain parts of the Modified Consent Decree and ERT was the only defendant to other parts.

The issues surrounding the Consent Decree were handled differently in the 2021 LBR bankruptcy. In the 2021 Order confirming the LBR Chapter 11 Plan, the Court required that "Terminal Refinery Entity" "shall be fully bound by all provisions of the Consent Decree and Joint Stipulation and shall cooperate in the substitution of the Transition Refinery Entity as a *named defendant* in both cases." Doc. No. 1454 in Case No. 21-32351 at 49 (emphasis added). By contrast, the same bankruptcy court issued a Sale Order that required Port Hamilton (as well as West Indies Petroleum Limited) to be named as "parties" to the Modified Consent Decree and envisioned that it would be "amended by mutual consent of the parties" Doc. No. 977 in Case No. 21-32351 at 22.

In other words, throughout the history of the Consent Decree, there has been a recognition of a difference between a "party to" the Consent Decree and a "party defendant" or "named defendant." As noted, the United States is now attempting to retroactively—and unilaterally—change what the bankruptcy court required by making demands that Port Hamilton be joined to the Consent Decree as a party defendant. It can accomplish that goal if it will negotiate in good faith with Port Hamilton and the parties arrive at a *mutually acceptable* modification. Otherwise, the United States is stuck with having Port Hamilton as a party, but not a party defendant, to the Modified Consent Decree.

**THE CONSENT DECREE OBLIGATIONS REGARDING FLARE NO. 8.**

The United States also takes issue with Port Hamilton's characterization of LBR's obligations under the Consent Decree with respect to Flare 8. The United States

5

argues that LBR was required to either comply with the flare modification requirements of the Original Consent Decree or, alternatively, with the flare modification requirements of the Modified Consent Decree. But the United States is focused on LBR, not Port Hamilton. The fact is that the Modified Consent Decree was entered on December 30, 2021 and became effective on that date. Thus, when LBR recommended refining operations in 2020–21, the Original Consent Decree was still in effect and it appears that the United States acquiesced in LBR's refining operations even though it had not installed the flare gas recovery system as specified in the Original Consent Decree.

The Modified Consent Decree establishes conditions under which the party defendant may incur obligations to install a flare gas recovery system if refinery operations result in certain emissions exceeding specified limitations. The United States *admits* that this modification altered the requirement in the Original Consent Decree and Port Hamilton agrees. From the date the Modified Consent Decree became effective, there have been no emissions that exceeded the limitations set forth in the Modified Consent Decree and thus there is no obligation at this time to install a flare gas recovery system. Nevertheless, the United States is insisting that Port Hamilton voluntarily agree to install a flare gas recovery system immediately (and before it commences refining operations)—based upon its assertion that LBR's actions *before the Modified Consent Decree became effective,* triggered the requirements of the Modified Consent Decree.

It appears that the United States has a legitimate gripe against LBR for

recommencing refinery operations without complying with the requirements of the Original Consent Decree. That gripe, however, is with LBR. At this point, there has been no triggering of the conditions in the Modified Consent Decree that would require the installation of a flare gas recovery system on Flare 8. Despite the fact that Port Hamilton is not required at this time to install the flare gas recovery system (and may never have to as long as it keeps its emissions within limits), Port Hamilton has offered to enter into a modification of the Modified Consent Decree that would establish a timetable for it to install a flare gas recovery system on Flare 8. Port Hamilton's offer is not even conditioned upon it exceeding any specified emissions level—yet the United States stubbornly rejects this offer in the hope that it can require Port Hamilton to sign on to the Modified Consent Decree which—under the United States' interpretation—would place Port Hamilton in immediate breach because of LBR's failures before the Modified Consent Decree was approved by the Court.

**PORT HAMILTON'S ADMISSIONS**

The United States makes much of Port Hamilton's admissions in court documents and at oral argument in its appeal of the Environmental Protection Agency's effort to prevent the refinery from ever operating again.[4] Port Hamilton stands by those

---

[4] It is indeed ironic that the United States is insisting that Port Hamilton install operational controls on Flare No. 8 while at the same time it takes the position, as set forth in the November 2022 determination, that Port Hamilton can never restart the refinery because it was "permanently shut down" in 2012, requiring, according to the United States, Port Hamilton to undergo "preconstruction" permitting as a newly constructed refinery. What is the point of installing a flare gas recovery system on a refinery that the United States will not allow to operate?

admissions because they state exactly what Port Hamilton states here: It is obligated to become a party to the Modified Consent Decree.[5] Port Hamilton has never stated that it is obligated to become a *party defendant* to the Modified Consent Decree. If the United States truly wants Port Hamilton to become a party to the Modified Consent Decree, all it will take is a two-sentence stipulation: "Port Hamilton hereby stipulates that it is a party to the Modified Consent Decree. Port Hamilton does not stipulate to becoming a party defendant to the Modified Consent Decree."

## Conclusion

There are three ways to resolve this dispute:

(1) The United States can accept Port Hamilton's proposed stipulation whereby it joins the Modified Consent Decree solely as a "party" and not as a "party defendant";

(2) The United States can negotiate mutually acceptable terms by which Port Hamilton will agree to become a party defendant to the Modified Consent Decree; or

(3) The parties can engage in motion practice and await a ruling by the Court.

---

[5] The United States suggests in Section E.4. of its response that Port Hamilton's efforts to hire and work with contractors to design and engineer a flare gas recovery system somehow show that Port Hamilton is obligated to install such a system. Doc. No. 59-1 at ECF p.10. The United States confuses what Port Hamilton may be willing to do under a negotiated agreement with what is required under the Sale Order. Port Hamilton has been and remains open to a negotiated agreement with the United States to become a party defendant to the Modified Consent Decree. Port Hamilton communicated with the United States related to designing and engineering a flare gas recovery system so that it and the United States could be fully informed when discussing and negotiating appropriate changes to the Modified Consent Decree.

Port Hamilton believes that an informal conference could assist the parties in achieving a negotiated resolution or at least agreeing upon the best way to get the issues before the Court for decision and thereby save the parties and the Court much effort and expense.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**

Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: June 28, 2023

_____
By:  Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

9