**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |  |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, and | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | Civ. No. 1:11-cv-00006 (RAM/EAH) |
| v. | ) | |
|  | ) | |
| HOVENSA L.L.C. | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DECLARATION OF MYLES E. FLINT, II IN SUPPORT OF UNITED STATES'
MOTION, PURSUANT TO FED. R. CIV. P. 25(c), FOR AN ORDER SUBSTITUTING
WEST INDIES PETROLEUM LIMITED, PORT HAMILTON REFINING AND
TRANSPORTATION, LLLP, AND THE TRANSITION REFINERY ENTITY, LLC FOR
DEFENDANT LIMETREE BAY REFINING, LLC**

I, Myles E. Flint, II, declare as follows:

1.      I am a Senior Counsel with the Environmental Enforcement Section of the United

States Department of Justice.

2.      Exhibit 1 to this Declaration is a true and correct copy of the *Order I) Authorizing*

*the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims,*

*Encumbrances, And Interests, (II) Authorizing the Debtors to Perform Under the Asset Purchase*

*Agreement, (III) Approving Procedures for the Assumption and Assignment of Executory*

*Contracts and Unexpired Leases, and (IV) Granting Related Relief*, with excerpts from Exhibit

1, Case No. 21-32351, ECF Doc. 977 and 977-1.

3.      Exhibit 2 to this Declaration includes true and correct copies of excerpts from

Debtors' *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Limetree Bay*

*Services, LLC and Affiliated Debtors,* Case No. 21-32351, ECF Doc. 1413-1.

1

4.      Exhibit 3 to this Declaration is a true and correct copy of *Debtors' Emergency Motion to (1) Reopen Auction Pursuant to Bidding Procedures, (II) Approve Schedule and Procedures for Continued Auction, and (III) Grant Related Relief*, with Exhibit D, Case No. 21-32351, ECF Doc. 862 and 862-4 to 862-6.

5.      Exhibit 4 to this Declaration is a true and correct copy of the *Notice of Designation of Winning Bid and Back-up Bid*, Case No. 21-32351, ECF Doc. 948.

6.      Exhibit 5 to this Declaration is a true and correct copy of the *Limited Objection by the United States to Sale of Assets (Related to Doc. No. 191)*, without exhibits, Case No. 21-32351, ECF Doc. 950.

7.      Exhibit 6 to this Declaration includes true and correct copies of excerpts from the December 21, 2021 Sale Hearing Transcript, Case No. 21-32351, ECF Doc. 1050-12.

8.      Exhibit 7 to this Declaration is a true and correct copy of the *United States' Objection to Confirmation (Related to Doc. No. 1252 and 1273)*, Case No. 21-32351, ECF Doc. 1332.

9.      Exhibit 8 to this Declaration includes true and correct copy of excerpts from the signed and entered *Order Approving Disclosure Statement on a Final Basis and Confirming Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors*, Case No. 21-32351, ECF Doc. 1454.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


*s/ Myles E. Flint, II*

2

**FLINT EXHIBIT 1**

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 21, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>**LIMETREE BAY SERVICES, LLC,** *et al.*,[1]<br><br>Debtors. | **Chapter 11**<br><br>**Case No.: 21-32351 (DRJ)**<br><br>**(Jointly Administered)** |

## ORDER (I) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE DEBTORS TO PERFORM UNDER THE ASSET PURCHASE AGREEMENT, (III) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

### [Re: Docket No. 191]

Upon the motion, dated July 26, 2021 [Docket No. 191] (the "<u>Motion</u>"),[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Section K of the Procedures for Complex Cases in the Southern District of Texas (the "<u>Complex Rules</u>"), for entry of (a) an order (i) approving procedures (as amended, the "<u>Bidding Procedures</u>") for the solicitation of bids for the acquisition of substantially all assets of the Debtors (the "<u>Sale</u>"), (ii) scheduling an auction and final hearing for approval of the Sale, (iii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases of the Debtors (collectively, the "<u>Executory</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the APA (as defined herein), as applicable.

Contracts"), and (iv) granting further relief, and (b) an order (i) authorizing the Sale to the Winning Bidder, free and clear of any and all Interests (as defined in the Motion), except for any assumed liabilities, (ii) authorizing the assumption and assignment of Executory Contracts, if any, designated for assignment to the purchaser in connection with the Sale, and (iii) granting further and additional relief as described in the Motion, the Designation of Winning Bid (as defined in the Motion), or the Sale Order; and this Court having approved the Bidding Procedures pursuant to the *Order Granting Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 392] (as amended, the "Bidding Procedures Order"); and this Court having entered the *Order Granting Debtors' Emergency Motion to (I) Reopen Auction Pursuant to Bidding Procedures, (II) Approve Schedule and Procedures for Continued Auction, and (III) Grant Related Relief* [Docket No. 913] (the "Auction Reopening Order"); and upon the designation of West Indies Petroleum Limited and Port Hamilton Refining and Transportation, LLLP (together, the "Purchaser") as Winning Bidder pursuant to that certain Asset Purchase Agreement dated as of December [___], 2021 (the "APA") by and among Limitree Bay Services, LLC, Limitree Bay Refining Holdings, LLC, Limitree Bay Refining Holdings II, LLC, Limitree Bay Refining, LLC, Limitree Bay Refining Operating, LLC, and Limitree Bay Refining Marketing, LLC (the "Sellers"), on the one hand, and Purchaser, on the other hand, a copy of which is attached hereto as **Exhibit 1**; and the Court having reviewed and considered the Motion, the Designation of Winning Bid, and the APA, and all associated documents and filings, and any objections thereto; and upon the full record in support of the final approval of the Sale pursuant to the APA, including the statements made and evidence presented during the hearing on December 21, 2021 (the "Sale Hearing"); and this Court having found that the approval of the

Sale pursuant to the APA and other relief granted herein serves the best interests of the Debtors' estates, their creditors, and all other parties in interest; and this Court finding just cause for approving the Sale pursuant to the APA and granting the relief provided herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS**:[3]

A.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    <u>Bases for Relief</u>.  The statutory and other legal bases for the relief provided herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, Bankruptcy Local Rules 2002-1 and 4002-1, and Section K of the Complex Rules.  The consummation of the Sale contemplated by the APA and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Rules, and the Debtors and the Purchaser have complied with all of the applicable requirements of such sections and rules in respect of the Sale.

