**FLINT EXHIBIT 2**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

## COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF LIMETREE BAY SERVICES, LLC AND AFFILIATED DEBTORS

Dated: May 17, 2022
Houston, Texas

**BAKER & HOSTETLER LLP**
*Attorneys to the Debtors*

Elizabeth A. Green, Esq. (Fed ID No. 903144)
Email:  egreen@bakerlaw.com
Jimmy D. Parrish, Esq. (Fed ID No. 2687598)
Email: jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone:  (407) 649-4000
Facsimile:  (407) 841-0168

-and-

Jorian L. Rose, Esq. (*admitted pro hac vice*)
Email:  jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

141. "**Professional Fee Escrow Amount**" means the aggregate unpaid Professional Fee Claims through the Effective Date plus such reasonable fees estimated to be incurred by Professionals in connection with seeking approval of final fee applications as estimated in accordance with Section V.B. and subject to the budgeted amounts in the Approved Budget, as that term is defined in the Final DIP Order.

142. "**Property Damage Claims**" means claims or causes of action against the insurers that provided property damage insurance to the Debtors.

143. "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim, provided that in cases where Pro Rata Share is used in reference to series of Liquidating Trust Units distributed to multiple series or Classes, Pro Rata Share means the portion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such series or Class entitled to Distributions as of the date of such Distribution.

144. "**Purchaser**" means West Indies Petroleum Limited and Port Hamilton Refining and Transportation, LLLP, collectively.

145. "**Putative Class Action Litigation**" means the following class actions pending in the United States District Court of the Virgin Islands: Cotton et al. v. Limetree Bay Ventures, LLC et al., Case No. 1:21-cv-00262; Shirley et al. v. Limetree Bay Ventures, LLC et al., Case No. 1:21-cv-00259; Charles et al. v. Limetree Bay Ventures 1:21-cv-00260; and Boynes et al. v. Limetree Bay Ventures, LLC et al., Case No. 1:21-cv-00253.

146. "**Putative Class Members**" means the named plaintiffs, and others similarly situated, who filed the Putative Class Action Litigation in the United States District Court of the Virgin Islands.

147. "**Refinery Entities**" means LBC II, LBRH, LBRH II, LBR, LBRM, and LBRO.

148. "**Rejection Damages Claim**" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by the Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

149. "**Released Party**" means each of the following solely in its capacity as such: (i) the Debtors, (ii) Steven Pully, the independent director of the Debtors, (iii) the Debtors' chief restructuring officer, Mark Shapiro, and GlassRatner Advisory & Capital Group LLC, d/b/a B. Riley Services, (iv) the Prepetition Secured Parties and their respective officers, directors and partners (excluding, for the avoidance of doubt, any lenders under the Prepetition Term Credit Agreement that are Insider Creditors (as defined in the Final DIP Order), (v) the Prepetition Holdco Secured Parties and their respective officers, directors and partners (excluding, for the avoidance of doubt, any lenders under the Prepetition Holdco Credit Agreement that are Insider Creditors (as defined in the Final DIP Order), and (vi) the professionals and advisors of the foregoing parties. Notwithstanding the foregoing, any Person or Entity that opts out of the releases set forth in the Plan shall not be a Released Party. For the avoidance of doubt, each of the Debtor's non-debtor

affiliates, including LBE, LBV, LBC II, and any directors appointed by an affiliate prior to the Petition Date (other than Steven Pully) shall not be a Released Party.

150.     "**Releasing Party**" means each of the following, solely in its capacity as such: (a) all Released Parties; and (b) all Holders of Claims who vote to accept the Plan <u>and</u> who do not affirmatively elect to opt out of the releases provided in the Plan in accordance with the solicitation procedures. For the avoidance of doubt, the Holders of Claims in Classes deemed to accept the Plan shall not be deemed Releasing Parties on account of such Claims. The United States is not a Releasing Party under the Plan.

