**EXHIBIT D - ASSET PURCHASE AGREEMENT**
**(EXECUTED)**

ASSET PURCHASE AGREEMENT

by and among

LIMETREE BAY SERVICES, LLC,

LIMETREE BAY REFINING HOLDINGS, LLC,

LIMETREE BAY REFINING HOLDINGS II, LLC,

LIMETREE BAY REFINING, LLC,

LIMETREE BAY REFINING OPERATING, LLC, AND

LIMETREE BAY REFINING MARKETING, LLC,

as Sellers

and

WEST INDIES PETROLEUM LIMITED, a Jamaican corporation, AND
ST. CROIX REFINING AND TRANSPORTATION, LLLP, a Virgin Islands limited
liability limited partnership,

as Purchaser

Dated as of December [__], 2021

TABLE OF CONTENTS

Page

ARTICLE I PURCHASE AND SALE OF ASSETS ................................................................. 2
    1.1    Agreement to Purchase and Sell .............................................................. 2
    1.2    Description of Purchased Assets............................................................... 2
    1.3    Excluded Assets ....................................................................................... 3
    1.4    Assignment of Assigned Contracts .......................................................... 5

ARTICLE II ASSUMPTION OF LIABILITIES ..................................................................... 5
    2.1    Agreement to Assume ............................................................................... 5
    2.2    Assumed Liabilities. ................................................................................. 5
    2.3    Excluded Liabilities ................................................................................. 6

ARTICLE III PURCHASE PRICE, MANNER OF PAYMENT; CLOSING; DEPOSIT ........... 6
    3.1    Purchase Price; Delivery of Funds........................................................... 6
    3.2    Good Faith Escrow Deposit ..................................................................... 6
    3.3    Time and Place of Closing ....................................................................... 7
    3.4    Closing Deliverables ................................................................................ 7
    3.5    Intentionally deleted................................................................................. 8

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLERS ............................. 8
    4.1    Due Organization, Good Standing and Limited Liability Company Power .......... 8
    4.2    Authorization; Noncontravention ............................................................. 8
    4.3    Governmental Consents and Approvals.................................................. 10
    4.4    Property .................................................................................................. 10
    4.5    Title to Purchased Assets ....................................................................... 11
    4.6    Affiliate Transactions............................................................................. 11
    4.7    Material Contracts.................................................................................. 11
    4.8    Intellectual Property Rights and Claims. ............................................... 12
    4.9    Tax Matters ............................................................................................ 13
    4.10   Employee Benefits ................................................................................. 13
    4.11   Compliance with Laws .......................................................................... 14
    4.12   Environmental Matters........................................................................... 14
    4.13   Permits .................................................................................................. 14
    4.14   Litigation............................................................................................... 14
    4.15   Finders; Brokers..................................................................................... 15
    4.16   Exclusivity of Representations; Projections, Etc. .................................. 15

ARTICLE V REPRESENTATIONS AND WARRANTIES OF PURCHASER ...................... 15
    5.1    Due Organization, Good Standing and Power....................................... 16
    5.2    Authorization; Noncontravention ........................................................... 16
    5.3    Governmental Consents and Approvals.................................................. 17
    5.4    Financing............................................................................................... 17
    5.5    Solvency of Purchaser............................................................................ 17
    5.6    Adequate Assurances ............................................................................. 17

5.7    Litigation ............................................................................................................ 17
5.8    Finders; Brokers .................................................................................................. 17
5.9    Intentionally deleted .................................................... **Error! Bookmark not defined.**

ARTICLE VI COVENANTS ................................................................................................ 19
6.1    Intentionally deleted ............................................................................................ 19
6.2    Conduct Prior to the Closing Date ....................................................................... 19
6.3    Efforts to Close ................................................................................................... 20
6.4    Public Announcements ......................................................................................... 21
6.5    Notification of Certain Matters ............................................................................ 21
6.6    Supplements to Schedules ................................................................................... 21
6.7    Post-Closing Access to Records and Personnel; Litigation Support ................... 22
6.8    Tax Matters ......................................................................................................... 23
6.9    Bulk Sales Act .................................................................................................... 23
6.10   Bankruptcy Action .............................................................................................. 24
6.11   Sale Order ........................................................................................................... 24
6.12   Intentionally deleted ............................................................................................ 25
6.13   Transfer of Permits ............................................................................................. 26
6.14   Expenses ............................................................................................................. 26
6.15   Confidentiality .................................................................................................... 26

ARTICLE VII CONDITIONS TO CLOSING ..................................................................... 26
7.1    Conditions to Sellers' Obligations ....................................................................... 26
7.2    Conditions to Purchaser's Obligations ................................................................. 27
7.3    Frustration of Closing Conditions ....................................................................... 27

ARTICLE VIII COMPLIANCE WITH WARN, PLANT CLOSING ACT AND
   SIMILAR STATUTES .................................................................................................. 28
8.1    Compliance with WARN, Plant Closing Act and Similar Statutes ..................... 28

ARTICLE IX TERMINATION ........................................................................................... 28
9.1    Termination Events ............................................................................................. 28
9.2    Effect of Termination .......................................................................................... 29

ARTICLE X SURVIVAL AND RELEASE ......................................................................... 29
10.1   Survival; Certain Post-Closing Matters ............................................................... 29
10.2   Intentionally deleted ............................................................................................ 30

ARTICLE XI MISCELLANEOUS ...................................................................................... 30
11.1   Notices ................................................................................................................ 30
11.2   Entire Agreement ................................................................................................ 31
11.3   Severability ......................................................................................................... 31
11.4   Binding Effect; Benefit ....................................................................................... 32
11.5   Assignability ....................................................................................................... 32
11.6   Amendments ....................................................................................................... 32
11.7   Non-Waiver ......................................................................................................... 32
11.8   Applicable Law ................................................................................................... 32

11.9    Consent to Jurisdiction.............................................................................. 32
11.10   WAIVER OF TRIAL BY JURY ....................................................... 33
11.11   Counterparts............................................................................................ 33
11.12   Headings ................................................................................................. 33
11.13   Time of the Essence ............................................................................... 33
11.14   Rules of Construction ........................................................................... 33

EXHIBITS AND SCHEDULES

| | |
|---|---|
| Appendix 1 | Defined Terms |
| Exhibit A | Form of Bill of Sale and Assignment and Assumption Agreement |
| Schedule 1.1(g) | Business Permits |
| Schedule 1.2(a) | Business Contracts |
| Schedule 1.2(b) | Purchased Real Property |
| Schedule 1.2(d) | Real Property Leases |
| Schedule 1.2(g) | Business Permits |
| Schedule 3.4 | Assignment, Transfer and Conveyance Instruments |
| Schedule 6.2 | Conduct Prior to the Closing Date |
| Sellers Disclosure Letter | |

