6.13  Transfer of Permits. Except for those Business Permits that are not transferable to Purchaser by Law, the Parties shall use commercially reasonable efforts to cause the issuance or transfer of all of the Business Permits described on Schedule 1.1(g) and shall give and make all notices and reports that such Party is required to make to the appropriate Governmental Entities and other Persons with respect to such Business Permits. All costs and expenses associated with the issuance or transfer of the Business Permits shall be borne by Purchaser.

6.14  Expenses. Except to the extent otherwise specifically provided herein, whether or not the transactions contemplated hereby are consummated, all fees, costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be borne by the Party incurring such fees, costs and expenses.

6.15  Confidentiality. From and after the date of this Agreement, Purchaser and Sellers shall continue to be bound by and comply with the obligations of the Confidentiality Agreement except as otherwise required under or necessary to comply with any provision of the Bankruptcy Code, Bankruptcy Rules, applicable law, any order of the Bankruptcy Court, including, without limitation, the Bid Procedures Order, or the provisions of this Agreement. Except as specifically provided in the proviso to this sentence, unless otherwise agreed to by the Parties, at the later of (i) the Closing or (ii) the end of the remainder of the term set forth in the Confidentiality Agreement, the Confidentiality Agreement shall be deemed to have been terminated by the parties thereto and shall no longer be binding; *provided*, that notwithstanding anything in this Section 6.16 to the contrary, to the extent that Purchaser is in possession of any Information (as defined in the Confidentiality Agreement) regarding Sellers and their respective Affiliates, or the Excluded Assets or the Excluded Liabilities, Purchaser shall continue to be bound by the Confidentiality Agreement with respect to such Information until the later of (x) the end of the remainder of the term set forth in such Confidentiality Agreement and (y) if the Closing occurs, the date that is two years after the Closing.

## ARTICLE VII
## Conditions to Closing

7.1  Conditions to Sellers' Obligations. The obligation of Sellers to consummate the transaction contemplated hereby is subject to the fulfillment of all of the following conditions on or prior to the Closing Date and as of the Closing Date, upon the non-fulfillment of any of which this Agreement may, at Sellers' option, be terminated to the extent permitted pursuant to and with the effect set forth in Article IX:

(a)  The representations and warranties of Purchaser contained in Article V shall be true and correct at and as of the Closing Date as if made at and as of such time, except for such failures as do not prevent Purchaser from consummating the transactions contemplated by this Agreement.

(b)  All obligations of Purchaser to be performed hereunder through, and including on, the Closing Date (including, without limitation, all obligations which Purchaser would be required to perform at the Closing if the transaction contemplated

hereby was consummated) shall have been performed in all material respects, unless waived by Sellers.

(c) Purchaser shall have delivered or caused to be delivered to Sellers each of the items set forth in Section 3.4(b).

(d) No Governmental Entity of competent jurisdiction shall have entered a valid Order that is in effect and has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing.

(e) The Sale Order shall have been entered by the Bankruptcy Court approving the transactions contemplated under this Agreement.

7.2 Conditions to Purchaser's Obligations. The obligation of Purchaser to consummate the transaction contemplated hereby is subject to the fulfillment of all of the following conditions on or prior to the Closing Date and as of the Closing Date (in each case, so long as Purchaser has complied with its obligations under this Agreement with respect to each of the matters set forth below), upon the non-fulfillment of any of which this Agreement may, at Purchaser's option, be terminated to the extent permitted pursuant to and with the effect set forth in Article IX:

(a) The representations and warranties of Sellers in Article IV shall be true and correct in all respects as of the time of the Closing as though such representations and warranties were made at and as of such time (or, if made as of a specific date in the text of such representations and warranties, at and as of such date) except where the failure to be so true and correct would not have a Material Adverse Effect.

(b) All obligations of Sellers to be performed hereunder through, and including on, the Closing Date (including, without limitation, all obligations which Sellers would be required to perform at the Closing if the transaction contemplated hereby was consummated) shall have been performed in all material respects, unless waived by Purchaser.

