IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>HOVENSA L.L.C.<br><br>DEFENDANT. | CASE NO. 1:11-CV-00006 |

**PORT HAMILTON'S OPPOSITION TO UNITED STATES' MOTION TO SUBSTITUTE**

"Give them an inch and they'll take a mile." Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") agreed, and a bankruptcy court ordered, that Port Hamilton join the consent decree in this case as a "party." The United States wants this Court to give it a mile—by making Port Hamilton a party *defendant*. That was not what Port Hamilton agreed to; nor is it what the bankruptcy court ordered. This Court should deny the United States' motion because it lacks jurisdiction to add Port Hamilton as a party and because it fails on the merits.

**A. THE BANKRUPTCY COURT ONLY REQUIRED PORT HAMILTON TO BECOME A "PARTY"—THE UNITED STATES WANTS MORE.**

On December 21, 2021, the bankruptcy court overseeing the Limetree Bay Refining, LLC ("LBR") bankruptcy approved the sale of LBR's assets to Port Hamilton.[1] Paragraph 11 of the Sale Order specified that "Purchaser" (defined as

---

[1] "2021 Sale Order," Doc. No. 977 in Case No. 21-32351 in the SD/TX

1

including Port Hamilton and West Indies Petroleum Limited) would become a "party" and anticipated that the parties would "mutually consent" to amendments to the Consent Decree:

> Furthermore, notwithstanding anything in this Order or in the APA to the contrary, the Purchaser must become ***party to*** (i) the Consent Decree as modified by the First Modification and Second Modification in *United States and the United States Virgin Islands v. HOVENSA L.L.C.,* Civ. No. 1:11-cv-00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree"), and (b) the Joint Stipulation in *United States v. Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-00264 ***(as each may be amended with the mutual consent of the parties)***; provided, that Purchaser shall not become liable for any obligations, other than air monitoring obligations, under such Consent Decree or Joint Stipulation that do not relate to property or units purchased or to be operated by Purchaser pursuant to this Sale Order by reason of so becoming a party to such Consent Decree or Joint Stipulation. Nothing in this Order or the Sale Agreement (a) prevents the U.S. Environmental Protection Agency or other agency from issuing any order or taking other action under applicable nonbankruptcy law, or (b) modifies the Consent Decree, the Joint Stipulation, or any other applicable environmental, health and safety, or police and regulatory law.

Sale Order, ¶11 (emphasis added).

---

Bankruptcy Court.

### B. THE BANKRUPTCY COURT REQUIRED TRANSITION REFINING ENTITY TO BECOME A PARTY DEFENDANT AS THE SUCCESSOR TO LBR.

On May 20, 2022, six months after specifying that Port Hamilton must become a "party," the same bankruptcy court entered an order confirming LBR's Chapter 11 bankruptcy plan, which provided that LBR "survive[d]" as an entity named "Transition Refinery Entity."[2] Unlike the 2021 Sale Order approving the sale to Port Hamilton, the Confirmation Order expressly provided "[t]he Transition Refinery Entity shall be fully bound by all provisions of the Consent Decree and the Joint Stipulation and shall cooperate in the substitution of the Transition Refinery Entity as *a named defendant* in both cases."[3]

There are important distinctions between one's status as a "party" versus status as a "party defendant." Although not bound as a party defendant to the consent decree, Port Hamilton owns the refinery that is a significant topic of the consent decree. It also owns the air monitors that must be operated under the consent decree. The addition of Port Hamilton as a *party* but not as a party *defendant* allows the Court to ensure that Port Hamilton facilitates any party defendant that requires Port Hamilton's cooperation to comply with the consent decree.

As the Third Circuit observed recently in litigation between Port Hamilton and the United States, when Congress chooses to use explicit terms in a statute and omits

---

[2] Findings of Fact and Conclusions of Law, ¶G.e, Doc. No. 1454 ("Confirmation Order") in Case No. 21-32351 in the SD/TX Bankruptcy Court.

[3] Confirmation Order, ¶31.

them from another statute, it is presumed to have acted intentionally and purposefully in the disparate inclusion or exclusion." *Port Hamilton Ref. & Transportation, LLLP v. U.S. Env't Prot. Agency*, No. 23-1094, – F.4th –, 2023 WL 4718841 at *5 (3d Cir. July 25, 2023) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)). So too when a court uses specific language in one order (requiring Port Hamilton to become a "party") and different language in another order (requiring Terminal Refining Entity to become a "party defendant"). Had the bankruptcy court intended Port Hamilton to become a party defendant, it would have so stated.

