IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and THE UNITED STATES VIRGIN ISLANDS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   CASE NO. 1:11-cv-00006 (EAH) ) |
| HOVENSA, LLC, et al., | ) ) |
| Defendants. | ) ) |

**NONPARTY WEST INDIES PETROLEUM LIMITED'S RESPONSE
TO PLAINTIFF'S MOTION TO SUBSTITUTE**

NOW COMES, Nonparty West Indies Petroleum Limited and files this response to the United States' July 28, 2023, "Motion Pursuant to Fed. R. Civ. P. 25(c), for an Order Substituting West Indies Petroleum Limited, Port Hamilton Refining and Transportation, LLLP, and the Transition Refinery Entity, LLC for Defendant Limetree Bay Refining, LLC" (ECF Doc. 67)(hereafter, "WIPL," "PHRT," and "TRE").

## INTRODUCTION

This case concerns the United States' attempt to bind purported transferees of the St. Croix oil refinery property and operation to certain environmental obligations, originally established against former owner/operator HOVENSA. Following HOVENSA successor Limetree Bay Refining's Chapter 11 bankruptcy filing in 2021, PHRT took title to the refinery property and other assets, and is the sole entity in possession and control of that property and other assets. PHRT has admitted to this and other Courts that it alone has possession and control of the

property and that it alone is responsible for obligations concerning its operation. WIPL has told the United States repeatedly and has proven by furnishing the property deed, which is not in dispute, that WIPL did not take possession or control of the refinery property. PHRT's exclusive right to take title to the refinery property, and to operate it, was expressly recognized in the Bankruptcy Court's order approving the sale.

As a practical matter, and as a legal matter, WIPL -- a nonowner -- is not in possession or control of the refinery and thus is incapable of carrying out any provision of the Consent Decree (including its modifications). Neither possession nor control were ever transferred to WIPL. As such, WIPL is not a proper party for substitution in the captioned matter.

## FACTS

The United States' motion hinges on the United States Bankruptcy Court's order approving the sale ("Sale Order") of the assets of Limetree Bay Refining, LLC ("LBR")(see Flint Dec. Ex. 1, ECF 68-1). The Sale Order refers to WIPL and PHRT as "together, the 'Purchaser,'" and also as "Winning Bidder." *Id* p. 2.

The Sale Order states: "the Purchaser must become party to (i) the Consent Decree as modified by the First Modification and Second Modification in *United States and the United States Virgin Islands v. HOVENSA L.L.C*, Civ. No. 1:11-cv-00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree"), and (b) the Joint Stipulation in *United States v. Limetree*

*Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-00264 (as each may be amended with the mutual consent of the parties)[.]" *Id* ¶ 11.

The United States does not discuss the next clause of the same paragraph in the Sale Order, which states: "Purchaser **shall not become liable for any obligations**, other than air monitoring obligations, under such Consent Decree or Joint Stipulation **that do not relate to property or units purchased or to be operated by Purchaser** pursuant to this Sale Order by reason of so becoming a party to such Consent Decree or Joint Stipulation. ..." *Id* (emphasis added).[1]

Despite the pre-closing designation in the Sale Order as one of two "Purchasers," WIPL did not actually purchase any refinery property, units, or other assets, and has never operated the refinery in any respect. That is because the Sale Order required conveyance of refinery assets to PHRT, not WIPL. "The transfer of the Purchased Assets to the Purchaser with Purchaser taking title in PHRT pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing ... ." *Id* ¶ 12 (emphasis added).

The Asset Purchase Agreement ("APA"), approved and referenced by the Bankruptcy Court as described immediately above, required a deed at closing. "At

---

[1] The Sale Order further states that WIPL is not a successor to LBR. Sale Order at Art. Y ("Neither the Purchaser or any of its affiliates are successors to the Debtors or their estates by reason of any theory of law or equity[.]")  The Sale Order prohibits the "Purchaser" from being placed in the position of seller (or the sellers' predecessors) prior to Closing. (Sale Order at XVI, ¶ 25 ("all entities or persons are permanently and forever prohibited…from asserting against the Purchaser … any Lien, Claim, or Interest of any kind whatsoever arising prior to Closing, including, without limitation, under any theory of successor or transferee liability")).

the Closing, Sellers shall deliver or cause to be delivered to Purchaser ... a properly executed deed in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property ... ." APA ¶ 3.4(a)(iv) (full copy attached as Stutzman Decl. **Ex. A-1**)(Case 21-32351, ECF Doc. 977-1 filed in the United States Bankruptcy Court of the Southern District of Texas Dec. 21, 2021).