C.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

---

[3] The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052 made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

D.      Notice of the Motion.  As evidenced by the affidavits and/or certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and all deadlines related thereto, has been provided, as relevant, in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, and 9014, Bankruptcy Local Rules 2002-1 and 4002-1, and in compliance with the Bidding Procedures Order, to all interested persons and entities, including, without limitation, the Notice Parties.

E.      The Debtors filed the *Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 696], *Second Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 749], *Third Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 761], *Fourth Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 799], *Fifth Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 819], *Notice of (I) Designation of Winning Bid and Back-up Bids and (II) Sixth Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 829], and *Seventh Notice of Extension of Milestones and Bid Procedures Deadlines* [Docket No. 935], which provided details of the Bidding Procedures deadlines, including the Auction date and related deadlines.  Further, such notices were served on all parties required to receive such notice under the Bidding Procedures Order and applicable rules and were sufficient and proper notice to any other interested parties.

F.      The Debtors filed the *Notice of Designation of Winning Bid and Back-up Bid* [Docket No. 948] (the "Designation of Winning Bid") in accordance with the Bidding Procedures Order and such notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the conclusion of the Auction, the identities of

the Winning Bidder and the Back-up Bidders, and the terms of the Winning Bid and the Back-up Bid.

G.     The Debtors filed the *Notice of Emergency Sale Hearing on December 21, 2021 at 10:00 a.m. Central Time* [Docket No. 914] in accordance with the Bidding Procedures Order and such notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Hearing.

H.     The notice described in the foregoing Paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and all deadlines related thereto shall be required.

I.     <u>Marketing and Sale Process</u>. The Sale of the Purchased Assets to the Purchaser pursuant to the Bidding Procedures is duly authorized under sections 363(b)(1) and 363(f) of the Bankruptcy Code, Bankruptcy Rule 6004(f), and Bankruptcy Local Rules 2002-1 and 4002-1. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals, agents, and other representatives engaged in a robust and extensive marketing and sale process and have marketed the Purchased Assets and conducted all aspects of the sale process in good faith and in compliance with the Bidding Procedures and the Bidding Procedures Order.  The marketing process undertaken by the Debtors and their professionals, agents, and other representatives with respect to the Purchased Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders.  The Bidding Procedures and the Auction were duly noticed, were substantively and procedurally fair to all parties, and were conducted in a diligent, non-collusive, fair, and good-faith manner.  The Prepetition Secured Parties have acted in good faith in all aspects of the

sale process, including, without limitation, the Auction, and in compliance with the Bidding Procedures and the Bidding Procedures Order.

J.      Pursuant to the terms of the Bidding Procedures, the Debtors conducted an Auction which commenced on December 17, 2021 in accordance with the Bidding Procedures and Bidding Procedures Order.  The transaction contemplated by the APA was the highest and best bid for the Purchased Assets received by the Debtors and, therefore, the Purchaser was designated as the Winning Bidder and the transaction contemplated by the APA was designated as the Winning Bid.  As established by the record of the Sale Hearing, the bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Debtors and the Purchaser.  The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Purchased Assets, and the APA constitutes the best and highest offer for the Purchased Assets following conclusion of the Auction.

K.      Corporate Authority.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The Debtors (i) have full corporate power and authority to execute the APA, and the Sale to the Purchaser has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the Sale contemplated by the APA, (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the Sale contemplated thereby, and (iv) require no consents or approvals, other than those expressly provided for in the APA, to consummate the Sale.

L.    Highest and Best Offer; Business Judgment.   The Debtors have demonstrated sufficient basis to enter into the APA and sell the Purchased Assets on the terms outlined therein and assume and assign the Business Contracts (the "Designated Contracts") to the Purchaser in accordance with the terms of the APA, and this Sale Order under sections 363 and 365 of the Bankruptcy Code.  Such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  Approval of the Sale pursuant to the APA at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

M.    The offer of the Purchaser, upon the terms and conditions set forth in the APA, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and best offer received by the Debtors after extensive marketing, including through the Bidding Procedures, (ii) is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest and (iii) constitutes full and adequate consideration, is fair and reasonable and constitutes reasonably equivalent value, fair consideration, and fair value for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.  Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates or on terms more beneficial to the Debtors and their respective estates.

N.    Neither the Debtors nor the Purchaser (i) has entered into the APA or proposes to consummate the Sale for the purposes of hindering, delaying, or defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing to consummate the Sale fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent

transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

O.      Good and sufficient reasons for approval of the APA have been articulated by the Debtors.  The Debtors have demonstrated compelling circumstances for the Sale outside (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (ii) a plan of reorganization or liquidation (as the case may be), in that, among other things, the consummation of the Sale to the Purchaser is necessary and appropriate to preserve and to maximize the value of the Debtors' estates.  To maximize the value of the Purchased Assets, it is essential that the consummation of the Sale occur promptly.

P.      The sale of the Purchased Assets outside of a chapter 11 plan pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors or equity interest holders nor impermissibly dictates the terms of a chapter 11 plan of the Debtors.  The APA and the Sale do not constitute a *sub rosa* chapter 11 plan.

Q.      <u>Back-up Bidder</u>.  The Debtors have also demonstrated sufficient basis to select and designate the bid of St. Croix Energy, LLLP ("<u>SCE</u>") as the next highest and otherwise best bid for all or substantially all assets of the Debtors pursuant to the terms of that certain the Asset Purchase Agreement dated as of December 16, 2021 by and between the Debtors and St. Croix Energy, LLLP (as amended and modified on the record during the Auction, the "<u>SCE APA</u>" or "<u>Designated Back-up Bid</u>").  Such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  Approval of SCE as the Back-up Bidder (as defined in the Bidding Procedures Order) and SCE APA as the Back-up Bid (as defined in the Bidding Procedures Order) at this time is in

the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

R.  _Opportunity to Object_.  A reasonable opportunity to object or be heard with respect to the Bidding Procedures, the Auction, the Sale (and all transactions contemplated in connection therewith), the procedures for assumption and assignment of the Designated Contracts to the Purchaser pursuant to the APA, the Sale Hearing, and all deadlines related thereto has been afforded to all parties in interest required to receive notice pursuant to the Bidding Procedures Order, including, but not limited to, the Notice Parties and any party that has requested notice pursuant to Bankruptcy Rule 2002.