151.     "**Revolver Adequate Protection Claim Amount**" means an amount equal to the sum of (i) the Priority Amounts and (ii) the Liquidating Trust Funding Amount. The Revolver Adequate Protection Claim Amount is estimated to be between $4.5-6 million.

152.     "**Revolver Adequate Protection Claim Threshold Event**" means the time at which the Holders of Prepetition Revolver Secured Debt Claims receive Distributions of Class B1 Liquidating Trust Recoveries and Class C1 Liquidating Trust Recoveries in an aggregate amount equal to the Revolver Adequate Protection Claim Amount.

153.     "**Revolver Credit Agreement**" shall have the meaning ascribed in the Final DIP Order.

154.     "**Sale**" means the Debtors' sale of assets to the Purchaser approved pursuant to the Sale Order.

155.     "**Sale Order**" means the *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform Under the Asset Purchase Agreement, (III) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*, entered by the Bankruptcy Court on December 21, 2021 [Doc No. 977].

156.     "**Sale Proceeds**" means the net proceeds from the sale of Assets to Purchaser held by the Debtors, after payment of all DIP Obligations and payments under the Approved Budget, as that term is defined in the Final DIP Order.

157.     "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

158.     "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

159.     "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

160.     "**Terminal Entities**" means Limetree Bay Terminal Holdings, LLC, Limetree Bay Terminal Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Terminals, LLC.

161.     "**Transition Refinery Entity**" means the entity created under the Plan and managed by the Purchaser whose primary purpose shall be the ownership of the permits necessary for the operation of the refinery.

162.     "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

163.     "**Unclaimed Distribution Deadline**" means three (3) months from the date the Liquidating Trustee makes a Distribution.

164.     "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

165.     "**Voting Deadline**" means [•], 2022, at 5:00 p.m. (prevailing Central Time).

166.     "**Voting Procedures**" means the plan voting procedures approved by the Bankruptcy Court.

**B.      Interpretation; Application of Definitions and Rules of Construction.**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in this Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to this Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Plan and Disclosure Statement. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Combined Plan and Disclosure Statement unless otherwise set forth herein or provided by the Bankruptcy Court.

## III.  BACKGROUND

**A.      Nature and History of the Debtors' Business.**

Prior to the Petition Date, the Debtors owned and operated an oil refinery (the "**Refinery**") located on the island of St. Croix in the United States Virgin Islands ("**USVI**"). The Refinery is part of a 2,000-acre industrial complex located on the southern coast of St. Croix comprised of (a) the Refinery and (b) an oil storage facility (or terminal) and docks (the "**Terminal**") owned and operated by the Terminal Entities, non-debtor affiliates of the Debtors.

Beneficiaries of the Liquidating Trust shall be treated as a transfer of such assets directly to such Beneficiaries followed by a contribution of the Liquidating Trust Assets to the Liquidating Trust.

**B.      Reorganization of LBR as the Transition Refinery Entity.**

On the Effective Date, at the election of the Purchaser, LBR shall reorganize as the Transition Refinery Entity and issue 100% of its membership Interests (the "**New Interests**") to the Purchaser. The Purchaser shall file notice of its election no less than fourteen (14) days prior to the filing of the Plan Supplement. If the Purchaser elects for LBR not to reorganize, LBR shall be dissolved on the Effective Date without the necessity for any other or further actions to be taken by or on behalf of the Debtors as provided under Section XVI.I, and the Debtors need take no further action with respect to the assets or interests of the Transition Refinery Entity.

The issuance of the New Interests shall be authorized without the need for any further corporate action and without any further action by the Debtors or the Purchaser. All of the New Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

The purpose of the Transition Refinery Entity shall be the ownership of the permits necessary for the operation of the Refinery previously owned by the Debtors and sold to the Purchaser. The Purchaser shall serve as its manager and sole equity interest Holder. The Debtors and Liquidating Trust shall have no obligations to the Transition Refinery Entity.