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("<u>Agreement</u>") is made as of December [__], 2021, by and among Limetree Bay Services, LLC, a Delaware limited liability company ("<u>LBS</u>"), Limetree Bay Refining Holdings, LLC, a United States Virgin Islands limited liability company ("<u>LBRH</u>"), Limetree Bay Refining Holdings II, LLC, a United States Virgin Islands limited liability company ("<u>LBRH II</u>"), Limetree Bay Refining, LLC, a United States Virgin Islands limited liability company ("<u>LBR</u>"), Limetree Bay Refining Operating, LLC, a United States Virgin Islands limited liability company ("<u>LBRO</u>"), Limetree Bay Refining Marketing, LLC, a United States Virgin Islands limited liability company ("<u>LBRM</u>", along with LBS, LBRH, LBRH II, LBR and LBRO, each a "<u>Seller</u>" and collectively, "<u>Sellers</u>"), and West Indies Petroleum Limited ("<u>WIPL</u>"), a Jamaican corporation, and St. Croix Refining and Transportation, LLLP, a Virgin Islands limited liability limited partnership, formed by West Indies Petroleum Limited pursuant to the laws of the United States Virgin Islands ("<u>SCRT</u>" and, together with WIPL, "<u>Purchaser</u>"; Purchaser and Sellers, each a "<u>Party</u>" and collectively, the "<u>Parties</u>"). Capitalized terms used but not otherwise defined in the text of this Agreement have the meanings set forth in <u>Appendix 1</u> attached hereto, which is incorporated herein and made a part of this Agreement.

## R E C I T A L S

A.      Sellers own an oil refinery located on the island of St. Croix in the United States Virgin Islands (collectively, the "<u>Business</u>").

B.      On July 12, 2021 (the "<u>Petition Date</u>"), Sellers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"), which cases are jointly administered under *In re Limetree Bay Services, LLC*, Case No. 21-32351.

C.      On the terms and subject to the conditions set forth in this Agreement, Purchaser desires to purchase from Sellers, and Sellers' desire to sell to Purchaser, the Purchased Assets (the "<u>Purchase</u>").

D.      It is intended that the acquisition of the Purchased Assets will be accomplished through the sale, transfer and assignment of the Purchased Assets by Sellers to Purchaser in a sale undertaken pursuant to §363 of the Bankruptcy Code and that certain executory contracts and unexpired leases will be assumed by Sellers and assigned to Purchaser pursuant to §365 of the Bankruptcy Code in connection therewith.

## A G R E E M E N T S

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

# ARTICLE I
## Purchase and Sale of Assets

1.1     Agreement to Purchase and Sell.  On the terms and subject to the conditions contained in this Agreement, Purchaser agrees to purchase from Sellers, and Sellers agree to sell, transfer and convey to Purchaser, with Purchaser taking title in the name of SCRT, all of Sellers' assets, properties, rights and interests as of the Closing Date, wherever situated or located, other than the Excluded Assets.  All of such assets, properties, rights and interests (other than the Excluded Assets) are collectively referred to in this Agreement as the "Purchased Assets".  The Purchased Assets shall be sold, transferred and conveyed to Purchaser as provided herein free and clear of any and all Liens, in each case to the extent resulting from the Sale Order.

1.2     Description of Purchased Assets.  Without limitation of Section 1.1, the Purchased Assets shall include the following assets owned by Sellers as of the Closing Date, except to the extent that any of the following are also enumerated in Section 1.3 as being Excluded Assets:

(a)     each Contract listed or described on Schedule 1.2(a) (collectively, the "Business Contracts"); provided, however, that notwithstanding the generality of Section 1.1 or anything to the contrary in this Section 1.2, Purchaser shall not acquire any rights or interest under the NRI Consignment Agreement;

(b)     the real property described on Schedule 1.2(b), together with all easements, appurtenances, rights and other hereditaments appurtenant to such real property (collectively, the "Purchased Real Property"), including Sellers' easements, use rights, or options to purchase, or such rights with respect to Purchased Real Property as are used or held for use in the Business; provided, that the agreements, if any, establishing such rights are assigned to Purchaser;

(c)     all Improvements;

(d)     Intentionally deleted;

(e)     all Parts Inventory;

(f)     the Files and Records, whether in hard copy or electronic format, except that, with respect to Files and Records that any Seller or any of its Affiliates is required by Law or Order to retain, the Purchased Assets shall include copies of such Files and Records to the extent permitted by any applicable Law or Order (and, with respect to any personnel records which a Seller or Affiliate is required to retain, to the extent permitted by any applicable Law or Order, copies of such personnel records for employees or consultants who, as of the Closing, will become employees or consultants of Purchaser); provided, that any Seller shall be permitted to retain a copy of any such Files and Records that such Seller requires, including any electronically stored information;

(g)     all Permits (and any pending applications for Permits), other than the Excluded Permits, that are owned, utilized, held or maintained by or licensed to a Seller primarily in connection with such Sellers' ownership or operation of the Business to the

other Purchased Assets, including those Permits described on <u>Schedule 1.2(g)</u> (the "<u>Business Permits</u>");

   (h)   the Business Intellectual Property;

   (i)   the Business IT Assets;

   (j)   all Furniture and Equipment owned by Sellers that is located at the Sellers' Facilities or that is otherwise primarily used or held for use in the Business (other than the Excluded Furniture and Equipment);

   (k)   Intentionally deleted;

   (l)   all insurance recoveries under each Seller's or its Affiliates' insurance policies, in each case solely (i) to the extent Purchaser has paid all premiums and costs associated with such coverage from and after the Closing Date, (ii) with respect to any of the Purchased Assets set forth in <u>Sections 1.2(a)-(j)</u>, and (iii) to the extent first arising with respect to incidents, actions or omissions that occur on or after the Closing Date, and any rights to assert claims with respect to any such insurance recoveries (the "Purchased Insurance Recoveries"); and

   (m)   all assets specifically identified on <u>Schedule 1.2(m)</u>.

   1.3   <u>Excluded Assets</u>.  The "<u>Excluded Assets</u>" means the following items and assets (whether or not such assets are otherwise described in <u>Section 1.2</u>):

   (a)   all cash, certificates of deposit or other cash equivalents;

   (b)   any real property other than Purchased Real Property;

   (c)   all personal property, equipment and inventory not included in the Purchased Assets, including, without limitation, any such assets or Parts Inventory subject to the NRI Consignment Agreement;

   (d)   all rights, claims, defenses, causes of action, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller against any Third Parties, including with respect to any of the Purchased Assets, the Excluded Assets or the Excluded Liabilities, including, without limitation, all Avoidance Actions, and any proceeds of the foregoing;

   (e)   Intentionally deleted;

   (f)   Intentionally deleted;

   (g)   general books of account and books of original entry that comprise a Sellers' permanent Tax records, corporate minute books, stock books and related organizational documents and the books and records that any Seller is required to retain

pursuant to any Law or Order and the books and records solely related to the Excluded Assets or Excluded Liabilities;

(h)     personnel records that any Seller is required by Law or Order to retain (provided that the copies of any such personnel records shall be Purchased Assets to the extent permitted by any applicable Law or Order pursuant to Section 1.2(f)) and personnel records of employees, former employees or consultants of each Seller who do not, as of the Closing, become employees of Purchaser;

(i)     all insurance recoveries under each Seller's or its Affiliates' insurance policies with respect to the Purchased Assets or the Business and any rights to assert claims with respect to any such insurance recoveries, *provided*, *however*, that the Purchased Insurance Recoveries shall not constitute Excluded Assets;