(c) Sellers shall have delivered or caused to be delivered to Purchaser each of the items set forth in Section 3.4(a).

(d) No Governmental Entity of competent jurisdiction shall have entered a valid Order that is in effect and has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing.

(e) The Sale Order shall have each been entered by the Bankruptcy Court approving the transactions contemplated under this Agreement.

7.3 Frustration of Closing Conditions. No Party may rely on the failure of any condition set forth in this Article VII to be satisfied if such failure was caused by such Party's failure to act in good faith or such Party's failure to comply with Section 6.3.

# ARTICLE VIII
## Compliance with WARN, Plant Closing Act and Similar Statutes

8.1     Compliance with WARN, Plant Closing Act and Similar Statutes.  Sellers shall be responsible for compliance with any notice or severance obligations under WARN, the Plant Closing Act (and any comparable Law requiring notice or severance to employees) and any Contract (including, for the avoidance of doubt, any Liability for accrued but unused paid time-off and severance), in each case, arising prior to the Closing Date with respect to the termination of any employees or consultants that (a) provide services to any Seller as of the date hereof or at any other time from the date hereof through the Closing Date with respect to the termination of any employees or consultants that provide services to any Seller as of the date hereof or at any time from the date hereof through the Closing Date.  Without limiting the foregoing, pursuant to Section 473(a)(3) of the Plant Closing Act, Sellers assume responsibility and liability as successor employer under the Plant Closing Act for all the prior years of service, along with any years accumulated moving forward.  Sellers shall be responsible for compliance with any notice or severance obligations relating to the Business (as currently or formerly conducted), or the Purchased Assets under WARN and the Plant Closing Act (and any comparable Law requiring notice or severance to employees) arising prior to the Closing Date.  Sellers shall notify Purchaser prior to the Closing of any "employment loss", in the 90-day period immediately prior to the Closing with respect to any such employees or consultants.

# ARTICLE IX
## Termination

9.1     Termination Events.  This Agreement and the transaction contemplated hereby may only be terminated as follows, at any time prior to the Closing:

(a)     by the mutual written consent of Purchaser and Sellers;

(b)     by either Purchaser or Sellers upon (i) the issuance of a final and non-appealable Order by a Governmental Entity to restrain, enjoin or otherwise prohibit the purchase and sale transaction contemplated hereby, (ii) the appointment of an examiner with expanded powers or a Chapter 11 trustee in the Bankruptcy Cases, or (iii) the Bankruptcy Cases being converted into a case under Chapter 7 of the Bankruptcy Code or dismissed;

(c)     by either Purchaser or Sellers if the Bankruptcy Court has not entered the Sale Order by December 22, 2021, provided that such date may be extended as otherwise agreed to in writing by Purchaser and Sellers; *provided, however*, that Purchaser's right to terminate this Agreement under this Section 9.1(c) shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the cause of, or resulted in, the failure of the Sale Order to have been entered on or prior to the aforesaid date;

(d)     by Purchaser if any condition set forth in Sections 7.2(a) through (c), inclusive, becomes incapable of being satisfied prior to the Termination Date (other than

through the failure of Purchaser to comply with its obligations under this Agreement) and Purchaser has not waived such condition or (ii) if the Closing shall not have occurred at or before 5:00 p.m. (prevailing Central Time) on December 22, 2021, or such later date as extended in accordance with the Bid Procedures Order (such date, as may be extended, the "Termination Date"); *provided, however*, that Purchaser's right to terminate this Agreement under this clause (ii) of this Section 9.1(d) shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or prior to the Termination Date;

(e) by Sellers, (i) if any condition set forth in Section 7.1(a) through (c), inclusive, becomes incapable of being satisfied prior to the Termination Date (other than through the failure of Sellers to comply with their obligations under this Agreement) and Sellers have not waived such condition, or (ii) if the Closing shall not have occurred at or before 5:00 p.m. (prevailing Central Time) on the Termination Date through the failure of Purchaser to comply with its obligations under this Agreement;

(f) by Sellers if any condition set forth in Sections 7.2(a) through (c), inclusive, becomes incapable of being satisfied prior to the Termination Date (other than through the failure of Sellers to comply with their obligations under this Agreement) and Purchaser has not waived such condition; and

(g) automatically upon consummation of an Alternative Transaction.