It is important to recognize, as the United States concedes at pages 6 and 9 of its motion (Doc. No. 68), the United States was satisfied with the language in each of these orders and *actually negotiated the terms of both orders*:

- "Language resolving the United States' Limited Sale Objection is found in paragraphs 10 and 11 of the Sale Order." Doc. No. 68 at 6.

- "As with the Sale Order discussed above, the Debtors, the Purchaser, and the United States negotiated the language of the Proposed Order as it relates to environmental matters, including this action [referring to this Consent Decree action]." Doc. No. 68 at 9.

At the end of the day, the United States cannot avoid the fact that the only obligation imposed by the bankruptcy court upon Port Hamilton was to join the consent decree as a party. At any time the United States decides to accept the benefit of the bargain that it negotiated for, Port Hamilton stands ready, willing, and able to do exactly what the bankruptcy court required—join the consent decree as a party. If

the United States insists upon Port Hamilton joining as a party *defendant* or on other changes to the consent decree (or acquiescence in statements the United States makes in the proposed joinder it has provided to Port Hamilton with which Port Hamilton does not agree), Port Hamilton is willing to negotiate acceptable terms under which it would agree to be joined as a party defendant. But, in the absence of Port Hamilton's additional consent to such changed terms, the only thing Port Hamilton will agree to do is what the bankruptcy court ordered: Join the consent decree as a party.

Port Hamilton's concerns are driven by what the United States has demanded. If Port Hamilton were to join the consent decree as a party defendant, it would immediately be subjected to potential fines for issues of (alleged) non-compliance claimed by the United States. Further, Port Hamilton believes that the United States has adopted a <u>mis</u>interpretation of the consent decree; an interpretation under which Port Hamilton would be in breach of the consent decree due to deadlines that have already passed. Given that concern, Port Hamilton cannot sign on to the consent decree without appropriate modifications or an acknowledgement from the United States that the consent decree will be interpreted in a manner that would give Port Hamilton sufficient and reasonable time to implement any requirements under the consent decree so that it will not be in breach simply by virtue of agreeing to join the consent decree. And a modification was anticipated by the bankruptcy court as the sale order only requires Port Hamilton's joinder to the consent decree as it "may be amended with the mutual consent of the parties." Sale Order, ¶11

### **CONSENT DECREES ARE BASED UPON . . . CONSENT**

"[A] court's authority to enter a consent decree derives from the parties' consent." *Bainbridge v. Governor of Fla.*, No. 22-10525, 2023 WL 4986412, at *6 (11th Cir. Aug. 4, 2023). Because a consent decree is contractual in nature, *Fox v. United States Dep't of Housing*, 680 F.2d 315, 319 (3d Cir.1982), they are construed "as contracts, without reference to the legislation the Government originally sought to enforce but never proved applicable through litigation." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236–37 (1975). "The agreement memorializes the bargained for positions of the parties and should be strictly construed to preserve those bargained for positions." *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990). In this case, the consent decree specifies how it may be modified: "Material modifications to this Consent Decree will be in writing, signed by the Parties, and will be effective upon approval by the Court." Doc. No. 3 at 148 (¶228).

Port Hamilton is willing, and has been willing, to be named a party to the consent decree—which is what it agreed to in the Limetree Bay Refining LLC ("LBR") bankruptcy and what the bankruptcy court ordered. Port Hamilton has repeatedly informed the United States that it is willing to become a party to the consent decree but the United States stubbornly has insisted that Port Hamilton agree to become a party *defendant* and the document it has proposed to accomplish this result would also require Port Hamilton to agree to certain interpretations of the consent decree that the United States wishes were a part of the consent decree and which Port Hamilton believes would result in material—and unacceptable—modifications to the

Consent Decree. The United States is entitled to the inch that the bankruptcy court required—Port Hamilton as a party. It is not entitled to the mile it continues to demand—Port Hamilton as a party *defendant* under a reinterpreted (*e.g.*, modified) consent decree. Moreover, as discussed in the following section, even though the United States is entitled to have Port Hamilton joined as a party, that act of joinder requires Port Hamilton's cooperation (consent) because this Court lacks jurisdiction to compel that result.

## JURISDICTION

When considering the United States' motion to substitute parties (in reality a disguised effort to modify the consent decree), it is important to recognize that this is a case that proceeded to final judgment—there is no ongoing litigation. A consent decree is a final judgment. *Rufo v. Inmates of Suffolk C'nty. Jail*, 502 U.S. 367, 391 (1992). The United States and HOVENSA, LLC entered into the consent decree in 2011. Doc. No. 3. The consent decree was modified by the consent of the parties with the modification approved and entered by this Court on December 30, 2021. Doc. No. 42. Under the terms of the consent decree, the Court retained jurisdiction "for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating disputes between the United States, the Virgin Islands, and HOVENSA[4] that may arise under the provisions of this Consent Decree until the

---

[4] Now Limetree Bay Terminals, LLC, Limetree Bay Refining, LLC and the HOVENSA Environmental Response Trust.