PHRT, and PHRT alone, took title to the refinery property upon closing. See Deed and Bill of Sale, attached as Stutzman Decl. **Ex. A-2**. PHRT is also the sole party to operational contracts and permits, by assignment in the APA. See Stutzman Decl. Ex. A-1, Case 21-32351 Doc. 977-1 (p. 59 of 103)(Assignment and Assumption Agreement incorporated in the APA). "[E]ach Seller hereby sells ... all of such Seller's right, title and interest in and to the Business Contracts and Business Permits ... **with title to the Business Contracts and Business Permits being held in PHRT and PHRT becoming the counterparty** to such Business Contracts and Business Permits." *Id* (emphasis added).

PHRT, a separate and independent entity organized under the laws of the Virgin Islands, has stated in various Virgin Islands court proceedings that it is the sole owner and operator of the refinery. See Stutzman Decl. **Ex. A-3** (copy of V.I. Division of Corporations entity status report). PHRT's statements as to its ownership of the refinery and autonomy in refinery operations have been numerous, consistent, and without caveat. See e.g. 1:21-cv-00264, ECF Doc. 27 n. 1 ("At

closing, WIPL did not take title to any of the assets; only PHRT took title"); PHRT Answer to Second Amended Complaint in Superior Court Case No. SX-22-cv-00227 SAC ¶¶ 10-15, 65-66 (attached as Stutzman Decl. **Ex. A-4**)(wherein PHRT avers that PHRT acts independently in operating the refinery, that PHRT alone is responsible for payment on the certain service agreements with refinery facility neighbor Limetree Bay Terminals, and that PHRT has paid millions on its own prerogative pursuant to said agreements); ECF Doc. 55, n. 16 in the instant case (PHRT motion for informal status conference)("[t]he 2021 Sale Order defined the "Purchaser" as both Port Hamilton and West Indies Petroleum Limited. … However, West Indies Petroleum Limited never acquired any of the refinery assets"); and ECF Doc. 71 (instant case), p. 3 ("Port Hamilton owns the refinery that is a significant topic of the consent decree. It also owns the air monitors that must be operated under the consent decree").  Additionally, PHRT filed a notice of election for LBR to reorganize as TRE (Case No. 21-32351, ECF No. 1276, Stutzman Decl. **Ex. A-5**) and PHRT to receive 100% of the membership interests in TRE. In that same document, PHRT referred to itself (alone) as "Purchaser." *Id*. The Confirmation Order provided that "Limetree Bay Refining, LLC … shall survive as the Transition Refinery Entity" (Confirmation Order at Art. G.e.6.d., Case No. 21-32351, ECF No. 1454).  The confirmed plan became effective on June 10, 2022.  (Case No. 21-32351, ECF No. 1511.)

The Consent Decree requires the refinery owner/operator to, among other things, reduce nitrogen oxide emissions, reduce sulfur dioxide emissions, comply with regulations with respect to the Catalyst Regenerator, reduce the sulfur content of combusted fuel oil, monitor the air, and improve flaring devices. ECF Doc. 6 (current case)(subsequently modified by ECF Doc. 42).

In colloquial terms, nonowner/nonoperator WIPL (members of which were early investors in the project) does not have, and never has had, the keys to the refinery. See Walker Aff., **Ex. B**. Nor do WIPL or its members control PHRT. *Id.* As such, WIPL's compliance with the Consent Decree is impractical if not impossible.

Despite these facts, the United States purportedly served non-party WIPL at its place of business in Jamaica. This purported service occurred more than two weeks before the motion was filed with the Court and did not include a summons or complaint. See Motion, Certificate of Service, ECF 67, p. 4. WIPL is a foreign entity with no office or other business presence in the Virgin Islands, and no connection to the Virgin Islands other than its efforts to acquire the assets of LBR in the bankruptcy matter in the Southern District of Texas.