S.  _Good Faith Purchaser; Arm's Length Sale_.  The APA was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors, nor the Purchaser, nor any affiliate of the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

T.  The Purchaser is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  In particular, (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the Purchaser in no way induced or caused the chapter 11 filing by the Debtors; (iii) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, officers, or controlling stakeholders exists between the Purchaser and any of the Debtors; (v) the Purchaser agreed to subject their bid to the competitive bid procedures set forth in the Bidding Procedures Order; (vi) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; and (vii) the Purchaser has not

acted in a collusive manner with any person.

U.      Neither the Purchaser nor any of their affiliates, members, officers, directors, shareholders, or any of its or their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code, and the Purchaser's professionals, agents, and other representatives have complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA.  The APA complies with the Bidding Procedures Order and all other applicable orders of this Court.

V.      <u>Free and Clear Transfer Required by Purchaser</u>.  The Purchaser would not have entered into the APA and would not have consummated the Sale, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale was not free and clear of all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever (excluding the assumed liabilities under the Refinery Operating Agreement, dated as of July 2, 2018, by and between Limetree Bay Refining, LLC (as Refinery Operator) and Government of U.S. Virgin Islands (the "**<u>Operating Agreement Assumed Liabilities</u>**")) as more fully set forth in Paragraph 9 of this Sale Order, or if the Purchaser would, or in the future could, be liable for any Excluded Liabilities.  For the avoidance of doubt, the Purchaser shall have no responsibility whatsoever with respect to the Excluded Liabilities, which shall remain the responsibility of the Debtors before, on, and after the Closing of the Sale.

W.      As of the Closing, and pursuant and subject to the terms of the APA and Transaction Documents, the transfer of the Purchased Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Purchased Assets and will vest the Purchaser – with Purchaser taking title in PHRT – with all of the Debtors' rights, title, and interests in the

Purchased Assets free and clear of all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever (excluding the Operating Agreement Assumed Liabilities), including, but not limited to, (i) liens, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, subleases, leases, conditional sale arrangements, or other title retention arrangements, other liens (including mechanic's, materialman's, possessory and other consensual and non-consensual liens and statutory liens), judgments, charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, any dedication under any gathering, transportation, treating, purchasing or similar agreement that is not assumed by or assigned to the Purchaser, or any rights that purport to give any party a right of first refusal or consent with respect to the Debtors' interest in the Purchased Assets or any similar rights; (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, claims for reimbursement, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, indentures, loan agreements, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement,

understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, labor, employment and pension claims, and debts arising in any way in connection with any agreements, acts, or failures to act, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iv) any rights based on any successor or transferee liability; (v) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (vi) any rights under labor or employment agreements; (vii) any rights under mortgages, deeds of trust, and security interests; (viii) any rights related to intercompany loans and receivables between the Debtors and any non-Debtor subsidiary or affiliate; (ix) any rights under pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (x) any other employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor

Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101 *et seq.*) (the "WARN Act"); (xi) any bulk sales or similar law, including any applicable bulk sale, bulk transfer, successor liability, or similar Laws, or any Laws triggered by a bulk sale or transfer of property; (xii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, including, without limitation, any *ad valorem* taxes assessed by any applicable taxing authority; (xiii) any executory contract or unexpired lease to which a Debtor is a party that will not be assumed and assigned to the Purchaser pursuant to this Sale Order and the APA, subject to the obligations of the Purchaser under any Transaction Documents; and (xiv) any other Excluded Liabilities as provided in the APA.

X.     Satisfaction of Section 363(f).   The Debtors may sell the Purchased Assets free and clear of any and all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. All parties in interest,

including, without limitation, any holders of Liens, Claims, or Interests, who did not object, or who withdrew their objection, to the Sale, are adequately protected by having their Liens, Claims, or Interests, if any, attach to the portion of the purchase price ultimately attributable to the Purchased Assets against or in which they claim an interest, in the order of their priority, with the same validity, force and effect, if any, which they now have against such Purchased Assets, subject to any claims and defenses the Debtors or their estates may possess with respect thereto.

Y.    No Successorship.  Neither the Purchaser nor any of its affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the APA.

Z.    The Designated Contracts.  The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign any Designated Contracts to the Purchaser in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Designated Contracts to the Buyers is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.  The Designated Contracts to be assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser and, accordingly, such assumption, assignment and cure of any defaults under the Designated Contracts in accordance with the procedures set forth in this Sale Order and the APA are reasonable and enhance the value of the Debtors' estates.  Any counterparty to a Designated Contract that does not actually file with the Court an objection to such assumption and assignment in accordance with the terms of this Sale Order or the APA will be deemed to have consented to such assumption and assignment.

AA.    Cure Amounts and Adequate Assurance.  The Debtors and the Purchaser, as applicable, have, including by way of entering into the APA and Transaction Documents, and agreeing to the provisions relating to any Designated Contracts, (i) provided adequate assurance of cure of any default existing prior to the date hereof under any of the Designated Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Designated Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code and the Purchaser has, based upon the record of these proceedings, including the evidence proffered by the Debtors at the Sale Hearing, provided adequate assurance of their future performance of and under the Designated Contracts pursuant to sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Purchaser's promise under the APA and Transaction Documents to perform the obligations under any Designated Contracts, shall constitute adequate assurance of future performance under the Designated Contracts being assigned to the Purchaser within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Subject to the procedures for the assumption and assignment of Executory Contracts set forth in this Sale Order or the APA, the Cure Amounts are hereby deemed to be the sole amounts necessary to cure any and all defaults under the Designated Contracts under section 365(b) of the Bankruptcy Code.

BB.    Time Is of the Essence; Waiver of Stay.  Time is of the essence in consummating the Sale.  In order to maximize the value of the Purchased Assets, it is essential that the sale and assignment of the Purchased Assets occur within the time constraints set forth in the APA. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.      The Sale Is Approved.**

1.      The Sale of the Purchased Assets pursuant to and in accordance with the terms of the APA and associated Transaction Documents is hereby approved.