The corporate governance of Transition Refinery Entity shall be determined before the Effective Date. The Transition Refinery Entity shall have the authority to engage in any lawful business purpose, including without limitation, the authority to sell, lease, license, and/or dispose of the permits transferred by the Debtors, enter a transition services agreement for the operation of the Refinery, all without further order of the Bankruptcy Court. The Transition Refinery Entity shall be vested with full authority to take any and all steps necessary, appropriate or desirable to cause its own dissolution.

**C.      Transition Refinery Entity.**

Nothing in the Plan Confirmation Order or the Plan releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that the Transition Refinery Entity or that any other Person or Entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order.  Nothing in the Plan Confirmation Order or the Plan authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under applicable nonbankruptcy law including but not limited to police or regulatory law. Nothing in the Plan Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan Confirmation Order or to adjudicate any defense asserted under the Plan Confirmation Order.

Furthermore, notwithstanding anything in the Plan Confirmation Order or in the Plan to the contrary, nothing in the Plan Confirmation Order or the Plan shall modify (a) the Consent Decree

as modified by the First Modification and Second Modification in United States and the *United States Virgin Islands v. HOVENSA L.L.C.*, Civ. No. 1:11-cv-00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree"), or (b) the Joint Stipulation in *United States v. Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-00264 (the "Joint Stipulation") (as each may be amended with the mutual consent of the parties). The Transition Refinery Entity shall be fully bound by all provisions of the Consent Decree and the Joint Stipulation and shall cooperate in the substitution of the Transition Refinery Entity as a named defendant in both cases. Nothing in the Plan Confirmation Order or the Plan (a) prevents the U.S. Environmental Protection Agency or other agency from issuing any order or taking other action under applicable nonbankruptcy law, or (b) modifies the Consent Decree, the Joint Stipulation, or any other applicable environmental, health and safety, or police and regulatory law. Notwithstanding anything in the Plan Confirmation Order or in the Plan to the contrary, nothing in this Plan Confirmation Order or the Plan, including without limitation the Purchaser's receipt and ownership of the New Membership Interests, shall modify the Sale Order or the protections in the Sale Order in favor of Purchaser and governmental units; for the avoidance of doubt, the New Membership Interests shall be issued to Purchaser in furtherance of the transactions contemplated by the Sale Order and shall be afforded the same protections as those set forth in the Sale Order in favor of Purchaser and governmental units.

For the avoidance of doubt, the New Membership Interests shall be issued as limited liability company membership interests rather than stock.

**D.      Permits and Shared Authorizations.**

Notwithstanding anything to the contrary in the Plan or Plan Confirmation Order, the permits retained by the Transition Refinery Entity is limited to the retention of any rights of the Debtors under such permits and shall not alter or impact the rights of the Terminal Entities under any permits, all of which rights of the Terminal Entities are expressly reserved and preserved. The retention of permits by the Transition Refinery Entity and use of such permits remains subject to compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in the Plan Confirmation Order or the Plan imposes any obligation of the Purchaser, Transition Refinery Entity, or the Debtors on the Terminal Entities to comply with applicable regulatory or governmental laws or authorities.

## IX.  PROVISIONS REGARDING THE LIQUIDATING TRUST

**A.      Appointment of the Liquidating Trustee.**

The Liquidating Trustee shall be identified in the Plan Supplement and shall be selected by the Debtors after consultation with the Committee and consent of the Ad Hoc Term Lender Group. All compensation for the Liquidating Trustee, and Liquidating Trust Advisors, shall be paid from the Liquidating Trust Assets, in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his/her duties unless otherwise ordered by the Bankruptcy Court. On the Effective Date, all Beneficiaries of the Liquidating Trust shall be deemed to have ratified and become bound

**FLINT EXHIBIT 3**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

## DEBTORS' <u>EMERGENCY</u> MOTION TO (I) REOPEN AUCTION PURSUANT TO BIDDING PROCEDURES, (II) APPROVE SCHEDULE AND PROCEDURES FOR CONTINUED AUCTION, AND (III) GRANT RELATED RELIEF