(j)     all claims for refund or credit of (i) income Taxes of each Seller and its Affiliates for any taxable period and (ii) non-income Taxes of each Seller and its Affiliates with respect to a Pre-Closing Period;

(k)     Intentionally deleted;

(l)     Intentionally deleted;

(m)     each Seller's or any of its Affiliates' rights under this Agreement or any Transaction Document or relating to the Excluded Assets or the Excluded Liabilities;

(n)     all deposits (including security deposits, rent, electricity, telephone or otherwise and retainers held by attorneys, accountants, financial advisors and other professional advisors retained by any Seller or by any creditors' committee in the Bankruptcy Case) and other prepaid charges of each Seller, in each case other than with respect to any Purchased Assets;

(o)     any assets of each Seller in a directors and officers liability insurance policy, executive or incentive compensation, bonus, deferred compensation, pension, retiree medical, stock option or other stock purchase plan or other Employee Benefit Plan;

(p)     Intentionally deleted;

(q)     all accounts receivable and pre-paid assets of each Seller, including, without limitation, any BP Receivables and NRI Receivables;

(r)     Intentionally deleted;

(s)     all attorney client privilege and attorney work product protection of each Seller or associated with the Business (as currently or formerly conducted) as a result of legal counsel representing a Seller or the Business (as currently or formerly conducted), and all Files and Records related thereto subject to such attorney client privilege or work product protection; provided that any privilege or work product that exclusively relates to the Purchased Assets or that is necessary to operate the Business (other than such

privileges, protections and related Files and Records related to or in connection with the transactions contemplated by this Agreement or any Transaction Document) shall not be deemed to be an Excluded Asset whether or not in connection with the transactions contemplated by this agreement or any Transaction Document; and

      (t)    all shares of capital stock or other equity interests in any Seller or any Affiliate thereof or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in any Seller or any Affiliate thereof.

For clarification purposes and without implication that the contrary would otherwise be true, it is understood and agreed that all rights and remedies with respect to the Excluded Assets or the Excluded Liabilities and which rights or remedies first arise after the Closing shall be retained by Sellers and shall not be transferred to Purchaser hereunder.

      1.4    <u>Assignment of Assigned Contracts</u> . To the maximum extent permitted by the Bankruptcy Code, but subject to applicable Law and the other provisions of this <u>Section 1.4</u>, Sellers shall assume and transfer, sell and assign all Business Contracts and Business Permits to Purchaser pursuant to Sections 363 and 365 of the Bankruptcy Code as of the Closing Date or such other date as specified in the Sale Order or this Agreement, as applicable. Notwithstanding any other provision of this Agreement to the contrary, this Agreement shall not constitute an agreement to assign any Business Contract or Business Permit (or any right thereunder) if an attempted assignment without the consent of a third party, which consent has not been obtained prior to the Closing (and is not provided for or satisfied by the Sale Order, the Bankruptcy Code or applicable Law), would constitute a breach or in any way adversely affect the rights of Purchaser or Sellers thereunder and the Parties acknowledge and agree that the Closing shall proceed with respect to the remining Business Contracts and Business Permits without any reduction in the Purchase Price; <u>provided</u> that the Sellers' acknowledge and agree that the Sellers shall employ its best efforts to secure any requisite consents to assume any Business Permits, or, if unable to secure such consent, shall use reasonable best efforts, at the cost of the Purchaser, to secure a new business permit in favor of the Purchaser from the issuing party prior to the Closing.

ARTICLE II<br>Assumption of Liabilities

      2.1    <u>Agreement to Assume</u>. Purchaser shall not assume or agree to pay, perform and discharge when due, any liabilities or obligations of Sellers. As such, all liabilities and obligations of Sellers are collectively referred to herein as "<u>Excluded Liabilities</u>". Purchaser shall not assume, be deemed to have assumed, or otherwise be responsible for, the Excluded Liabilities.

      2.2    <u>Assumed Liabilities</u>. Purchaser shall not assume or agree to pay, perform and discharge when due, any liabilities or obligations of Sellers; <u>provided</u>, <u>however</u>, that Purchaser shall be obligated to pay Cure Amounts and provide any adequate assurance of performance in connection with the assumption and/or assignment of any Contracts, including, without limitation, any Business Contracts and Business Permit, pursuant to <u>Section 1.4</u> of this Agreement or Section 365 of the Bankruptcy Code, which amounts shall be in addition to the

Purchase Price and shall be paid directly to the subject counterparty by Purchaser pursuant to the terms of the Sale Order.

2.3     Excluded Liabilities.   Except as provided in Section 2.2, all liabilities and obligations of Sellers shall constitute Excluded Liabilities.

ARTICLE III
Purchase Price, Manner of Payment; Closing; Deposit

3.1     Purchase Price; Delivery of Funds.   At the Closing, Purchaser shall in full consideration for the sale and transfer by Sellers of the Purchased Assets (a) pay to Sellers an amount (such amount, the "Closing Payment") equal to (i) the Purchase Price, less (ii) the Good Faith Deposit Amount, by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three Business Days prior to the Closing; and (b) together with Sellers, execute and deliver a joint written instruction to the Escrow Agent instructing it to release from the Escrow Account to Sellers by wire transfer of immediately available funds to an account or accounts designated by Sellers, an amount equal to the Good Faith Deposit Amount.

3.2     Good Faith Escrow Deposit.

(a)     Purchaser has paid to the Escrow Agent the Good Faith Deposit Amount, which funds shall be held in the Escrow Account by the Escrow Agent and invested as provided for in the Escrow Agreement and released by the Escrow Agent only in accordance with the terms of this Agreement and the Escrow Agreement.

(b)     If the Closing occurs, then the Good Faith Deposit Amount, shall be paid to Sellers and the applicable Parties shall submit joint written instructions to the Escrow Agent (in accordance with Section 3.1) to give effect to the same.

(c)     If the Closing does not occur as a result of the termination of this Agreement pursuant to Section 9.1(e), then within five Business Days of such termination, the Good Faith Deposit Amount shall be disbursed to Sellers by the Escrow Agent as liquidated damages and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(d)     If the Closing does not occur as a result of the termination of this Agreement for any reason other than as set forth in Section 3.2(c), then the Good Faith Deposit Amount shall be returned to Purchaser by the Escrow Agent within five Business Days of such termination, and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(e)     The Parties acknowledge that the agreements contained in this Section 3.2 are an integral part of the transactions contemplated by this Agreement and that without these agreements neither Sellers nor Purchaser would enter into this Agreement.

3.3     Time and Place of Closing.  Subject to the satisfaction or waiver of all of the conditions set forth in Article VII, the closing of the Purchase (the "Closing") shall take place at a time and location acceptable to both parties, as soon as practicable, but in any event within ten calendar days, after the last of the conditions set forth in Article VII is satisfied or waived (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the fulfillment or waiver of those conditions), or at such other time, date or place as the Parties shall agree in writing; provided, however, that the Closing Date (defined hereinafter) shall occur no later than December 22, 2021, at 5:00 p.m. (prevailing Central Time), unless extended by Sellers, with the consent of the DIP Agent and Prepetition Secured Parties. Such date of Closing is herein referred to as the "Closing Date".