9.2 Effect of Termination. In the event of the termination of this Agreement pursuant to Section 9.1 by Purchaser, on the one hand, or Sellers, on the other hand, written notice thereof shall forthwith be given to the other specifying the provision hereof pursuant to which such termination is made, and this Agreement shall be terminated and become void and have no effect and there shall be no Liability hereunder on the part of any Party, except that Section 3.2 (Good Faith Escrow Deposit), Section 6.14 (Expense), this Section 9.2 and Article XI (Miscellaneous) and the defined terms and rules of construction used therein and set forth on Appendix I shall survive any termination of this Agreement; *provided, however*, that (a) subject to the terms and conditions of Section 3.2(c), no Party shall be relieved of or released from any Liability arising from any material breach by such Party of any provision of this Agreement, and (b) the Confidentiality Agreement shall remain in full force and effect.

## ARTICLE X
### Survival and Release

10.1 Survival; Certain Post-Closing Matters. Purchaser and Sellers acknowledge and agree that: (a) Sellers' representations and warranties set forth in this Agreement and in the documents and instruments delivered or entered into by Sellers in connection with this Agreement shall not survive the Closing and shall expire immediately upon the Closing; and (b) the covenants and agreements of Sellers set forth in this Agreement and in any documents and instruments delivered or entered into by Sellers in connection with this Agreement, in each case that do not by their terms extend beyond the Closing, shall not survive the Closing and shall

expire immediately upon the Closing. Accordingly, for clarification purposes, it is acknowledged, understood and agreed by the Parties that Sellers shall not have any liability or other obligation following the Closing with respect to any breach by Sellers or claimed breach by Sellers of (x) any representations or warranties contained in this Agreement or any of the documents or instruments delivered or entered into by Sellers in connection with this Agreement or (y) any of Sellers' covenants and agreements contained in this Agreement or any of the documents or instruments delivered or entered into by Sellers in connection with this Agreement that do not by their terms extend beyond the Closing. Notwithstanding anything expressed or implied herein to the contrary, the Parties acknowledge and agree that (1) Purchaser shall be solely responsible for the ownership of the Purchased Assets from and after the Closing Date, the operation of the Business from and after the Closing Date, and acts or omissions of Purchaser with respect thereto, and (2) Sellers shall have no responsibility or obligation with respect to, or arising out of, any of the foregoing.

10.2 Intentionally deleted.

## ARTICLE XI
### Miscellaneous

11.1 Notices. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (a) on the day of service if served personally on the party to whom notice is to be given; (b) on the day of transmission if delivered by electronic mail during regular business hours on a Business Day and, if not, then on the following Business Day; or (c) on the day of delivery (if a Business Day, and if not a Business Day, on the next Business Day) if sent by Federal Express or similar overnight courier or United States mail:

If to Sellers:

Addressed to:

Limetree Bay Services, LLC et al.
c/o B. Riley Advisory Services
3500 Maple Avenue, Suite 420
Dallas, Texas 75219
Attn: Mark Shapiro
Email: mshapiro@brileyfin.com


with a copy to:

Baker & Hostetler LLP
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Attn: Elizabeth A. Green
Email: egreen@bakerlaw.com

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011
Attn: Jorian L. Rose
Email: jrose@bakerlaw.com

If to Purchaser or Parent:

Addressed to:

St. Croix Refining and Transportation, LLLP
2555 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Attn: Thomas V. Eagan
Email: teagan@rascoklock.com

with a copy to:

Rasco Klock
2555 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Attn: Thomas V. Eagan
Email: teagan@rascoklock.com

Any Party may change its address for the purpose of this Section 10.2 by giving the other Party written notice of its new address in the manner set forth above.