7

Decree terminates in accordance with Part XIX (Termination)." Doc. No. 3 at 128–29 (¶190). Further, the consent decree provides that "Material modifications to this Consent Decree will be in writing, signed by the Parties, and will be effective upon approval by the Court." Doc. No. 3 at 148 (¶228).[5]

In the instant motion to substitute, the United States does not raise any issue relating to Port Hamilton that falls within the narrow scope of this Court's retained jurisdiction.[6] The United States relies instead upon an order of the bankruptcy court that oversaw the Limetree Bay Refining, LLC ("LBR") bankruptcy proceeding. The United States asserts that Port Hamilton must be added to the consent decree by virtue of an order of that court. But, to the extent that the United States believes that Port Hamilton is in violation of that court's order, its remedy lies with that court, and certainly does not lie as part of a post-judgment proceeding in this action.[7]

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins.*

---

[5] It is not clear that the Court had jurisdiction to enter the First Modification, as it did not involve "implementing" or "enforcing" the terms and conditions of the consent decree and there does not appear to have been a "dispute" between the parties to the consent decree. That issue need not be resolved for purposes of resolving the pending motion.

[6] The situation is different for Terminal Refining Entity, LLC ("TRE"). LBR was "reorganized as the Transition Refinery Entity, LLC" effective June 10, 2022. It is entirely appropriate for this Court to perform the ministerial task of substituting TRE for LBR (assuming that the Court had jurisdiction to enter the First Modification, which substituted LBR, Limetree Terminal, LLC and the HOVENSA Environmental Response Trust for HOVENSA).

[7] While the bankruptcy court lacks the power to modify the consent decree, it possesses the authority to enforce its orders and compel a party to take action under penalty of contempt.

*Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). The limited nature of this jurisdiction extends to issues that arise after a case is final. For example, enforcement of a settlement agreement, "whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378. However, under the doctrine of ancillary jurisdiction, a federal court may elect to retain jurisdiction to enforce a settlement agreement "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381. The logic of *Kokkonen* extends to retained jurisdiction in consent decrees. *See, e.g., Riley v. BMO Harris Bank, N.A.*, 115 F. Supp. 3d 87, 92 (D.D.C. 2015). "[D]istrict courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related order." *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C.Cir. 2002).

Retained (sometimes referred to as "ancillary") jurisdiction "is not limitless and does not require or invite the Court to decide all the issues presented." *Triple S Properties Inc. v. St. Paul Surplus Lines Ins. Co.*, No. 3:08-CV-796-O, 2010 WL 3911422, at *3 (N.D. Tex. Oct. 5, 2010). Such jurisdiction allows a Court to decide "'whether and under what terms' to enforce the settlement, but it may go no further without an independent basis for jurisdiction. *Wise v. Wilkie*, 955 F.3d 430, 436 (5th

Cir. 2020) (cleaned up)." V*ikas WSP, Ltd. v. Econ. Mud Prod. Co.*, 23 F.4th 442, 452 (5th Cir. 2022).

In this case, the terms of the Court's ancillary jurisdiction are limited to implementation and enforcement of the terms and conditions of the consent decree and adjudicating disputes between the parties to the consent decree that arise under the provisions of the consent decree. Adding new parties to the consent decree without their consent (or with their consent but in a status as a "party defendant" that is contrary to the consent given) is beyond the scope of the retained jurisdiction clause. Because the United States' motion does not fall within the narrow limits of the jurisdiction retained by this Court, its motion should be denied.[8]

                                         Respectfully submitted,

                                         **ANDREW C. SIMPSON, P.C.**,
                                         Counsel for Port Hamilton Refining and
                                         Transportation, LLLP

Dated: August 11, 2023

                                         <u>/s/ Andrew C. Simpson</u>
                                         By: Andrew C. Simpson, Esq.
                                         VI Bar No. 451
                                         ANDREW C. SIMPSON, P.C.
                                         2191 Church Street, Suite 5
                                         Christiansted, VI 00820
                                         Tel: 340.719.3900
                                         asimpson@coralbrief.com

---

[8] The United States' motion would have the effect of altering the final judgment in this matter. Consequently, Port Hamilton believes that a Magistrate Judge does not have the authority to grant the motion (although a Magistrate Judge could certainly make a report and recommendation as to how the motion should be decided).