## LEGAL STANDARD

"<u>If an interest is transferred</u>, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided

in Rule 25(a)(3)." Fed. R. Civ. P. 25(c) (emphasis added). Determinations under Rule 25 are discretionary. *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71-72 (3rd Cir. 1993). However, substitution is not a discretionary matter, and must be denied, if in fact there has been no transfer of interest. *Id*. A "transfer of interest" in a corporate context occurs when one corporation becomes the successor to another by merger or other acquisition of the interest the original corporate party had in the lawsuit. *Id*. To properly exercise its discretion under Rule 25(c), "the court must make a determination, based on the respective rights and liabilities among the parties and the transferee under the substantive law governing the case ... ." 6 Moore's Federal Practice – Civil § 25.34[3].

"When competing sworn affidavits may result in one or more genuine issues of material fact, due process requires that a district court judge hear the evidence to assess for him or herself the credibility, or lack thereof, of one side as opposed to the other." *Luxliner*, 13 F.3d at 72. Where a material issue is concerned, the court may not decide the factual issues concerning a proposed substitution simply by weighing affidavits against one another. *Id*. If a genuine issue of material fact exists, the court should conduct an evidentiary hearing to decide whether substitution is proper. *Id* at 72-73.[2]

---

[2] The *Luxliner* Court's requirement for an evidentiary hearing stems partly from the posture of that case, where a default judgment had been granted against the alleged transferor and the Rule 25 motion "effectively impose[d] liability." *Luxliner* at 72. Similarly, here, a Consent Decree (as modified) has been entered, and the United States would allege the transferees' consequent liability.

Finally, this case requires analysis of the Sale Order. When interpreting another court's order, courts "apply traditional principles of contract law and look to the intent of the issuing court." *In re 1701 Com., LLC*, 2014 WL 4657314, at *9 (Bankr. N.D. Tex. Sept. 17, 2014)(quoting *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 263 (2nd Cir. 2011)). A court must interpret another court's order as a whole and give reasonable meaning and effect to all its parts and provisions. *Id.*

## DISCUSSION

A. Substitution of WIPL is improper because there was no transfer of interest to WIPL.

The United States has an incorrect view of the Sale Order and Rule 25. First, for Rule 25 to apply, there must be a "transfer of interest." Fed. R. Civ. P. 25(c). Yet, the United States has not identified an actual "transfer of interest" of the refinery property or any other refinery asset to WIPL. They cannot identify such a transfer of interest, because there is none.

The Sale Order expressly states that WIPL is not a successor to the prior refinery owner/operator. Thus, the issue is whether WIPL acquired the interest the original corporate party had in the lawsuit – which in this case is the refinery. Under Virgin Islands law, a person or entity may transfer ownership of real property only by a written deed or similar instrument. *Harvey v. Christopher*, 55 V.I. 565, 574 (V.I. 2011)(citing 28 V.I.C. § 241(a)(2)). A deed is required under the Statute of Frauds, which speaks directly to the issue before this Court:

> **[N]o** estate or **interest in real property** . . . **can be** created, granted, assigned, **transferred**, surrendered, or declared, **otherwise than by** operation of law; or by **a deed of conveyance or other instrument in writing**, signed by the person creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law.

28 V.I.C. § 241(a) (emphasis added). Thus, a deed was required to consummate the transfer of the refinery, and that deed (along with a Bill of Sale) was made to PHRT pursuant to the Sale Order. And, as discussed in the Facts section above, PHRT took title to operational contracts and permits under the Assignment and Assumption Agreement.

At best, the language in the Sale Order, and the documents that it approves, is ambiguous regarding the meaning of the word "Purchaser." While the introductory paragraphs to the Sale Order identify PHRT and WIPL "together, as 'Purchaser,'" it also requires title to refinery "Purchased Assets" be transferred to PHRT only. "The transfer of the Purchased Assets to the Purchaser **with Purchaser taking title in PHRT pursuant to the APA** shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing ... ." Sale Order ¶ 12 (emphasis added). "At the Closing, Sellers **shall deliver** or cause to be delivered **to Purchaser** ... a properly executed **deed** in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property ... ." APA ¶ 3.4(a)(iv) (Stutzman Decl. **Ex. A-1**). Despite the language requiring a deed to be delivered "to Purchaser," the deed conveyed the refinery

property to PHRT (not WIPL), and nobody objected because the deed was consistent with the Sale Order.