**II.      Objections Overruled.**

2.      All objections to the entry of this Sale Order or to the relief granted herein, whether filed, stated on the record before this Court or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits.  All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.      Notice of the Bidding Procedures, the Auction, the Sale (and all transactions contemplated in connection therewith), the Sale Hearing, and all deadlines related thereto was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

**III.      Approval of the APA.**

4.      The APA, including all of the terms and conditions thereof and appendices and exhibit thereto, and Transaction Documents, to the extent necessary, are hereby approved. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the APA and Transaction Documents and to consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and this Sale Order, without further leave of the Court.  The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in

order to consummate the transactions contemplated by the APA or Transaction Documents or perform their obligations under the APA and Transaction Documents, including, without limitation, the payment of $1,000,000 in approved Bid Protection (as defined in the *Order Granting Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* [Docket No. 831]).

5.      The Debtors are authorized, in accordance with the APA, to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the APA, including, without limitation, the Transaction Documents, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the transaction(s) which are the subject of the APA and approved by and through this Order.

### IV.    **Approval of Back-up Bid**.

6.      SCE is hereby approved as the Back-up Bidder (as defined in the Bid Procedures Order), and the SCE APA is hereby approved and authorized as the Back-up Bid (as defined in the Bid Procedures Order).  The Designated Back-up Bid shall remain open in accordance with the terms of the SCE APA through and including January 26, 2022.  In the event the APA is terminated or the sale of the Purchased Assets to Purchaser is not consummated on or before January 21, 2022, then SCE shall be deemed the Winning Bidder (as defined in the Bid Procedures Order) in accordance with the Bid Procedures Order and all references herein to the Purchaser and the APA instead shall be deemed to refer to SCE and the Designated Back-up Bid,

respectively, without further order of this Court. In such case, (i) the findings and other provisions of this Sale Order shall apply to SCE and the Designated Back-up Bid to the same extent as they apply to the Purchaser and APA, and (ii) the Debtors shall, within one (1) day of the selection of SCE as the Winning Bidder, file a notice with the Court advising (x) that the APA with Purchaser was not consummated on or before January 21, 2022, (y) that SCE and the Designated Back-up Bid have become the Winning Bidder and Winning Bid, respectively, pursuant to this Sale Order, and (z) that SCE shall have until January 26, 2022 to consummate the transaction under the Designated Back-up Bid. In the event the Debtors consummate the transaction under the Designated Back-up Bid, the budgetary line item for professional fees under the Transition Services Agreement by and between the Debtors and SCE shall be allocated as follows: (a) counsel for the Debtors shall be entitled to $100,000 for costs associated with chapter 11 plan solicitation; and (b) the remaining funds shall be allocated between the Debtors and the Committee, with two-thirds (2/3) of such funds being allocated to the Debtors and one-third (1/3) of such funds being allocated to the Committee.

**V.**     **Binding Effect of Order.**

7.     This Sale Order and the APA shall be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, or Interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever, all counterparties to the Executory Contracts, the Purchaser, all successors and assigns of the Purchaser, the Debtors and their affiliates and subsidiaries, and any trustee or successor trustee appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code. Nothing contained in this Sale Order shall conflict with or derogate from the provisions of the APA. In the event of a direct conflict between the express terms of the Sale Order and a

provision of the APA, the terms of this Sale Order shall govern solely and exclusively to the extent of the direct conflict and all other provisions of the APA shall be unaffected by the subject conflict; *provide*, *however*, that it is the intention of this Court to approve the APA and Transaction Documents in their entirety and without material alteration and, thus, this Sale Order should be interpreted, to the extent possible, not to conflict with the terms of the APA and Transaction Documents.

## VI.    Amendments to the APA.

8.      The APA and any related agreements, documents, or other instruments may be modified, amended, supplemented, or restated by the parties thereto, in a writing signed by both parties and in accordance with the terms thereof, without further order of this Court, *provided* that any such modification, amendment, supplement, or restatement does not (i) reduce the purchase price under the APA or (ii) otherwise have a material adverse effect on the Debtors' estates. The parties shall give notice of any proposed modifications, amendments or supplements, along with a copy of the proposed modifications, amendments or supplements, to counsel for (a) the Committee, (b) the DIP Agent, (c) the Prepetition Secured Parties (excluding J. Aron), and (d) the LBT Entities[4] at least three (3) business days prior to the effective date of such modification, amendment or supplement. The Committee, the DIP Agent, the Prepetition Secured Parties (excluding J. Aron), and LBT Entities shall have two (2) business days from the date of the notice to object to any such modification, amendment or supplement. If an objection is timely made, the subject modification, amendment or supplement, solely to the extent objectionable, shall not take effect until such objection is resolved amicably or by order of the Court. The APA shall not be altered, amended, rejected, discharged, or otherwise affected

---

[4] The term "LBT Entities" as used herein shall mean, collectively or individually, (i) Limetree Bay Terminals Holdings, LLC (ii) Limetree Bay Terminals Holdings II, LLC; (iii) Limetree Bay Cayman, Ltd.; (iv) Limetree Bay Terminals, LLC; and (v) Limetree Bay Financing, LLC.

without the prior written consent of the Purchaser.

## VII.  <u>Transfer of the Purchased Assets Free and Clear.</u>

9.      Except as expressly permitted or otherwise specifically provided for in the APA or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Purchased Assets shall be transferred to the Purchaser free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, excluding the Operating Agreement Assumed Liabilities.  For purposes of this Sale Order, "Liens," "Claims," and "Interests" shall mean:

a.      any and all charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledge, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of setoff, successor liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, third-party interests, or any other restrictions or limitations of any kind with respect to the Purchased Assets including all the restrictions  or limitations set forth in Paragraph W above (collectively, "<u>Liens</u>");

b.      any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment, or pension laws, (ii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, and (iii) any and all other claims, causes of action, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third-party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and  bidding process with respect to the Purchased Assets, or the Sale contemplated by the APA including all the claims set forth in Paragraph W above (collectively, "<u>Claims</u>"); and

c.      any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) any of the Debtors or their respective

affiliates, subsidiaries, successors, or assigns or (y) the Purchased Assets, including all the interests set forth in Paragraph W above (collectively, "Interests");

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing. Any and all such Liens, Claims, and Interests shall attach to the portion of the purchase price ultimately attributable to the Purchased Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Purchased Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto. On the Closing, the Purchaser shall take title to and possession of the Purchased Assets in PHRT, subject only to the obligations under the APA and Transaction Documents, including Operating Agreement Assumed Liabilities.