**Emergency relief has been requested. A hearing will be conducted on this matter on December 6, 2021, at 4:30 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than December 6, 2021.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (collectively, the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

## Introduction

1.     The Debtors devised and implemented the Bidding Procedures[2] (defined below) in an effort to provide the best opportunity to maximize the value of the assets of the Debtors' estates (collectively, the "**Estates**") for the benefit of creditors in satisfaction of its fiduciary duty.  In so doing, the Debtors identified two potential going concern bidders—St. Croix Energy, LLLP ("**SCE**") and West Indies Petroleum Limited ("**WIPL**")—and worked diligently with these entities to qualify their bids prior to the Auction.  Despite the Debtors' best efforts, the Debtors were unable to designate WIPL as a Qualified Bidder prior to the Auction principally due to the failure to pay the requisite deposit, which ultimately left SCE without a competing going concern bid. Notwithstanding, due to the Debtors severe liquidity issues, which necessitated an unusually expedited sale process, the Debtors proceeded with the Auction and, ultimately, designated SCE as the Winning Bidder.  Although SCE has been designated the winning bidder, it should be noted that the SCE transaction is not finalized and the Transition Services Agreement (the "**SCE TSA**") has not been agreed upon, particularly with respect to the potential need for spending on health and safety in the event SCE is unsuccessful in its restart attempt.

2.     The Debtors have learned that WIPL's initial failure to pay the requisite deposit before the Bid Deadline resulted from a sudden and unforeseen medical emergency that

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Bidding Procedures and *Order Granting Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 392] (the "**Bidding Procedures Order**"), as applicable.

incapacitated WIPL's CEO on the eve of the Bid Deadline—leaving WIPL unable to formally qualify as a bidder or participate in the Auction. The CEO was the only person at WIPL who had sufficient knowledge of the proposed refinery transaction and sale process and was the only person at WIPL who could authorize a deposit or execute an asset purchase agreement. WIPL's CEO is steadily recovering from his ordeal and, although he remains under doctors' care, is now able to resume business responsibilities. As such, WIPL approached the Debtors in the hopes of formally presenting their offer for the purchase of substantially all assets of the Estates on terms more favorable than those under the SCE bid. More precisely, WIPL proposes to acquire substantially all assets of the Estates for the sum of $30 million, cash at closing on December 22, 2021, without the need for an extended transition period or prolonged "designation" period for certain going-concern assets. As a sign of good faith, WIPL has delivered a fully-executed asset purchase agreement (the "**WIPL APA**") and paid a $3 million deposit (the "**WIPL Deposit**")—actions that cured the previous deficiencies of the WIPL bid and permit the qualification of WIPL under the Bidding Procedures. Due to the sudden and unforeseen medical emergency, which occurred just before the Bid Deadline, the initial failure of WIPL to provide a deposit and executed asset purchase agreement was clearly the result of extraordinary circumstances beyond the control of WIPL or the Debtors and, at worst, excusable neglect. The Debtors have a fiduciary obligation to maximize the value of the Estates for the benefit of creditors. The WIPL APA memorializes a transaction that is preferrable to the SCE bid in several respects, including, without limitation, an increase in the purchase price by $10 million to $30 million and the ability to acquire all assets at closing. Accordingly, in consultation

3

with the Notice Parties,[3] the Debtors wish to reopen the Auction in accordance with Section 24.h. of the Bidding Procedures to permit the consideration of the WIPL bid pursuant to the WIPL APA.[4]