3.4     Closing Deliverables.

(a)     At the Closing, Sellers shall deliver or cause to be delivered to Purchaser:

(i)     a certificate in a form reasonably satisfactory to Purchaser signed by an authorized officer of each Seller, dated as of the Closing Date, confirming the matters set forth in Sections 7.2(a) and (b) with respect to each Seller;

(ii)     counterparts to the assignment, transfer and conveyance instruments listed on Schedule 3.4, in each case, duly executed by each Seller (as applicable);

(iii)     a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by each Seller;

(iv)     a properly executed deed in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property, which has the real property legal description approved by the Office of the Public Surveyor of the Government of the Virgin Islands, together with real property tax clearance letters from the Government of the Virgin Islands covering all the tax bills for all of the parcels of real property being conveyed by the deed, as well as a properly executed assignment in recordable and customary form in the United States Virgin Islands assigning any Sellers' easements, use rights or options to purchase or that such rights are used or held for use in the Business; provided, however, that if any such easements, use rights or options to purchase, or rights used or held for use in the Business, are premised upon any Business Contract, such Business Contract is assigned to Purchaser; and

(v)     written instructions from the Sellers and the Purchaser to the Escrow Agent to release the Good Faith Deposit Amount pursuant to Section 3.1.

(b)     At the Closing, Purchaser shall deliver or cause to be delivered to Sellers, and Sellers shall have received:

(i)     the Closing Payment by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three Business Days prior to the Closing;

(ii)     a certificate in a form reasonably satisfactory to Sellers signed by an authorized officer of Purchaser, dated as of the Closing Date, confirming the matters set forth in Sections 7.1(a) and (b);

(iii)     counterparts to the assignment, transfer and conveyance instruments listed on Schedule 3.4, in each case, duly executed by Purchaser (as applicable);

(iv)     a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by Purchaser; and

(v)     written instructions from the Sellers and the Purchaser to the Escrow Agent to release the Good Faith Deposit Amount pursuant to Section 3.1.

3.5     Intentionally deleted.

### ARTICLE IV
### Representations and Warranties of Sellers

Except as set forth in the disclosure letter delivered by Sellers to Purchaser (the "Sellers Disclosure Letter") concurrently with the execution of this Agreement (it being agreed that any matter disclosed pursuant to any section of the Sellers Disclosure Letter shall be deemed disclosed for purposes of any other section of the Sellers Disclosure Letter to the extent the applicability of the disclosure to such other section is reasonably apparent on the face of such disclosure), Sellers hereby represent and warrant to Purchaser as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

4.1     Due Organization, Good Standing and Limited Liability Company Power. Each Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization. Each Seller has all requisite limited liability company power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted. Each Seller is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification.

4.2     Authorization; Noncontravention.

(a)     Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, each Seller has the requisite limited liability company power and authority and has taken all limited liability company action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution, delivery and performance by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, the consummation by Sellers of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved

by all necessary limited liability company, member or other action. This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Sellers as contemplated hereby will be, duly executed and delivered by Sellers. Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Purchaser and each other Person (other than any Sellers or any Affiliate thereof) party hereto and thereto, this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers, enforceable against each applicable Seller in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b)     Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution and delivery by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not:

(i)     conflict with any of the provisions of any Seller's certificate of formation or other formational documents;

(ii)     except as provided in Section 4.2(b)(ii) of the Sellers Disclosure Letter and subject to receipt of the Consents set forth in Section 4.3 of the Sellers Disclosure Letter, conflict with or result in a breach of, or constitute a default under or give rise to any right of termination, cancellation, modification or acceleration (including any right of first refusal or similar right) or the loss of a benefit under, or require the Consent of or giving of notice to any Person under any Business Contract, Real Property Lease or Business Permit (in each case, with or without notice or lapse or time or both); except, in the case of this clause (ii) for such conflicts or breaches or Consents or notices that (if not received) would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents;

(iii)     subject to the receipt of the Consents referred to in Section 4.3 of the Sellers Disclosure Letter, contravene any Law or any Order applicable to Sellers or by which any of their properties or assets are bound except such contraventions that would not reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents; or

(iv)     result in the creation or imposition of any Lien on any of the Purchased Assets.

4.3    _Governmental Consents and Approvals._  Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the entry of the Sale Order and the expiration, or waiver by the Bankruptcy Court, of the 14-day period set forth in rules 6004(h) and 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as applicable, except as set forth in Section 4.3 of the Sellers Disclosure Letter, no Consent of or filing with any Governmental Entity must be obtained or made by Sellers in connection with the execution and delivery of this Agreement or any Transaction Document by Sellers or the consummation by Sellers of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents that, if not obtained or made, would not reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents.

4.4    _Property._

(a)    Other than the Real Property, no Seller owns any other real property.  One or more Sellers has good and valid title to the Purchased Real Property (other than any Excluded Asset).  There are no outstanding options, rights of first offer or rights of first refusal to purchase any Purchased Real Property or any portion thereof or interest therein. No Seller has leased or otherwise granted to any Person the right to use or occupy the Purchased Real Property or any material portion thereof, except as set forth in Section 4.4(a) of the Sellers Disclosure Letter.

(b)    Section 4.4(b) of the Sellers Disclosure Letter contains an accurate and complete list as of the date hereof of all Real Property Leases and all other real property leases and subleases to which a Seller is a party.  With respect to each Real Property Lease pursuant to which a Seller is a lessee or sublessee, such Seller has valid leasehold interests in all leased real property described in such Real Property Lease, free and clear of any and all Liens.  Each Real Property Lease is a valid and binding obligation of the Sellers party thereto and, to the Knowledge of Sellers, is enforceable against the other parties thereto in accordance with the terms thereof, in each case, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).  Except as set forth in Section 4.4(b) of the Sellers Disclosure Letter, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Real Property Lease by a Seller or, to the Knowledge of Sellers, by any other party thereto, and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded, completely cured, or will be cured on or before the Closing Date pursuant to §365 of the Bankruptcy Code or otherwise.

(c)    To the Knowledge of Sellers, there is no, and no Seller has received written notice of any, existing or threatened change in the zoning classification of any Business Real Property (or any portion thereof) from that in effect on the date of this Agreement, in each instance, which would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  All water, sewer, gas, electric, telephone and drainage facilities and all other utilities and public or quasi-public improvements

related thereto required by Law with respect to, or required for the operation of, the Business at the Business Real Property, are installed and available to serve the Business Real Property. No condemnation proceeding, lawsuit or administrative action or other matter affecting and adversely impairing the current use or occupancy of the Business Real Property is pending or, to the Knowledge of Sellers, threatened in writing with respect to any Business Real Property which has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. To the Knowledge of Sellers, there has been no material casualty damage at any of the Business Real Property that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

4.5     Title to Purchased Assets.  Except as set forth in Section 4.5 of the Sellers Disclosure Letter, and excluding Purchased Real Property (which is governed by Section 4.4(a)), one or more Sellers own and has good and valid title to, or a valid leasehold interest in, all personal property included in the Purchased Assets, free and clear of all Liens.