11.2 Entire Agreement. This Agreement, the agreements, documents and instruments to be delivered by the Parties pursuant to the provisions hereof, and the Confidentiality Agreement, each as may be amended or supplemented, constitute the entire agreement between the Parties and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, successors and permitted assigns. Each Appendix, Exhibit, Schedule and the Sellers Disclosure Letter, each as may be amended or supplemented, shall be considered incorporated into this Agreement. The inclusion of any item in the Sellers Disclosure Letter is not evidence of the materiality of such item for the purposes of this Agreement.

11.3 Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, and, for purposes of such jurisdiction, such provision or portion thereof shall be struck from the remainder of this Agreement, which shall remain in full force and effect. This Agreement shall be reformed, construed and enforced in such jurisdiction so as to best give effect to the intent of the Parties under this Agreement.

11.4     Binding Effect; Benefit. This Agreement shall inure to the benefit of and be binding upon the Parties hereto, and their successors and permitted assigns. Nothing in this Agreement, express or implied, shall confer on any Person other than the Parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, including, without limitation, third party beneficiary rights. Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third Persons to Sellers or Purchaser. No provision of this Agreement shall give any third Persons any right of subrogation or action over or against Sellers or Purchaser.

11.5     Assignability. This Agreement and the various rights and obligations arising hereunder inure to the benefit of and are binding upon Sellers and their respective successors and permitted assigns, and Purchaser and its successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder may be transferred or assigned (including by operation of law in connection with a merger or sale of stock, or sale of substantially all the assets, of a Person) by any of the Parties hereto without the prior written consent of the other Party or Parties (not to be unreasonably withheld, conditioned or delayed); provided, however, the Purchaser may assign its rights hereunder to a wholly-owned entity and take title in such entity at time of Closing. No assignment shall relieve a Party of its liability or obligations hereunder. Notwithstanding anything expressed or implied herein to the contrary, following the Closing, Sellers (or any of them) may assign to any successor in the Bankruptcy Cases all or any portion of their rights hereunder in accordance with an Order of the Bankruptcy Court; provided, however, that any such assignment shall not assign any Purchased Assets.

11.6     Amendments. This Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the Parties hereto.

11.7     Non-Waiver. Except as otherwise contemplated herein, the failure in any one or more instances of a Party to insist upon performance of any of the terms, covenants or conditions of this Agreement, to exercise any right or privilege in this Agreement conferred, or the waiver by such Party of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as a subsequent waiver of any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

11.8     Applicable Law. This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws of the State of Texas applicable to contracts made in that state and the applicable provisions of the Bankruptcy Code, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of laws of any other jurisdiction.

11.9     Consent to Jurisdiction. Purchaser and Sellers agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement. Each of Purchaser and Sellers irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens*, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby. Purchaser and Sellers consent to the jurisdiction and authority of the Bankruptcy Court, including, without limitation, to the entry of final orders,

decrees and judgments with respect to any matters arising under or relating to this Agreement or the transaction(s) contemplated hereby.

11.10 **WAIVER OF TRIAL BY JURY. EACH OF THE PARTIES HERETO WAIVES THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING SEEKING ENFORCEMENT OF SUCH PARTY'S RIGHTS UNDER THIS AGREEMENT.**

11.11 Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. This Agreement may be executed through the exchange of scanned .pdf signature pages, which shall have the same legal effect as original signatures.

11.12 Headings. The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

11.13 Time of the Essence. Time is of the essence of this Agreement. When calculating the period of time before which, within which or following which, any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

11.14 Rules of Construction. The Parties acknowledge and agree that each has negotiated and reviewed the terms of this Agreement, assisted by such legal and tax counsel as they desired, and has contributed to its revisions, and, as such, each of the Parties shall be deemed drafters of this Agreement and equally responsible for any ambiguities contained herein. The Parties further agree that the rule of construction that any ambiguities are resolved against the drafting party will be subordinated to the principle that the terms and provisions of this Agreement will be construed fairly as to all Parties and not in favor of or against any Party. The word "including" means "including, without limitation." The phrase "ordinary course of business" or words of similar import shall mean the ordinary course of business consistent with past custom and practice, subject, in the case of Sellers or the Business, to changes in the business, operations or custom or practice of Sellers to the extent resulting from matters arising as a result of, or in connection with, Sellers' status as filers under Chapter 11 of the Bankruptcy Code.