When read as a whole, these documents clearly indicate that neither the bankruptcy parties nor the Bankruptcy Court understood the term "Purchaser" to invariably mean both WIPL and PHRT.

Similarly, the word "Purchaser" as used in the Sale Order phrase "the Purchaser must become party" to the Consent Decree is not a clear joint-and-several obligation of WIPL *and* PHRT. As a practical matter, it makes no sense to make WIPL a party to the Consent Decree when WIPL has no power to take the actions contemplated in the Consent Decree. The Sale Order provides an exception to liability under these circumstances: "Purchaser **shall not become liable for any obligations**, other than air monitoring obligations, **under such Consent Decree** or Joint Stipulation **that do not relate to property or units purchased or to be operated by Purchaser** pursuant to this Sale Order ..." Sale Order ¶ 11. Because WIPL neither owns nor operates the refinery, it has no liability under the Consent Decree.[3] Making WIPL a party to the Consent Decree would not only be inconsistent with the Sale Order[4] (and related, Court-approved documents), it would

---

[3] *Id.* The "air monitoring" component of Sale Order ¶ 11 is not properly applied against WIPL. In PHRT's own words, "Port Hamilton owns the refinery that is a significant topic of the consent decree. It also owns the air monitors that must be operated under the consent decree." ECF Doc. 71 (instant case), p. 3.

[4] WIPL anticipates the United States will highlight prior statements by WIPL, such as that the "Sale Order provides that WIPL and PHRT must become party." See 1:21-cv-00264, ECF Doc. 27 (discussing the joint stipulation at issue in that case). The Sale Order actually says "Purchaser must become party" (emphasis added), and the Sale Order also contains caveats (as discussed in

be an empty exercise.  WIPL is not liable under the Sale Order and has no power to take meaningful action under the Consent Decree.

WIPL anticipates that the United States will take a position that conflates WIPL with PHRT.  WIPL's purported role in the formation of PHRT is immaterial, because PHRT, by its own representations to this Court and the Superior Court, is an autonomous, independent entity.  While the United States has not invoked a corporate "veil piercing" theory in this action, the concept of corporate independence underlying that rule of law is instructive here.  "The Virgin Islands ... will respect **corporate separateness** unless presented with a compelling reason to disregard such a well-entrenched concept.  *Id*.  *Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 334 (V.I. Super. Ct. 2015)(establishing rule for piercing the corporate veil) (emphasis added).  The United States has not put forth any reason, let alone a compelling one, to disregard PHRT's separateness and autonomy.

Circling back to the legal standard, it is clear that no legally material interest was transferred to WIPL for purposes of substitution.  While WIPL did obtain certain rights under the Sale Order, those rights did not (and were not intended to) culminate in a transfer to WIPL of the interest at issue, which is ownership, possession, and/or control of the refinery.

---

this brief) that negate a nonowner's/nonoperator's responsibilities.  At closing, the assets were not transferred to WIPL.  Because WIPL never became an owner or operator of the refinery, the Sale Order's "must become a party" language was rendered inoperative as to WIPL.  At best for the United States, substituting WIPL would be a meaningless, formalistic exercise because WIPL is in no position to comply with the Consent Decree.

None of this leaves the United States without a remedy. The actual refinery owner/operator, PHRT, is engaged with the United States and this Court, seeking a determination as to how the Sale Order/Consent Decree should be applied to PHRT. See ECF Doc. 71 (instant case)(PHRT Response in Opposition to Motion to Substitute). PHRT does not deny that it should be a party to the Consent Decree, but rather disagrees with the United States on the details of what its party status should be, among other details. *Id.*[5] In any event, PHRT's admission that it should be a party, in some form, is logical and proper, because PHRT is the entity with the "keys to the facility" and thus the power to take action under the Consent Decree (if any action is required). WIPL's absence from this lawsuit would have no substantive effect on the outcome or the refinery's accountability to environmental laws and regulations, because WIPL does not own or control the refinery.