10.     Nothing in this Order or the APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any

defense asserted under this Order.

11.     Furthermore, notwithstanding anything in this Order or in the APA to the contrary, the Purchaser must become party to (i) the Consent Decree as modified by the First Modification and Second Modification in United States and the *United States Virgin Islands v. HOVENSA L.L.C.*, Civ. No. 1:11-cv-00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree"), and (b) the Joint Stipulation in *United States v. Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-00264 (as each may be amended with the mutual consent of the parties); *provided*, that Purchaser shall not become liable for any obligations, other than air monitoring obligations, under such Consent Decree or Joint Stipulation that do not relate to property or units purchased or to be operated by Purchaser pursuant to this Sale Order by reason of so becoming a party to such Consent Decree or Joint Stipulation.   Nothing in this Order or the Sale Agreement (a) prevents the U.S. Environmental Protection Agency or other agency from issuing any order or taking other action under applicable nonbankruptcy law, or (b) modifies the Consent Decree, the Joint Stipulation, or any other applicable environmental, health and safety, or police and regulatory law.

## VIII.   **Vesting of Assets in the Purchaser.**

12.     The transfer of the Purchased Assets to the Purchaser with Purchaser taking title in PHRT pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing, and shall vest the Purchaser with all of the Debtors' rights, title, and interests in the Purchased Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the exception of the Operating Agreement Assumed Liabilities).

## IX.   **Release of Liens.**

13.     If any person or entity that has filed any financing statements, mortgages, mechanic's liens, *lis pendens*, or any other documents or agreements evidencing a Lien on the

Debtors or any of the Purchased Assets conveyed pursuant to the APA and this Sale Order shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Purchased Assets of any kind or nature whatsoever. Upon releasing of any Liens, the Liens will attach to the proceeds of the Sale attributable to the subject assets in the order and priority that existed prior to such releases.

**X.    Assumption and Assignment of Designated Contracts.**

14.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the following procedures (the "Assumption and Assignment Procedures") for the Debtors' assumption and assignment to the Purchaser of the Designated Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto shall be deemed satisfied upon compliance with the Assumption and Assignment Procedures.

   a.  Within three (3) business days of the entry of this Order, the Debtors shall file with the Court and serve the same on all known counterparties to the Designated Contracts a notice (a "Designated Contract Notice") containing the following: (i) the executory contracts and unexpired leases that will be Designated Contracts under the APA that will be assumed and assigned to Purchaser; (ii) the name and address of the known contract counterparties thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Section 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); (iv) the date upon which the assumption and assignment of the Designated Contract to the Purchaser shall be effective (the "Contract

Assignment Date"); and (v) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of such Designated Contract, which deadline shall be fourteen (14) days from the filing of the Designated Contract Notice (the "<u>Designated Contract Objection Deadline</u>").

b.  All objections to the proposed assumption and assignment of any Designated Contracts must: (i) be filed with the Court on or before the Designated Contract Objection Deadline and served on the Debtors, the U.S. Trustee and Notice Parties; (ii) identify the Designated Contract(s) to which the objector is party; (iii) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "<u>Cure Claim</u>"); (iv) identify the bases of the alleged Cure Claim under the proposed Designated Contract; and (v) attach all documents supporting or evidencing the Cure Claim.

c.  If no objection is filed by the Designated Contract Objection Deadline, the Cure Amount set forth in the Designated Contract Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Designated Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the Designated Contracts.

d.  Any Cure Claim not resolved through an agreement of the Debtors, Purchaser, and the objecting party within fourteen (14) days after the Designated Contract Objection Deadline shall be presented to the Court at a hearing to be scheduled as soon as practicable with the Court's availability, or such later date and time as the Debtors, the Purchaser, and the objecting party may agree or the Court may order.

15.     The Debtors are hereby authorized, in accordance with the APA, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Purchaser the Refinery Operating Agreement, dated as of July 2, 2018, by and between Limetree Bay Refining, LLC (as Refinery Operator) and Government of U.S. Virgin Islands, effective upon the Contract Assignment Date and subject to the Debtors' compliance with the Assumption and Assignment Procedures, free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the exception of the Operating Agreement Assumed Liabilities and, if any, obligations with respect to Cure Amount and Cure Claims as to any Designated Contracts),

which Designated Contracts, by operation of this Sale Order, shall be deemed assumed and assigned to the Purchaser effective as of the date set forth in the notice filed in connection therewith, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser may deem reasonably necessary to assign and transfer the Designated Contracts to Purchaser with PHRT becoming the party to such Designated Contracts.

16.    Subject to paragraph 14 hereof, compliance with the APA and the Assumption and Assignment Procedures set forth herein, and Purchaser's payment of allowed Cure Amounts/Cure Claims, if any, with respect to the subject Executory Contract:

    a.    The Debtors are authorized to and may assume all of the Designated Contracts in accordance with section 365 of the Bankruptcy Code.

    b.    The Debtors are authorized to and may assign each Designated Contract to the Purchaser with PHRT becoming the party to such Designated Contracts in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Designated Contract that prohibit or condition the assignment of such Designated Contract on the consent of the counterparty thereto or allow the non-Debtor party to such Designated Contract to terminate, recapture, impose any penalty, condition, renewal or extension, or modify any term or condition upon the assignment of such Designated Contract shall constitute unenforceable anti-assignment provisions which are expressly preempted under section 365 of the Bankruptcy Code and void and of no force and effect.

    c.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Designated Contracts by the Debtors to the Purchaser have been satisfied.

    d.    Upon the Contract Assignment Date, the Designated Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Designated Contract (including those of the type described in sections 365(b)(2), 365(e)(1) and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer.

    e.    After the Debtors' transfer and assignment of the Designated Contracts to the Purchaser, in accordance with sections 363 and 365 of the Bankruptcy

Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Designated Contract.

f.  Any portion of any Designated Contract which purports to permit a landlord thereunder to cancel the remaining term of such Designated Contact if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against the Purchaser, or their assignees and sublessees; and the landlords under any such Designated Contract shall not have the right to cancel or otherwise modify the Designated Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Designated Contract to the Purchaser, or the interruption of business activities at any of the leased premises.