4.    While Court authorization is not required to reopen the Auction, the Debtors bring this Motion due to the advanced stage of the sale process to inform and obtain guidance from the Court and to provide interested parties an opportunity to be heard in the hopes of resolving any objections to the reopening of the Auction in advance of the Sale Hearing and, in so doing, ensuring (to the extent possible) a streamlined closing by December 22, 2021 as provided for in the WIPL APA.  Alternatively, if reopening the Auction is not possible, or unreasonably delays or increases costs of the transaction, the Debtors are considering, and reserve the right, in consultation with the Notice Parties, to reject the bids received to date and terminate the bidding/sale process as being contrary to the best interests of the creditors in order to permit the transaction with WIPL to proceed pursuant to the WIPL APA.[5]  For myriad reasons, the Debtors and Notice Parties prefer proceeding via a reopened Auction in accordance with Section 24.h and the other provisions of the Bidding Procedures, as herein modified, and, thus, out of an abundance of caution, hereby seeks Court approval of the proposed course of action.

## **Relief Requested**

5.    Pursuant to the Bidding Procedures Order and Bidding Procedures, each as amended, Sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

---

[3] As used herein, "Notice Parties" refers to, collectively, the DIP Agent, the Prepetition Secured Parties, and Committee.  "Notice Parties" previously included J. Aron; however, pursuant to the Stipulation by and among Debtors, Committee, J. Aron & Company LLC, and BP Products North America Inc. [*see* Docket No. 712], J. Aron no longer has any consultation rights with respect to the administration of the Chapter 11 Cases and the Estates.

[4] Bidding Procedures, Docket No. 392, at p. 26 ("the Debtors, in consultation with the Notice Parties, may … re-open the Auction at any time prior to the commencement of the Sale Hearing….").

[5] Bidding Procedures, Docket No. 392, at p. 26-27 ("[T]he Debtors reserve all rights to terminate the bidding process at any time if the Debtors, consistent with their fiduciary duties and business judgment, in consultation with the Notice Parties, determine that the bidding process will not maximize the value of the Assets. … [T]he Debtors, in consultation with the Notice Parties, may reject at any time before entry of a Sale Order approving such bid, any Bid that, in the Debtors' discretion, is … (iii) contrary to the best interests of the Debtors, their Estates and creditors.")

(the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, and Section K of the Procedures for Complex Cases in the Southern District of Texas, the Debtors hereby move for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), approving the reopening of the Auction pursuant to Section 24.h of the Bidding Procedures, scheduling the reopened Auction as soon as practicable, in consultation with the bidders, and approving the procedures set forth herein for the reopened Auction. The declarations of Mark Shapiro and Michael O'Hara in support of the Motion are attached hereto, respectively, as **Exhibit B** and **Exhibit C** and incorporated herein by reference.

**Jurisdiction and Venue**

6.        The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Debtors further confirm their consent to this Court's entry of final orders or judgments on this Motion, if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

**Background**

7.        On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On or about July

26, 2021, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed [Docket No. 189].

8.      On July 13, 2021, the Court entered an order jointly administering the Chapter 11 Cases under Case No. 21-32351 (DRJ) (Doc. 20).

**A.      Approval of Bidding Procedures and Auction**

9.      On July 26, 2021, the Debtors filed the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 191] (the "**Bid Procedures Motion**"), seeking entry of an order, among other things, (a) approving procedures for the solicitation of bids in connection with a sale (the "**Sale**") of substantially all asset of the Debtors (the "**Assets**"), (b) approving the Sale of Assets as a going concern or liquidation via one or more transactions, subject to final approval, and (c) approving certain procedures for the assumption and assignment of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code.  On August 11, 2021, the Court entered an order granting the Bid Procedures Motion [Docket No. 392] (the "**Bid Procedures Order**") and approving the bidding procedures appended thereto as Appendix A (as amended, the "**Bidding Procedures**").

10.      Following entry of the Bid Procedures Order, the Debtors, through their investment bankers Jefferies LLC ("**Jefferies**"), commenced an extensive "going-concern sale" marketing process.  The Debtors, through B. Riley Advisory Services ("**B. Riley**"), also simultaneously performed a liquidation sale process.  In connection with the Debtors' going-concern sale marketing process, the Debtors officially contacted 183 potential buyers.  The Debtors signed NDAs with 35 potentially interested parties who accessed the Debtors' data room and performed due diligence.