4.6     Affiliate Transactions.  Except as disclosed in Section 4.6 of the Sellers Disclosure Letter and except for employment and consultant relationships and compensation, benefits, travel advances and employee or consultant loans to any officer, director, employee or consultant of Sellers, in each case, in the ordinary course of business, there is no Contract or Liability relating primarily to the Business, or the Purchased Assets between (a) a Seller, on the one hand, and (b) any Affiliate, equity holder, option holder, officer, member, partner or director of a Seller (in each case that is not also a Seller), on the other hand, that remains in force and provides for obligations of any party from and after the Closing.

4.7     Material Contracts.

(a)     Section 4.7(a) of the Sellers Disclosure Letter sets forth an accurate, correct and complete list of the following Contracts which a Seller is a party and which are currently in effect as of the date hereof:

(i)     each Contract whereby a Seller has created a Lien in respect of any of the Purchased Assets;

(ii)     each Business Contract containing any covenant limiting the freedom of a Seller or any of its Affiliates (A) to compete with any Person, engage in any line of business or exploit the Purchased Assets, in each case, in any geographic territory, (B) which grants to any Person any exclusivity with respect to any geographic territory, any customer or any product or service, or (C) to solicit for employment, hire or employ any Person;

(iii)     each Business Contract that requires capital expenditures or other outstanding payments to be made by a Seller in excess of $100,000, in each case, following the date hereof;

(iv)     each Business Contract involving the sharing of profits, losses, costs or liabilities with any other Person relating to the Business, or the Purchased Assets;

(v)    each Business Contract that requires (or may require in certain circumstances) in accordance with its terms the provision of credit support, collateral, a guarantee or similar financial assurance in respect of the Business, or the Purchased Assets;

(vi)    each Business Contract that (A) provides services for a fixed price or maximum fee, or pursuant to any cap or similar provisions; (B) grants "most favored nation" status (or similar status) to a Person (whether in respect of pricing or otherwise); or (C) provides any performance guarantee, material rebates, discounts, incentive or volume credits; and

(vii)    each Contract with any Governmental Entity relating to the Business, or the Purchased Assets.

(b)    The Contracts required to be listed in <u>Section 4.7(a)</u>, together with the Business Contracts and the Real Property Leases are referred to as "<u>Material Contracts</u>". True, correct and complete copies of each Material Contract have been made available to Purchaser prior to the date hereof. Each Business Contract is a valid and binding obligation of a Seller (except for any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts) and to the Knowledge of Sellers, enforceable against the other parties thereto in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law). Except as set forth in <u>Section 4.7(b)</u> of the Sellers Disclosure Letter and any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Business Contract by a Seller or, to the Knowledge of Sellers, by any other party thereto and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded or cured.

4.8    <u>Intellectual Property Rights and Claims.</u>

(a)    Except as set forth in <u>Section 4.8(a)</u> of the Sellers Disclosure Letter, one or more Sellers owns all right, title, and interest to or is licensed to use the Business Intellectual Property, free and clear of any Liens.

(b)    No Seller has, within the last 12 months made any written claim of an infringement or misappropriation by any Third Party of its rights to any Business Intellectual Property, which claim is still pending. To the Knowledge of Sellers, no Third Party is infringing or misappropriating any Business Intellectual Property.

(c)    Except for claims that have since been satisfactorily resolved or for which the statute of limitations has lapsed, no Seller has received any written notice from any Third Party challenging the right of such Seller to use any of the Business Intellectual

Property that would reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole.

(d)     There are no pending actions, suits or arbitrations by, or before any Governmental Entity for an infringement or misappropriation by any Seller of any Intellectual Property owned by any Third Party which would reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole.

4.9     Tax Matters. Except as disclosed in Section 4.9 of the Sellers Disclosure Letter:

(a)     Sellers have timely filed or caused to be timely filed, taking into account any applicable extensions, with the appropriate taxing authorities all income Tax Returns and all material non-income Tax Returns with respect to the Business or the Purchased Assets. All such Returns are correct and complete in all material respects. No Seller is currently the beneficiary of any extension of time within which to file any material tax Return with respect to the Business or the Purchased Assets. Since January 1, 2017, no written claim has been made by a Governmental Entity in a jurisdiction in which a Seller does not file Returns that such Seller is or may be subject to taxation by that jurisdiction with respect to Taxes that would be the subject of such Returns.

(b)     All income Tax Liabilities and all material non-income Tax Liabilities of each Seller due and payable with respect to the Business or the Purchased Assets, in each instance for all Pre-Closing Periods, have been timely paid, taking into account any applicable extensions, to the extent the non-payment of such Taxes could reasonably be expected to result in a Lien on the Purchased Assets. There are no pending or, to the Knowledge of Sellers threatened in writing, audits, investigations, disputes, notices of deficiency, claims or other similar actions relating to Property Taxes or any other Taxes that are imposed on a periodic basis (which are not based on income) of a Seller with respect to the Business or the Purchased Assets. No Seller has waived any statute of limitations in respect of non-income Taxes or agreed to any extension of time with respect to a non-income Tax assessment or deficiency.

(c)     The representations and warranties contained in Section 4.9(a) and Section 4.9(b) shall only apply if and to the extent Purchaser would be held liable for the Taxes to which such representations and warranties relate or if the Purchased Assets would become subject to a Lien in respect of such Taxes and, for the avoidance of doubt, such representations and warranties shall not be considered inaccurate or breached to the extent the applicable representation or warranty does not apply as a result of this Section 4.9(c).

4.10     Employee Benefits. Set forth in Section 4.10 of the Sellers Disclosure Letter is, as of [_____,] 2021, a true and complete list of each material employee benefit plan, within the meaning of Section 3(3) of ERISA, and each material fringe benefit, deferred compensation, severance, stock option, stock appreciation rights, incentive and bonus plan maintained or contributed to, or required to be contributed to, by a Seller or its Affiliates, in each case for the benefit of any Sellers' employees as of such date, but excepting any such plan sponsored in

whole or in part by any government, Governmental Entity or union or employee organization or any other Person (collectively, the "Employee Benefit Plans").

4.11     Compliance with Laws.   Except as set forth in Section 4.11 of the Sellers Disclosure Letter, to the Knowledge of Seller, (a) no Seller is, and no Seller has been in the past three years, in material violation of any Law or Order applicable to the Business, or the Purchased Assets, and (b) no Seller has received any written notice alleging or, to the Knowledge of Seller, been subject to any investigation by any Governmental Entity concerning, any such material violation of a Law or Order.