*[SIGNATURE PAGES FOLLOW]*

IN WITNESS WHEREOF, the Parties have executed this Asset Purchase Agreement as of the date first above written.

**SELLERS:**

**Limetree Bay Services, LLC**

By:_____
Name:_____
Title:_____

**Limetree Bay Refining Holdings, LLC**

By:_____
Name:_____
Title:_____

**Limetree Bay Refining Holdings II, LLC**

By:_____
Name:_____
Title:_____

**Limetree Bay Refining, LLC**

By:_____
Name:_____
Title:_____

**Limetree Bay Refining Operating, LLC**

By: _____
Name: _____
Title: _____

**Limetree Bay Refining Marketing, LLC**

By: _____
Name: _____
Title: _____

**PURCHASER:**

**West Indies Petroleum Limited, a Jamaican corporation**

By: _____

Name: CHARLES CHAMBERS
Title: CEO

**St. Croix Refining and Transportation LLLP, a Virgin Islands limited liability limited partnership**

By: Virgin Islands Refining Company, LLC, a Florida limited liability company

By: _Eduardo G. del Valle_
Manager

Name: EDUARDO G. del VALLE
Title: MANAGER

00692180.DOCX 3
v.2

Signature Page to Asset Purchase Agreement

## APPENDIX 1

## DEFINED TERMS

As used in this Agreement, the following terms shall have the following meanings:

"Affiliate" with respect to any Person means any other Person who directly or indirectly Controls, is Controlled by, or is under common Control with such Person including in the case of any Person who is an individual, his or her spouse, any of his or her descendants (lineal or adopted) or ancestors, and any of their spouses.

"Agreement" is defined in the Introduction to this Agreement.

"Alternative Transaction" means one or more sales, assignments, leases, transfers, or other dispositions of all or any material portion of the Purchased Assets to any Person (or group of Persons), whether in one transaction or a series of transactions, whether by merger, asset purchase, equity purchase or other similar transaction, in each case other than to Purchaser or its Affiliates.

"Antitrust Authorities" means the Federal Trade Commission, the Antitrust Division of the United States Department of Justice, the attorneys general of the several states of the United States and any other Governmental Entity having jurisdiction with respect to the transactions contemplated hereby pursuant to applicable Antitrust Laws.

"Antitrust Laws" means the Sherman Act, 15 U.S.C. §§ 1-7, as amended, the Clayton Act, 15 U.S.C. §§ 12-27, 29 U.S.C. §§ 52-53, as amended, the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a et seq., as amended, the Federal Trade Commission Act, 15 U.S.C. § 41-58, as amended, and all other Laws and Orders that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization, restraint of trade, or lessening of competition through merger or acquisition.

"Auction" means a sale in which the Purchased Assets shall be offered for sale to a bidder or bidders making the highest or best offer, which will be scheduled by the Bankruptcy Court in the Bankruptcy Cases.

"Avoidance Actions" means any and all claims and causes of action of a Seller arising under the Bankruptcy Code, including, without limitation, Sections 544, 545, 547, 548, 549 and 550 thereof.

"Back-up Bid" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Back-up Bidder" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Bankruptcy Cases" means, individually and collectively, the following chapter 11 bankruptcy cases pending in the Bankruptcy Court: (i) *In re Limetree Bay Services, LLC*, case no. 21-32351; (ii) *In re Limetree Bay Refining Holdings, LLC*, case no. 21-32352; (iii) *In re Limetree Bay Refining Holdings II, LLC*, case no. 21-32353; (iv) *In re Limetree Bay Refining, LLC*, case

no. 21-32354; (v) *In re Limetree Bay Refining Operating, LLC*, case no. 21-32355; and (vi) *In re Limetree Bay Refining Marketing, LLC*, case no. 21-32356.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101, et seq., as in effect on the Petition Date, and as amended effective as of the Petition Date.