For all of the foregoing reasons, the Motion to Substitute WIPL should be denied. WIPL submits that there is no genuine issue of material fact supporting

---

[5] WIPL's principal argument is that it should not be substituted as a party under Rule 25 (whether "party defendant" or otherwise) because there was no transfer of interest to it. For the same reasons, it should not be *joined* as a party. Citing *Eastman Chemical Company v. Alphapet Inc.*, 2011 WL 13054223, at *4 (D. Del. Dec. 9, 2011), the United States posits that "Courts in the Third Circuit have held that in situations **where the transfer of interests has been established** but the court is unconvinced that substitution would best facilitate the conduct of the litigation, joinder of corporate successors is appropriate." U.S.A. Memo., ECF Doc. 68, pp. 14-15 (emphasis added). In the alternative, WIPL adopts and incorporates the arguments of PHRT (ECF Doc. 71) that WIPL should not be a party *defendant* (by substitution, joinder, or otherwise), because the Sale Order does not so require. Sale Order ¶ 11. Additionally, the same paragraph of the Sale Order contemplates participation in the Consent Decree "as [it] may be amended with the mutual consent of the parties." Upon information and belief, the United States has not proposed an amendment where the United States admits WIPL has no liability under the Consent Decree.

substitution. At minimum, under *Luxliner*, an evidentiary hearing should be set to determine the issues.

B.  Service upon WIPL was insufficient.

Rule 25 requires that the motion to substitute be served in the manner provided by Rule 4. Fed. R. Civ. P. 25(c) & (a)(3). In turn, Rule 4 requires the service of a summons and complaint. Fed. R. Civ. P. 4(c)(1). A summons must be properly served to obtain personal jurisdiction. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A harmonious reading of these rules requires that the motion be served along with the summons and complaint. It also serves the practical purpose of informing the proposed substitute defendant that its rights may be affected if it fails to respond.[6]

Moreover, the United States' certificate of service, appended to its motion to substitute, suggests that documents were served upon WIPL on July 13, 2023; yet, no motion was filed with the Court until July 28, 2023 (ECF Doc. 67). "The primary function of Rule 4 is to provide the mechanism for bringing notice of the commencement of an action to the defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." 4 Fed. Prac. & Proc. Civ. § 1063 (Wright & Miller). In the instant case, the "ritual" and "mechanism" were turned upside down by purported service of a motion to substitute more than

---

[6] WIPL is cognizant that the Court rejected this argument in 1:21-cv-00264, ECF Doc. 39. WIPL includes it here to preserve the issue. WIPL also reserves the right to contest this Court's personal jurisdiction based upon lack of contacts, if it is made a party. See *United States of America v. Offshore Marine, Ltd.*, 179 F.R.D. 156 (D.V.I. 1996).

two weeks before that motion was filed with the Court. WIPL has located no case law on point, probably because the practice of attempting to serve a document before filing (especially weeks before filing) is extremely rare and contrary to the purposes of service. This Court should find that service was insufficient. An unfiled motion to substitute gives insight into a potential adversary's possible intentions, but does not signal the beginning of the Court's authority over the motion. It is also inefficient in that the nonparty must compare the pre-filing, "service" draft to the as-filed motion. A holding that saddles nonparties with the responsibility of monitoring the docket for filing of a document that the party may, or may not, ever file would be contrary to the purpose of the rules.

## CONCLUSION

PHRT has admitted to this and other Courts that it alone has ownership, possession and control of the refinery property and that it alone is responsible for obligations concerning its operation. PHRT's exclusive right to take title to the refinery property, and to operate it, was expressly recognized in the Bankruptcy Court's order approving the sale. PHRT perfected those rights at closing. Although PHRT and the United States disagree on certain details regarding the future operation of the refinery and what PHRT's obligations are, PHRT is engaged with the United States and this Court to determine the way forward. Meanwhile, WIPL -- a nonowner and nonoperator -- is not in possession or control of the refinery and thus cannot implement any provision of the Consent Decree (including its

modifications). There was no transfer of interest to WIPL. As such, the United States' motion to substitute should be denied as to WIPL.

                 Respectfully Submitted,

Dated: August 25, 2023    By: */s/ Ryan C. Stutzman*
                 Ryan C. Stutzman, Esq. (VI Bar No. R2053)
                 **CSA ASSOCIATES, P.C.**
                 1138 King Street, Suite 100
                 Christiansted, VI  00820
                 Tel: 773-3681
                 Attorney for West Indies Petroleum Limited