17.     All defaults and all other obligations of the Debtors under the Designated Contracts occurring, arising or accruing prior to the assignment thereof to the Purchaser upon the Contract Assignment Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) are deemed to have been cured or satisfied by the Purchaser's payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Designated Contract in the applicable Cure Amounts set forth on the Designated Contract Notice or any supplement thereto (or any other Cure Amount reached by agreement after an objection to the proposed Cure Amount by a counterparty to a Designated Contract), which was served in compliance with this Sale Order, and which Cure Amounts shall be satisfied on the Contract Assignment Date and in accordance with the APA.

18.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of any Designated Contract following the effective date of such assumption and assignment to Purchaser.

## XI.     **Disposition of Sale Proceeds**

19.     Upon receipt of the Purchase Price, (a) pursuant to paragraph 25 of the Court's

*Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B)Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 495] (the "DIP Order") and section 2.04(b) of the DIP Credit Agreement (as defined in the DIP Order), the Debtors shall immediately transfer to 405 Sentinel LLC, the Debtors' DIP lender, that portion of the Purchase Price as is required to indefeasibly pay the DIP Obligations (as defined in the DIP Order) in full and (b) the Debtors shall immediately transfer into a segregated debtor in possession account a portion of the Purchase Price equal to the sum of (i) the Carve Out (as defined in the DIP Order) provided in the DIP Order and (ii) professional fees payable under the Approved Budgets (as defined in the DIP Order); provided, however, that as soon as reasonably practicable, the Debtors shall use such funds to pay professional fees as permitted under the Approved Budgets, subject to the interim compensation procedures order, if applicable. All parties reserve their respective rights with respect to any proposed Budgets (as defined in the DIP Order) that, as of the date hereof, have not been approved in accordance with the DIP Order.

**XII.** **Modification of the Automatic Stay.**

20. The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the APA and the provisions of this Sale Order.

**XIII.** **Release of Liens by Creditors; Collection of Purchased Assets.**

21. Except as expressly provided to the contrary in this Sale Order or in the APA, the holder of any valid Lien, Claim, or Interest in the Debtors or the Purchased Assets shall, as of the Closing, be deemed to have waived and released such Lien, Claim, or Interest, without regard to whether such holder has executed or filed any applicable release, and such Lien, Claim, or,

Interest shall automatically, and with no further action by any party, attach to the portion of the purchase price ultimately attributable to the Purchased Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Purchased Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto. Notwithstanding the foregoing, any such holder of such a Lien, Claim, or Interest is authorized to execute and deliver any waivers, releases, or other related documentation, as reasonably requested by the Debtors.

22. As of the Closing, the Purchaser and its successors and assigns shall be designated and appointed as the Debtors' true and lawful attorney with full power of substitution in the Debtors' name and stead on behalf of and for the benefit of the Purchaser, and its successors and assigns, for the sole and limited purposes of demanding and receiving any and all of the Purchased Assets and giving receipts and releases for and in respect of the Purchased Assets, or any part thereof, and from time to time, instituting and prosecuting against third parties for the benefit of the Purchaser, their successors and assigns, proceedings at law, in equity or otherwise, which the Purchaser, and their successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets; *provided*, that such rights shall be subject to the terms and conditions of the APA and Transaction Documents, to the extent applicable, and, under no circumstances, shall Purchaser have the right to take any action on behalf of the Debtors with respect to the Excluded Assets or the Chapter 11 Cases or any related proceeding. This Court shall retain jurisdiction to determine whether any actions taken by Purchaser exceeds the authority conferred by this paragraph and, if such action is determined to be in violation of this provision, order any appropriate relief.

**XIV.** **Effect of Recordation of Order.**

23. This Sale Order, once filed, registered, or otherwise recorded, (a) shall be

effective as a conclusive determination that, upon the Closing, all Liens, Claims, and Interests of any kind or nature whatsoever (except for the Operating Agreement Assumed Liabilities) existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Purchased Assets. Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the APA, including, without limitation, recordation of this Sale Order.

**XV.** **Administrative Priority Status.**

24.     Purchaser reserves the right to seek allowance of an administrative expenses claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code on account of any amounts that become payable by the Debtors to the Purchaser pursuant to or in connection with the APA or the Transaction Documents; *provided, however*, that the Debtor, UCC, and, to the extent any amounts remain owing under the DIP Credit Agreement, the DIP Lender expressly reserve and retain any and all rights, claims, defenses and other objections or oppositions to the allowance of any such claim(s).

## XVI. **Prohibition of Actions Against the Purchaser.**

25.    Except as expressly permitted or otherwise specifically provided for in the APA, Transaction Documents, or this Sale Order, including, without limitation, as to any Cure Amounts or Cure Claims, the Purchaser and its affiliates shall have no liability or responsibility to any non-Debtor entity[5] for any liability or other obligation of the Debtors' arising under or related to the Purchased Assets or otherwise, and upon Closing, all entities or persons are permanently and forever prohibited, barred, estopped, and enjoined from asserting  against the Purchaser and its permitted successors, designees, and assigns, or property, or the Purchased Assets conveyed in accordance with the APA, any Lien, Claim, or Interest of any kind whatsoever arising prior to Closing, including, without limitation, under any theory of successor or transferee liability, *de facto* merger or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

## XVII. **No Interference.**

26.    Following the Closing, no holder of a Lien, Claim, or Interest in or against the Debtors or the Purchased Assets shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, Claim, and/or Interest or any actions that the Debtors may take in the Chapter 11 Cases or any successor cases.

## XVIII. **Retention of Jurisdiction.**

27.    This Court retains jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Sale Order and the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in

---

[5] For purposes of this provision, a Debtor entity includes any person or entity asserting a right of the Debtors or their respective bankruptcy estate, including, without limitation, the official committee of unsecured creditors, and any trustee appointed in the Chapter 11 Cases, whether under chapter 7 of the Bankruptcy Code or pursuant to a confirm chapter 11 plan.

all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Purchased Assets or performance of other obligations owed to the Purchaser; (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors; (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (d) interpret, implement, and enforce the provisions of this Sale Order; and (e) protect the Purchaser and its affiliates against (i) any Liens, Claims, and Interests in or against the Debtors or the Purchased Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Purchased Assets that may be in their possession.