4871-9670-1701.5

11.     In connection with the "going-concern sale" marketing process, the Debtors engaged in extensive discussions with WIPL regarding a potential transaction for the acquisition of the Assets—discussions that culminated in WIPL presenting a formal bid in accordance with the Bidding Procedures.  Pursuant to Section 4 of the Bidding Procedures, the Debtors worked with WIPL, as well as SCE, in an effort to cure technical issues and qualify WIPL as a bidder prior to the Auction.  Indeed, prior to the designation of SCE as the Stalking Horse Bid, the Debtors intended to designate WIPL as the lead bid for the Auction.  Unfortunately, despite the parties' best efforts, the Debtors were unable to qualify WIPL prior to the Auction due to the failure to provide an executed version of the WIPL APA and pay the requisite deposit.

12.     As such, the Debtors designated SCE as the Stalking Horse Bidder pursuant to the Bidding Procedures and, on November 14, 2021, filed a motion to approve certain modifications to the Bidding Procedures to approve the allowance and, if necessary, payment of certain bid protections (the "**SCE Bid Protections**") for SCE [Docket No. 760] (the "**Bid Protections Motion**").  Following a hearing on November 15, 2021, the Court granted the Bid Protections Motion and, in so doing, approved the SCE Bid Protections—namely, $1 million in expense reimbursement for SCE.

13.     On November 18, 2021, the Debtors commenced the Auction.  Due to WIPL's inability to qualify as a bidder, SCE's going concern bid was unchallenged and, as such, selected as the winning bid.  Thereafter, the Debtors held an auction among several liquidation bids to select a composite Back-up Bid comprised of a bid for the catalyst and a bid for the liquidation of the remaining hard assets of the Debtors.[6]  Ultimately, the Debtors selected Bay, Ltd. ("**Bay**") and

---

[6] It is worth noting that although provided an opportunity, the liquidation bids did not bid against the SCE bid during the Auction; rather, the liquidation bids, including the bids of Bay and Sabin, were only presented during the secondary auction following selection of SCE as the winning bid.

Sabin Metal Corporation ("**Sabin**") as the Back-up Bidders.  On November 30, 2021, the Debtors

filed a Notice of (I) Designation of Winning Bid and Back-up Bids and (II) Sixth Notice of

Extension of Milestones and Bid Procedures Deadlines [Docket No. 829] ("**Designation of**

**Winning Bid**").[7]

### B.    Presentment of the WIPL APA

14.    On December 1, 2021, WIPL contacted the Debtors to discuss circumstances

surrounding the prior inability to qualify as a bidder in advance of the Auction and possible

presentation of a bid pursuant to the terms of the WIPL APA, a true and correct copy of which is

attached hereto as **Exhibit D**, albeit with a higher purchase price than previously discussed—

namely, $30 million payable in full at closing.  Thereafter, on or about December 3, 2021, WIPL

furnished a deposit for the proposed transaction in the amount of $3 million, which is presently on

deposit with B. Riley.  On or about December 5, 2021, WIPL delivered an executed version of the

WIPL APA along with evidence of the financial wherewithal to close the transaction and fund

operations while planning a restart of the refinery.

15.    Notwithstanding the presentment of the WIPL APA, the Debtors have continued to

diligently work with SCE to finalize the Transaction Documents (as defined in the SCE asset

purchase agreement ("**SCE APA**")), including, without limitation, the proposed SCE TSA.  The

Debtors' willingness to render services during the transition period, as well as the lenders' support

for such an arrangement, is predicated upon SCE paying for any and all expenses associated with

such services and ensuring the maintenance of adequate health and safety services.  At present, the

---

[7] Although the Debtors' have designated and presented the SCE APA as the Winning Bid, the Debtors have not accepted the SCE APA and, as such, are not bound by the provisions thereof.  *See* Bidding Procedures, Docket No. 392, at p. 26 ("The Debtors' presentation of the Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid.  The Debtors shall have accepted a Winning Bid only when the Court has entered an order approving such bid and the Sale of the Assets subject thereto.").