4.12     Environmental Matters.   Except as disclosed in Section 4.12 of the Sellers Disclosure Letter, with respect to the Business:

>    (a)     to the Knowledge of Sellers, each Seller is in material compliance with all applicable Environmental Laws;

>    (b)     there are no Proceedings pending, or to the Knowledge of Sellers threatened in writing, against any Seller that alleges any material violation of Environmental Law and no Seller has received from any Governmental Entity any written notice of material violation or alleged material violation of Environmental Law;

>    (c)     Sellers possess and are in material compliance with all Permits required under Environmental Laws to operate the Business as currently operated and as the Business is expected to be operated following the Closing as contemplated by the Transaction Documents ("Environmental Permits"), and there are no Proceedings pending, or to the Knowledge of Sellers threatened in writing, to modify, suspend, revoke or rescind any such Environmental Permits; and

>    (d)     from and after December 1, 2015, to the Knowledge of Sellers, there have been no material releases of any Hazardous Materials (i) at, in, under, on, or from any Seller Facilities or (ii) at, in, under, on, or, from any third-party location for which a Seller has any material Liability under Environmental Law.

The representations and warranties in this Section 4.12 are the sole and exclusive representations and warranties of Sellers concerning any Environmental Law, Environmental Permits, Hazardous Material or other environmental matters.

4.13     Permits.   Except for matters that are the subject of the representations and warranties in Section 4.12 (Environmental Matters), which matters are covered solely by Section 4.12, Sellers possess all material Permits that are necessary for the lawful operation of the Business as currently conducted by Sellers in the ordinary course.  All such Permits are valid and have not lapsed, been cancelled, terminated or withdrawn.  To the Knowledge of Sellers, Sellers are in compliance in all material respects with all such Permits.

4.14     Litigation.   Except as set forth in Section 4.14 of the Sellers Disclosure Letter: (a) there is no Proceeding pending, or to the Knowledge of Sellers, threatened, against any Seller or its Affiliates in respect of the Business or the Purchased Assets that would, if determined adversely, materially and adversely affect the Business, and the Purchased Assets, taken as a

whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or any Transaction Document and (b) there are no material Orders outstanding applicable to the Business, or the Purchased Assets that have not been fully satisfied.

4.15    Finders; Brokers.  Except for Jefferies LLC and GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services, (whose fees are payable by Sellers), no agent, broker, Person or firm acting on behalf of Sellers is, or shall be, entitled to any broker's fees, finder's fees or commissions from Purchaser in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

4.16    Exclusivity of Representations; Projections, Etc..  The representations and warranties expressly made by Sellers in this Article IV are the exclusive representations and warranties made by Sellers with respect to the Business, and the Purchased Assets.  Except for any representations and warranties expressly set forth in this Article IV (as modified by the Sellers Disclosure Letter), (a) the Purchased Assets are sold "AS IS, WHERE IS," and Sellers expressly disclaim (on each of their own behalf and on behalf of each of their respective Affiliates) any other representations or warranties of any kind or nature, express or implied, as to Liabilities, operations of their businesses (as currently or formerly conducted), the title, condition, value or quality of assets of Sellers, or the prospects (financial and otherwise), risks and other incidents of Sellers and their businesses (as currently or formerly conducted), the Purchased Assets, (b) SELLERS SPECIFICALLY DISCLAIM (ON EACH OF THEIR OWN BEHALF AND ON BEHALF OF EACH OF THEIR RESPECTIVE AFFILIATES), AND PURCHASER HEREBY WAIVES, ANY REPRESENTATION OR WARRANTY OF QUALITY, VALUE, DESIGN, OPERATION, MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, ELIGIBILITY FOR A PARTICULAR TRADE, CONFORMITY TO SAMPLES, OR CONDITION OF THE ASSETS OF SELLERS (INCLUDING THE PURCHASED ASSETS) OR ANY PART THEREOF, WHETHER LATENT OR PATENT, (c) no material or information provided by or communications made by any Seller or any of its Affiliates, or by any advisor thereof, whether by use of a "data room," or in any information memorandum, or otherwise, or by any broker or investment banker, will cause or create any warranty, express or implied, as to or in respect of any Seller, any Affiliate of any Seller or the title, condition, value or quality of their businesses (as currently or formerly conducted), or the Purchased Assets, and no other Person shall be deemed to have made, or shall be deemed to make, any other express or implied representation or warranty, either written or oral, on behalf of any Seller or any Affiliate thereof with respect to the subject matter contained herein, and (d) no Seller makes any representation or warranty whatsoever with respect to any estimates, projections and other forecasts and plans (including the reasonableness of the assumptions underlying such estimates, projections and forecasts).

ARTICLE V
Representations and Warranties of Purchaser

Purchaser hereby represents and warrants to Sellers as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

00692197.DOCX 3                                          v.2                                          15

5.1    Due Organization, Good Standing and Power.  Purchaser is duly organized, validly existing and in good standing under the laws of its jurisdiction of Jamaica.  Purchaser has all requisite corporate power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted.  Purchaser is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification, except where the failure to be in good standing would not reasonably be expected to prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.2    Authorization; Noncontravention.

(a)    Purchaser has the requisite corporate power and authority and has taken all corporate or other action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, the consummation by it of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by the stockholders of Purchaser. This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Purchaser as contemplated hereby will be, duly executed and delivered by Purchaser. Assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers and each other Person (other than Purchaser) party hereto and thereto, this Agreement and all such other instruments and agreements constitute valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b)    Except as a result of the Bankruptcy Cases, the execution and delivery by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not, (i) conflict with any of the provisions of the certificate of incorporation or by-laws or similar governance documents of Purchaser, in each case, as amended to the date of this Agreement, (ii) conflict with or result in a breach of, or constitute a default under, any Contract or other instrument to which Purchaser is a party or by which Purchaser or any of its properties or assets are bound, or (iii) contravene any Law or any Order applicable to Purchaser or by which any of its properties or assets are bound, except in the case of clauses (ii) and (iii) above, for such conflicts, breaches, defaults, consents, approvals, authorizations, declarations, filings or notices which do not and would not reasonably be

Purchaser's ability to consummate the transactions contemplated by this Agreement.

5.3    Governmental Consents and Approvals.  Except as a result of the Bankruptcy Cases, no additional Consent of or filing with any Governmental Entity must be obtained or made by Purchaser in connection with the execution and delivery of this Agreement or any Transaction Document by Purchaser or the consummation by Purchaser of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents which have been obtained or made or, if not made or obtained, do not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.4    Financing.  Purchaser has sufficient funds to consummate the transactions contemplated hereby, to perform its obligations hereunder (including all payments to be made by it in connection herewith) and to pay its expenses related to this Agreement and the transactions contemplated hereby.  The obligations of Purchaser under this Agreement are not contingent on

ARTICLE VI
Covenants

6.1     Intentionally deleted.

6.2     Conduct Prior to the Closing Date.

(a)     Except (i) as set forth on Schedule 6.2(a), (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required by the Bankruptcy Court, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Closing Date and the termination of this Agreement pursuant to Article IX, Sellers shall use commercially reasonable efforts (x) to comply in all material respects with all Laws, Orders, Contracts, Permits and Environmental Permits applicable thereto and (y) to preserve, maintain and protect in all material respects the Purchased Assets, the current goodwill of the Business and Sellers' present relationships with Governmental Entities and other Persons having significant relationships with Sellers in connection with the Business (as currently conducted).