"Bankruptcy Court" is defined in Recital B to this Agreement.

"Bankruptcy Rules" is defined in Section 4.3.

"Bid Procedures Order" means the order of the Bankruptcy Court, entered on August 11, 2021 at docket number 392 in the bankruptcy case of *In re Limetree Bay Services, LLC*, case no. 21-32351, authorizing, among other things, the sale of the Purchased Assets and assumption and assignment of the Business Contracts and Real Property Leases pursuant to the bid procedures and bid protections set forth therein.

"Bill of Sale and Assignment and Assumption Agreement" means that certain bill of sale and assignment and assumption agreement substantially in the form attached hereto as Exhibit A.

"BP Receivables" means any and all funds payable by BP Products North America, Inc., or any affiliate or subsidiary thereof, to Sellers, or any of them, arising out of or related to the IFF Property, the J. Aron Transaction Documents, the Tolling Agreement (as such terms are defined and used in the Stipulation by and among Debtors, Committee, J. Aron & Company LLC, and BP Products North America Inc. (appended to Doc. No. 697 filed in the Bankruptcy Cases) (the "BP Stipulation")), or any other agreement by and between Sellers, or any of them, and BP Products North America, Inc., or any affiliate or subsidiary thereof, dated on or before the Closing Date, including, without limitation, the Escrow Funds, Trade Contract Amounts, and Sale Reserve (as such terms are defined and used in the BP Stipulation).

"Business" is defined in Recital A of this Agreement.

"Business Contracts" is defined in Section 1.2(a).

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Houston, Texas are permitted or required to be closed.

"Business Intellectual Property" means all rights to Intellectual Property that are owned by a Sellers, other than the Excluded Intellectual Property.

"Business IT Assets" means all rights to Information Technology that are owned by Sellers, other than the Excluded IT Assets.

"Business Permits" is defined in Section 1.2(g).

"Business Real Property" means the Purchased Real Property and the real property subject to the Real Property Leases, in each case together with all easements, appurtenances,

rights and leases, and other hereditaments appurtenant to such land and all the estates and rights of Sellers in and to such land.

"Claim" means a claim against any or all of Sellers, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

"Closing" is defined in Section 3.3.

"Closing Date" is defined in Section 3.3.

"Closing Payment" is defined in Section 3.1.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means that certain Confidentiality Agreement by and between Purchaser and Sellers, dated [_____], 2021.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through ownership of securities, by contract or otherwise.

"Consent" means any authorization, approval, consent, ratification, negative clearance, waiver, notice or filing, or a Final Order of the Bankruptcy Court that deems, or renders unnecessary, the same.

"Contract" means any note, bond, mortgage, indenture, guaranty, license, franchise, permit, agreement, contract, commitment, lease, purchase order, or other instrument or obligation, and any amendments thereto.

"Cure Amounts" means with respect to any Business Contract or Real Property Lease, the amount of cash required to be paid with respect to such Business Contract or Real Property Lease to cure all defaults under such Business Contract or Real Property Lease to the extent required by Section 365 of the Bankruptcy Code and to otherwise satisfy all requirements imposed by Section 365 of the Bankruptcy Code in order to effectuate, pursuant to the Bankruptcy Code, the assumption by a Seller and assignment to Purchaser of such Business Contract or Real Property Lease.

"DIP Agent" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Employee" and "Employees" are defined in Section 8.1.

"Employee Benefit Plans" is defined in Section 4.10.

"Environmental Law" means any law, Order or other requirement of law for the protection of the environment, or for the manufacture, use, transport, treatment, storage, disposal, release or threatened release of Hazardous Materials, petroleum products, asbestos, urea formaldehyde insulation, polychlorinated biphenyls or any substance listed, classified or regulated as "hazardous" or "toxic" or any similar term under such Environmental Law.

00692180.DOCX 3
v.2

Appendix 1 - 3