## XIX. <u>Good Faith Purchaser.</u>

28. The Sale contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser (including the assumption and assignment by the Debtors of any Designated Contract), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

## XX. <u>Inconsistencies with Prior Orders, Pleadings or Agreements.</u>

29. To the extent this Sale Order is inconsistent or conflicts with any prior order (other than the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 495]) or pleading in these Chapter 11 Cases, the terms of this Sale Order shall govern and any prior orders shall be deemed amended or otherwise modified solely to the extent required to permit consummation of the Sale pursuant to this Sale Order, the APA,

and Transaction Document.

## XXI. Failure to Specify Provisions.

30.     The failure to specifically reference any particular provisions of the APA or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and other related documents be authorized and approved in their entirety and without alteration.

## XXII. Provisions Regarding LBT Entities.

31.     <u>Sale of Debtors' Interest in Assets Only</u>.  This Order authorizes, permits, and shall be deemed to authorize and permit the Debtors to sell to the Purchaser any undivided interest of shared services systems owned by the Debtors.  Notwithstanding anything to the contrary in this Order or the APA, nothing in this Order authorizes, permits or shall be deemed to authorize or permit, the Debtors to sell, transfer or assign to the Purchaser or any other party any Non-Debtor Asset (as defined in the Bidding Procedures) including, for the avoidance of doubt, the LBT Entities' undivided interest of shared services systems, any real property owned by the LBT Entities, or the rights of the LBT Entities under any Permits.

32.     <u>LBT Entities Not Affiliates of the Debtors.</u>  Notwithstanding anything to the contrary in this Order, the APA, or any applicable transition services agreement, the LBT Entities are not, and shall not be considered, affiliates of the Debtors for purposes of this Order, the APA, or any applicable transition services agreement, including, without limitation, with respect to any obligations, rights, representations, warranties, covenants, indemnification, or releases set forth in this Order or the APA, and no such obligations, rights, representations, warranties, covenants, indemnification, or releases shall be deemed to bind, extend to, or be

enforceable against any of the LBT Entities in their capacity as affiliates of the Debtors; *provided*, *that*, for the avoidance of doubt, any provisions of this Order that apply to the LBT Entities in any capacity other than as affiliates of the Debtor shall not be modified in any way by the terms of this paragraph 33.

33.     <u>No Assumption or Assumption and Assignment.</u>  Notwithstanding anything to the contrary in this Order or the APA, (i) no agreements between the Debtors and the LBT Entities, including that certain Shared Services Systems Agreement dated as of November 30, 2018 by and among Limetree Bay Terminals, LLC, Limetree Bay Refining, LLC, and Limetree Bay Refining Marketing, LLC (the "**SSSA**"), are being assumed or assumed and assigned; (ii) nothing contained in this Order or the APA authorizes the Debtors to transfer any rights under the SSSA to the Purchaser or any other party; *provided*, *that*, the Debtors may transfer to Purchaser the assignment of ingress and egress easement as well as any other access easements on the subject refinery/terminal property held by Limetree Bay Refining, LLC, if any; (iii) nothing contained in this Order, the APA, or any applicable transition services agreement, obligates or requires, or shall be deemed to obligate or require, the LBT Entities, the Debtors, or the Purchaser to provide any services, or goods including, without limitation, employees, fuel, or power to the LBT Entities, the Debtors, or the Purchaser, including pursuant to the SSSA; and (iv) nothing contained in this Order, the APA, or any applicable transition services agreement, waives or shall be deemed to waive any rights of the LBT Entities or the Debtors under or with respect to the SSSA or the rights of the Debtors, the LBT Entities, or the Purchaser with respect to potential assumption or assumption and assignment of the SSSA pursuant to section 365 of the Bankruptcy Code.

34.      Rights of Access Are Preserved.  Notwithstanding anything to the contrary in this Order, the APA or any applicable transition services agreement, all rights, claims, and defenses of the LBT Entities, the Debtors, and the Purchaser (if any) under or with respect to any agreements benefitting or in favor of the LBT Entities, the Debtors, or the Purchaser (if any), respectively are expressly and fully reserved and preserved, including, without limitation, all easements and rights of use or access to the Debtors' property and property jointly owned by the Debtors and the LBT Entities' property, including as set forth in the SSSA, and, for the avoidance of doubt, the LBT Entities and Purchaser may continue to use and benefit from all such easements and rights of use or access after Closing in accordance with the SSSA or any other agreements between the Debtors and the LBT Entities.

35.      Shared Authorization.  Notwithstanding anything to the contrary in this Order or the APA, (i) Purchaser and the LBT Entities shall work in good faith with one another and use commercially reasonable efforts to take any actions necessary to maintain any licenses, certificates, permits, orders, approvals, consents, determinations, variances, franchises, entitlements, approvals or other authorizations from any governmental authority that are shared by and between the LBT Entities and the Debtors and that are acquired or used by Purchaser as a result of the Sale; and (ii) nothing in this Order or the APA imposes any obligation of the Purchaser or the Debtors to comply with applicable regulatory or governmental laws or authorities on the LBT Entities.

36.      Payment of Budgeted Amounts under Transition Services Agreement (If SCE Becomes the Winning Bidder).  In the event that SCE and the Designated Back-up Bid become the Winning Bidder and Winning Bid, respectively, notwithstanding anything in this Order or any previous order of the Court, the Debtors are authorized, directed to, and shall use any

payments or proceeds received from the Purchaser under any transition services agreement to first pay the amounts set forth in the budget attached to such transition services agreement before such payments or proceeds are used for any other purpose by the Debtors.

## XXIII. **Additional Provisions**

37.     <u>Galena Park Independent School District, et al. [Docket No. 838]</u>.  To the extent the Debtors have any assets within the boundaries of the Certain Texas Taxing Entities (as that term is defined in the *Limited Objection and Reservation of Rights of Certain Texas Taxing Entities to the Debtors' Emergency Motion to (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief, Motion for Sale of All or Substantially All Assets Free and Clear of Liens as Described in Section 363(f)* [Docket No. 838]) that constitute Purchased Assets under the APA (the "<u>Texas Taxing Entities' Assets</u>"), the Certain Texas Taxing Entities' tax liens shall attach to the portion of the Purchase Price ultimately attributable to the Texas Taxing Entities' Assets in the order of their priority, with the same validity, force, and effect, if any, which such tax liens now have against the Texas Taxing Entities Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

38.     <u>HKA Enterprises, LLC [Docket No. 851]</u>.  For the avoidance of doubt, the construction lien recorded by HKA Enterprises, LLC ("<u>HKA</u>") as document #2021002480, Book 1622 Page 324 with the Recorder of Deeds located in the Virgin Islands, St. Croix (the "<u>Construction Lien</u>"), shall attach to that portion of the Purchase Price ultimately attributable to the sale of the purported collateral for the Construction Lien (the "<u>HKA Collateral</u>") in the order of priority and with the same validity, force, and effect, if any, which it may now have against the HKA Collateral, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto, as provided in paragraphs 9 and 21 of this Order.