SCE TSA contains provisions that limit SCE's obligation to fund budgeted expenses, including health and safety service, during the transition period, which may render the Debtors unable to funds certain health and safety measures and, further, may diminish the value ascribed to SCE's financial commitments during the transition period for purposes of valuing the consideration under the SCE APA as compared to the Back-up Bids.

16.     The Debtors have consulted with the Notice Parties in accordance with the terms of the Bidding Procedures regarding the WIPL APA and proposed transaction.  The Debtors also discussed with the Notice Parties the potential courses of action to enable the consideration of the WIPL APA under the Bidding Procedures—namely, (1) reopening the Auction pursuant to Section 24.h of the Bidding Procedures, (2) rejecting the existing bids and restarting the sale process, and/or (3) terminating the bidding process and proceeding with a private sale pursuant to the WIPL APA.  The Debtors and Notice Parties prefer proceeding by reopening the Auction, qualifying WIPL on the terms of the WIPL APA, and permitting Qualified Bidders to present further bids for some or all of the Assets, as permitted under the Bidding Procedures.

17.     The Debtors bring this Motion due to the advanced stage of the sale process as a means of providing transparency and a venue for interested parties to address the proposed reopening of the Auction and consideration of the WIPL bid.  Additionally, the Debtors seek approval of certain procedures for the continued Auction intended to ensure Qualified Bidders are not unduly prejudiced by the reopening of the Auction, which are set forth below.

**<u>Basis for Relief Requested</u>**

**A.      The Debtors are Authorized to Reopen the Auction**

18.     The Bidding Procedures Order provides that "[t]he Bidding Procedures … , including, without limitation, the procedures for the Auction … are hereby approved in all respects

…." Bidding Procedures Order, Docket 392, at p. 2. Pursuant to Section 24.h of the Bidding Procedures, "the Debtors, in consultation with the Notice Parties, may continue the Auction from time to time, adjourn the Auction at any time, and *re-open the Auction at any time prior to the commencement of the Sale Hearing*…." *See* Bidding Procedures, Docket No. 392, at p. 26 (emphasis added). The Court retains exclusive jurisdiction to interpret and enforce the provisions of the Bidding Procedures Order. *See* Bidding Procedures Order, Docket 392, at p. 11 ("This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.").

19. The Bidding Procedures authorize the Debtors to reopen the Auction at any time prior to the commencement of the Sale Hearing. *See* Bidding Procedures, Docket No. 392, at p. 26. The Sale Hearing has not commenced and will not commence prior to the reopened Auction. Further, the Court has the authority to approve the reopening of the Auction independent of the enabling provisions of the Court-approved Bidding Procedures. *See, e.g.*, *First Nat'l Bank v. M/V Lightning Power*, 776 F.2d 1258 (5th Cir. 1985); *In re Financial News Network, Inc.*, 980 F.2d 165, 169 (2d Cir. 1992) (opining that the sale process "is to secure for the benefit of creditors the best possible bid" and "in bankruptcy proceedings substance should not give way to form, and that a bankruptcy judge's broad discretionary power in conducting the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed."); *In re Bigler, LP*, 443 B.R. 101 (Bankr. S.D. Tex. 2010). Under such authority, the Court possesses the authority to reopen the Auction and permit consideration of the WIPL APA as such relief presents a "reasonable degree of probability that a substantially better price will be obtained" at the reopened Auction. *See First National Bank*, 776 F.2d at 1261. Further, such relief is essential to advance the interests of the Estates and its creditors consistent with the fiduciary obligations of the Debtors in connection with

the proposed Sale of the Assets. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources. Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992).

20.     Wherefore, the Debtors respectfully request that the Court affirm the Debtors' authority to reopen the Auction and designate the WIPL APA as a Qualified Bid.[8]

**B.     Court Should Approve the Proposed Procedures for the Reopened Auction**

21.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Fed. R. Bankr. P. 6004(f)(1). The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate. *See, e.g., Integrated Resources. Inc.*, 147 B.R. at 659 ("It is a well-establish principal of bankruptcy law that the Debtors' duty with respect to [Section 363] sales is to obtain the highest price or greatest overall benefit possible for the estate"), *quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

22.     To that end, debtors are granted significant latitude in devising and implementing bidding and sale procedures under Section 363 of the Bankruptcy Code. Indeed, bankruptcy courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the bid procedures to be used in selling assets of the estate. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *See Asarco, Inc. v. Elliott Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *see also GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial

---

[8] If the Court grants the relief requested, the Debtors intend to file a notice of withdrawal for the Designation of Winning Bidder to permit the Auction to proceed pursuant to the proposed Continued Auction Procedures.

deference is given to the Trustee's exercise of business judgment."), (*citing In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)); *see also In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors….").

23.     In connection with the reopened Auction, the Debtors proposed the following procedures in the exercise of their sound business judgment:

a.   The Bidding Procedures, including the Auction Procedures set forth therein, shall control unless contrary to the procedures proposed herein.

b.   As soon as practicable following entry of an order granting this Motion, the Debtors shall, upon consultation with the Notice Parties, WIPL and the bidders at the initial Auction, schedule the reopened Auction and, thereafter, provide notice of the reopened Auction to all parties entitled to the Notice Parties, WIPL, SCE, the Back-up Bidders, and all other parties notice under the Bidding Procedures.

c.   The Debtors may work with any Potential Bidder(s) in an effort to cure any defects in the Bid and to cause such Bid to become a Qualified Bid through the commencement of the reopened Auction.

d.   The Debtors may designate any Bid as a Qualified Bid through the commencement of the reopened Auction.

e.   The SCE bid shall serve as the opening bid for the reopened Auction.

f.   The Debtors, in their business judgment, shall select the order for the presentation of overbids as well as the initial minimum overbid.

g.   At the conclusion of the reopened Auction, the Debtors shall select Winning Bidder(s) and Back-up Bidder(s) in accordance with the Bidding Procedures and, no later than one (1) business day following the conclusion of the Auction, but in no event later than the commencement of the Sale Hearing, shall file a Designation of Winning Bidder based on the results of the reopened Auction.

24. The Debtors respectfully request that the Court approve the Bidding Procedures, as herein amended, for the reopened Auction as fair and reasonable and supported by the sound business judgment of the Debtors.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

25. Based on the foregoing, the Debtors respectfully submit that a waiver of the 14-day stay contained in Bankruptcy Rules 6004(h) and 6006(d) is warranted.

### Request for Emergency Relief

26. Based on the foregoing, the Debtors respectfully submit that emergency consideration of this Motion is essential to permit the Debtors to close a Sale of Assets to one or more Qualified Bidders prior to the deadlines established in the applicable transaction documents, including, without limitation, the WIPL APA, which presently represents the highest and best bid for the Assets. Further, emergency consideration of the Motion will not unduly prejudice any interested parties as such parties have been notified of the intention to reopen the Auction and the exigency of the relief sought herein.

### Certification of Accuracy

27. Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' counsel.

### Notice

28. Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g)

other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors submit that no other or further notice is required.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the Motion in its entirety and grant the Debtors such other relief as is appropriate.

Dated: December 6, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*

**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com

**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

**Michael T. Delaney, Esq.**
*Admitted Pro Hac Vice*
OH Bar No. 99790
Key Tower, 127 Public Sq.
Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740
Email: mdelaney@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green

## Certificate of Service

I certify that on December 6, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4871-9670-1701.5