(b)     Except (i) as set forth Schedule 6.2(b), (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required or approved by the Bankruptcy Court, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Closing Date and the termination of this Agreement pursuant to Article IX, Sellers shall not effect any of the following (as each pertains to or is related to the Business, or the Purchased Assets) without the prior written consent of Purchaser (such consent not to be unreasonably withheld, conditioned or delayed):

(i)     sell, transfer, lease, license or otherwise dispose of any of its assets or properties that would be Purchased Assets if not sold;

(ii)     except as required by GAAP, make any change in any method of accounting or auditing practice with respect to the Business;

(iii)     Intentionally deleted;

(iv)     create, permit, subject or allow to exist any Lien on any of the Purchased Assets and other than any Lien that will be extinguished at or prior to Closing;

(v)     extend, materially amend or terminate or grant any material waiver under any Business Contract or Real Property Lease or enter into any Contract that would be categorized as a Material Contract if in effect on the date hereof;

(vi)     abandon any rights under, request the rejection under Section 365 of the Bankruptcy Code of, or amend, modify or supplement the terms of, any of the Business Contracts or Real Property Leases;

(vii)    fail to take any reasonable action that would prevent the expiration, lapse, termination or abandonment of any Permit or Environmental Permit, in each case that is material to the Business;

(viii)    settle or compromise any Proceeding, or enter into any consent decree or settlement agreement with any Third Party, against or affecting the Business that, in each case, would constitute an Assumed Liability;

(ix)    waive any material claims or rights of material value that are included in the Purchased Assets;

(x)    incur, assume, or guarantee any Indebtedness or make any material capital expenditures that, in each case, would constitute an Assumed Liability; or

(xi)    authorize any of the foregoing or commit or agree to do any of the foregoing.

6.3    Efforts to Close.

(a)    Except as otherwise provided in this Section 6.3, the Sellers shall, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equity holders to, cooperate and use their respective commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to make, or cause to be made, all filings necessary, proper or advisable under applicable Laws and to consummate and make effective the transactions contemplated by this Agreement, including their respective commercially reasonable efforts to obtain, prior to the Closing Date, all Permits, Consents and Orders of Governmental Entities as are necessary for consummation of the transactions contemplated by this Agreement and to fulfill the conditions to consummation of the transactions set forth in Article VII; *provided*, that, except as set forth in Section 6.3(e), (w) no Party or its Affiliates shall be required to make any concessions that would adversely affect its business or be materially more burdensome to such Party (including to amend any Contract to increase the amount payable thereunder, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party or Governmental Entity, pay any amount or bear any other incremental economic burden to obtain any such Permit, Consent or Order), (x) no Party or its Affiliates shall incur any expense that would be payable or otherwise borne by the other Party or such other Party's Affiliates without the consent of such other Party, (y) Sellers shall not make any concessions that would purport to bind the Business from and after the Closing, and (z) Purchaser shall not make any concessions that would purport to bind any Seller or any of its Affiliates.

(b)    Notwithstanding anything to the contrary contained in this Agreement, no Seller nor any of its Affiliates or Representatives shall be required to repay any Indebtedness, amend or enter into any Contract or other arrangement, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial

or otherwise) to any Third Party, pay any amount or bear any other incremental economic burden to procure any amendments, modification or termination of any Contract.

6.4    Public Announcements.  Each Party shall (a) consult with each other Party before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement or any Transaction Document, (b) provide to the other Parties for review a copy of any such press release or public statement and (c) not issue any such press release or make any such public statement prior to such consultation and review and the receipt of the prior consent of the other Parties, unless required by Laws or regulations applicable to such Party or its Affiliates, regulations of any stock exchange applicable to such Party or its Affiliates, or the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, in which case, the Party required to issue the press release or make the public statement or filing shall, prior to issuing such press release or making such public statement or filing, use its commercially reasonable efforts to allow the other Parties reasonable time to comment on such release, statement or filing to the extent practicable and permitted by Law.  Notwithstanding anything to the contrary contained in this Agreement, each of the Parties and its legal counsel and other Representatives shall be permitted to make filings on the docket of, or statements on the record before, the Bankruptcy Court relating to this Agreement and the transactions contemplated hereby without prior approval or consultation.

6.5    Notification of Certain Matters.  Sellers, on the one hand, and Purchaser, on the other hand, shall use their respective commercially reasonable efforts to promptly notify each other of any material Proceedings in connection with the transactions contemplated by this Agreement or the Transaction Documents commenced or, to the knowledge of Purchaser or the Knowledge of Sellers, threatened, against Sellers or Purchaser, as the case may be, or any of their respective Affiliates.

6.6    Supplements to Schedules.

(a)    Sellers shall have the right (but not the obligation) to deliver to Purchaser, from time to time but not later than three Business Days prior to the Closing Date, a schedule of changes (each, an "Update Schedule") to disclose any action taken by any Seller, or Event occurring, with respect to the Business, or the Purchased Assets after the date hereof.  Each such Update Schedule shall constitute an amendment to the representation, warranty or statement to which it relates for all purposes of this Agreement and the transactions contemplated hereby, and each Update Schedule shall be deemed to be incorporated into and to supplement and amend the Sellers Disclosure Letter (and all references to the "Sellers Disclosure Letter" in this Agreement shall include each such Update Schedule to the extent applicable).  Except as set forth in Section 6.6(b), subject to the terms of this Agreement, Purchaser shall have the right to not consummate the transactions contemplated by this Agreement as a result of the failure of the conditions contained in Section 7.1(a) on the basis of the information disclosed in any Update Schedule.

(b)    If any fact or circumstance occurring prior to the date hereof and disclosed on any Update Schedule would, but for this Section 6.6, permit Purchaser to terminate

this Agreement in accordance with <u>Section 9.1(d)</u>, but Purchaser does not provide a written termination notice pursuant to <u>Section 9.1(d)</u> within ten (10) Business Days after receiving such Update Schedule, Purchaser shall be deemed to have waived, for all purposes of this Agreement and the transactions contemplated hereby, all rights to terminate this Agreement on account of the matters disclosed on such Update Schedule (including their right to not consummate the transactions contemplated hereby due to the failure of any of the conditions set forth in <u>Section 7.1(a)</u>).

6.7    <u>Post-Closing Access to Records and Personnel; Litigation Support</u>.

(a)    Until the later of (i) three (3) years after the Closing Date and (ii) one (1) year after the closing or dismissal of the Bankruptcy Cases and all proceedings related to or arising out of the Bankruptcy Cases, or any of them, Purchaser shall preserve and retain all corporate, accounting, Tax, legal, auditing, human resources and other books and records , as well as all documents and communications, including, without limitation, any electronically-stored information, servers, electronic communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data, relating to the Purchased Assets or the Business, or any other assets of the Sellers, including any Excluded Assets or Excluded Liabilities, with respect to periods prior to the Closing Date (including (i) any documents relating to any Proceeding or other dispute and (ii) all Returns, schedules, work papers and other material records or other documents relating to Taxes relating to the Purchased Assets).  At the end of such period, Purchaser may dispose of any such books and records only after they are first offered to and not accepted by Sellers.

(b)    Following the Closing, Purchaser shall allow Sellers, and their Affiliates successors, including, without limitation, any post-confirmation trustee appointed in the Bankruptcy Cases, and their respective Representatives reasonable access to (i) all books and records related to the Purchased Assets and the Business, including, without limitation, any electronically-stored information, servers, electronic communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data, and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons, including, without limitation, any matters arising out of or relating to the Bankruptcy Cases or any related proceedings; *provided*, that no such access shall unreasonably interfere with Purchaser's operation of the Business.

(c)    Following the Closing, Sellers shall allow Purchaser and its Affiliates and their respective Representatives reasonable access to (i) all books and records related to the Purchased Assets and the Business and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons.

(d)    Following the Closing, Purchaser shall allow Sellers, and their Affiliates and successors, including, without limitation, any post-confirmation trustee appointed in the Bankruptcy Cases, and their respective Representatives reasonable access to (i) all books and records related to the Purchased Assets and the Business, including, without

limitation, any electronically-stored information, servers, electronic communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data, and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons, including, without limitation, any matters arising out of or relating to the Bankruptcy Cases or any related proceedings; *provided*, that no such access shall unreasonably interfere with Purchaser's operation of the Business.

(e)     The rights and obligations of a Party under this <u>Section 6.7</u> shall inure to the benefit of and be binding upon the successors and assigns of such Party. If a Party or any of its successors or assigns (i) consolidates with or merges into any other Person or (ii) with respect to Purchaser, transfers all or substantially all of the Purchased Assets to any Person, in each case proper provision shall be made so that the successors and assigns of such Party honor the obligations set forth in this <u>Section 6.7</u>.

6.8     <u>Tax Matters</u>.

(a)     All stamp, transfer, documentary, sales and use, value added, registration and other such taxes and fees (including any penalties, interest and recording and filing fees) incurred in connection with the Purchase or otherwise in connection with this Agreement and not exempted under a Sale Order, whether or not customarily paid by Sellers or purchasers (collectively, the "<u>Transfer Taxes</u>"), shall be borne equally by Sellers and Purchaser. Purchaser shall properly file on a timely basis all necessary Returns and other documentation with respect to any Transfer Tax and provide to Sellers' evidence of payment of all Transfer Taxes.

(b)     Purchaser and Sellers agree to furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information and assistance relating to the Purchased Assets as is reasonably necessary for the preparation and filing of any Return, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer of any governmental or regulatory inquiry relating to Tax matters.

(c)     For purposes of this Agreement, all Property Taxes and any other Taxes that are imposed on a periodic basis (which are not based on income) with respect to the Purchased Assets with respect to any taxable period that begins on or before and ends after the Closing Date shall be apportioned between the portion of such period that falls within the Pre-Closing Period and the portion of such period that falls within the Post-Closing Period proportionally in accordance with the number of days in each such portion of the period.

6.9     <u>Bulk Sales Act</u>. Sellers shall comply in all respects with respect to any applicable bulk sale, bulk transfer, successor liability and similar Laws, or with any Laws triggered by a bulk sale or transfer of property, of any jurisdiction in connection with the transactions contemplated by this Agreement or similar Laws of any jurisdiction in connection with the Purchase.

6.10 <u>Bankruptcy Action</u>.

(a) The Parties shall comply in all material respects with the Bid Procedures Order and the Sale Order (after the entry of such Orders by the Bankruptcy Court).

(b) Sellers shall use commercially reasonable efforts to comply (or obtain an Order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Bankruptcy Rules in connection with obtaining approval of the transactions contemplated by this Agreement. Sellers shall serve (i) all Persons who are known to possess or assert a Claim against or Interest in any of the Purchased Assets, (ii) the IRS, (iii) all applicable Governmental Entities, (iv) all applicable state and local Governmental Entities with taxing authority, (v) all other Persons required by any Order of the Bankruptcy Court, (vi) all parties to Business Contracts and Real Property Leases, and (vii) all Persons that request or are entitled to notice under Bankruptcy Rule 2002.

(c) The Parties shall use their respective commercially reasonable efforts to have the Bankruptcy Court enter the Sale Order as promptly as possible.

(d) Sellers and Purchaser shall consult with one another regarding pleadings which any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of the Sale Order and shall provide each other with a reasonable opportunity to review and comment on such pleadings, related motions, applications, petitions schedules and supporting papers. Sellers shall promptly provide Purchaser and its counsel with copies of all notices, filings and orders of the Bankruptcy Court that Sellers have in their possession (or receive) pertaining to the Sale Motion, the Bid Procedures Order, the Sale Order, or any other order related to any of the transactions contemplated by this Agreement, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to Purchaser and its counsel.

(e) If the Bid Procedures Order, the Sale Order, or any other orders of the Bankruptcy Court relating to this Agreement or the transactions contemplated hereby shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Bid Procedures Order, the Sale Order, or other such order), subject to rights otherwise arising from this Agreement, Sellers and Purchaser shall use their commercially reasonable efforts to prosecute such appeal, petition or motion and obtain an expedited resolution of any such appeal, petition or motion.

6.11 <u>Sale Order</u>.

(a) Sellers acknowledge that this Agreement and the sale of the Purchased Assets are subject to Bankruptcy Court approval. Sellers acknowledge that to obtain such approval, Sellers must demonstrate that they have taken steps to obtain the highest and otherwise best offer possible for the Purchased Assets including giving notice of the

transactions contemplated by this Agreement to creditors and certain other interested parties as ordered by the Bankruptcy Court and, if necessary, conducting the Auction.

(b)     The Sale Order shall, among other things:

(i)     approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by Sellers of this Agreement, (B) the transfer of the Purchased Assets to Purchaser free and clear of all Liens, Claims, and Liabilities of any kind whatsoever, and (C) the timely performance by Sellers of their obligations under this Agreement;

(ii)     authorize and empower Sellers to assume and assign the Business Contracts and Real Property Leases to Purchaser;

(iii)     find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Purchaser the full benefits and protections of Section 363(m) of the Bankruptcy Code;

(iv)     find that this Agreement was negotiated, proposed and entered into by Sellers and Purchaser without collusion, in good faith and from arm's length bargaining positions;

(v)     find that due and adequate notice and an opportunity to be heard in accordance with all applicable Laws were given to the necessary parties in the Bankruptcy Cases;

(vi)     contain findings of fact and conclusions of law that Purchaser (A) is not a successor to, or subject to successor liability for, any Seller, (B) has not, de facto or otherwise, merged with or into any Seller, (C) is not an alter ego or a continuation of any Seller, and (D) does not have any responsibility for any obligations of any Seller based on any theory of successor or similar theories of liability;

(vii)     find that the Purchase Price is fair and reasonable;

(viii)     find that the Bankruptcy Court retains jurisdiction to resolve any claim or dispute arising out of or related to this Agreement; and

(ix)     contain such other terms and conditions as are acceptable to Sellers and Purchaser in their respective sole discretion.

(c)     Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry by the Bankruptcy Court of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of (i) demonstrating that Purchaser is a "good faith" purchaser and (ii) establishing "adequate assurance of future performance" within the meaning of Section 365 of the Bankruptcy Code.

6.12     Intentionally deleted.