39. <u>Axens North America [Docket Nos. 854 and 874]</u>. Notwithstanding anything to the contrary herein, all reservation of rights set forth in the Limited Objection filed by Axens North America Inc. ("<u>Axens</u>") [Docket No. 874] are hereby reserved. Nothing contained herein shall constitute a waiver of Axens' right to assert claims for infringement of its intellectual property, unfair competition and/or any other claims for unlawful use of any unit previously owned by the Debtors, which are the subject of that certain License Agreement, dated November 21, 2018 between the debtor, Limetree Bay Refining LLC, and Axens (the "<u>License</u>"), in the event the Debtors do not assume and assign the License to Purchaser.

40. <u>SAP America, Inc. [Docket Nos. 863 and 951]</u>. Absent compliance with Section 365 of the Bankruptcy Code and the Assumption and Assignment Procedures, or written agreement of the Debtors and SAP America, Inc. ("<u>SAP</u>"), (a) the Debtors shall not (i) assume, assume and assign, or otherwise transfer any executory contract between any Debtor and SAP or (ii) provide transition services utilizing or allow the shared use of the software, proprietary information, or cloud services owned, licensed, or provided by SAP (the "<u>SAP Software</u>") or any SAP Software-related services licensed or provided by SAP to either the Purchaser, SCE, or any third party to the extent prohibited under the applicable agreement(s) between the Debtors and SAP, and (b) neither the Purchaser nor SCE shall acquire any license or other rights under any executory contract between any Debtor and SAP notwithstanding the transfer of any Business IT Assets pursuant to the Sale.

41. <u>Intertek USA Inc. [Docket No. 867]</u>. Nothing in this Sale Order shall be construed as a determination of, and Intertek USA Inc. and the Debtors expressly reserve all rights, claims, and defenses with respect to, the respective rights and interests of Intertek USA Inc. and the Debtors to the Intertek Equipment (as defined in Intertek's *Motion for Relief from*

*Automatic Stay Pursuant to 11 U.S.C. § 362(d) and for Waiver of the 14- Day Stay Pursuant to Fed. R. Bankr. P. 4001(a)(3)* [Docket No. 868]).

    42.    <u>Harris County, Texas [Docket No. 869]</u>.  The Debtors agree that, to the extent the Debtors have any personal assets located in Harris County, Texas that constitute Purchased Assets under the APA (the "<u>Harris County Assets</u>"), the Harris County tax lien shall attach to the portion of the purchase price ultimately attributable to the Harris County Assets in the order of its priority, with the same validity, force, and effect, if any, which it now has against such Purchased Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

    **Signed:  December 21, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit 1**

**Asset Purchase Agreement**

**Exhibit 1**

**Asset Purchase Agreement**

[EXECUTION VERSION]

**ASSET PURCHASE AGREEMENT**

**by and among**

**LIMETREE BAY SERVICES, LLC,**

**LIMETREE BAY REFINING HOLDINGS, LLC,**

**LIMETREE BAY REFINING HOLDINGS II, LLC,**

**LIMETREE BAY REFINING, LLC,**

**LIMETREE BAY REFINING OPERATING, LLC, AND**

**LIMETREE BAY REFINING MARKETING, LLC,**

**as Sellers**

**and**

**WEST INDIES PETROLEUM LIMITED, a Jamaican corporation, AND**
**PORT HAMILTON REFINING AND TRANSPORTATION, LLLP, a Virgin Islands**
**limited liability limited partnership,**

**as Purchaser**

**Dated as of December [\_\_], 2021**

00693894.DOCX

v.2

[EXECUTION VERSION]

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made as of December [__], 2021, by and among Limetree Bay Services, LLC, a Delaware limited liability company ("LBS"), Limetree Bay Refining Holdings, LLC, a United States Virgin Islands limited liability company ("LBRH"), Limetree Bay Refining Holdings II, LLC, a United States Virgin Islands limited liability company ("LBRH II"), Limetree Bay Refining, LLC, a United States Virgin Islands limited liability company ("LBR"), Limetree Bay Refining Operating, LLC, a United States Virgin Islands limited liability company ("LBRO"), Limetree Bay Refining Marketing, LLC, a United States Virgin Islands limited liability company ("LBRM", along with LBS, LBRH, LBRH II, LBR and LBRO, each a "Seller" and collectively, "Sellers"), and West Indies Petroleum Limited ("WIPL"), a Jamaican corporation, and Port Hamilton Refining and Transportation, LLLP, a Virgin Islands limited liability limited partnership, formed by West Indies Petroleum Limited pursuant to the laws of the United States Virgin Islands ("PHRT" and, together with WIPL, "Purchaser"; Purchaser and Sellers, each a "Party" and collectively, the "Parties"). Capitalized terms used but not otherwise defined in the text of this Agreement have the meanings set forth in Appendix 1 attached hereto, which is incorporated herein and made a part of this Agreement.

## R E C I T A L S

A.     Sellers own an oil refinery located on the island of St. Croix in the United States Virgin Islands (collectively, the "Business").

B.     On July 12, 2021 (the "Petition Date"), Sellers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), which cases are jointly administered under *In re Limetree Bay Services, LLC*, Case No. 21-32351.

C.     On the terms and subject to the conditions set forth in this Agreement, Purchaser desires to purchase from Sellers, and Sellers' desire to sell to Purchaser, the Purchased Assets (the "Purchase").

D.     It is intended that the acquisition of the Purchased Assets will be accomplished through the sale, transfer and assignment of the Purchased Assets by Sellers to Purchaser in a sale undertaken pursuant to §363 of the Bankruptcy Code and that certain executory contracts and unexpired leases will be assumed by Sellers and assigned to Purchaser pursuant to §365 of the Bankruptcy Code in connection therewith.

## A G R E E M E N T S

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows: