(n) all deposits (including security deposits, rent, electricity, telephone or otherwise and retainers held by attorneys, accountants, financial advisors and other professional advisors retained by any Seller or by any creditors' committee in the Bankruptcy Case) and other prepaid charges of each Seller, in each case other than with respect to any Purchased Assets;

(o) any assets of each Seller in a directors and officers liability insurance policy, executive or incentive compensation, bonus, deferred compensation, pension, retiree medical, stock option or other stock purchase plan or other Employee Benefit Plan;

(p) Intentionally deleted;

(q) all accounts receivable and pre-paid assets of each Seller, including, without limitation, any BP Receivables and NRI Receivables;

(r) Intentionally deleted;

(s) all attorney client privilege and attorney work product protection of each Seller or associated with the Business (as currently or formerly conducted) as a result of legal counsel representing a Seller or the Business (as currently or formerly conducted), and all Files and Records related thereto subject to such attorney client privilege or work product protection; provided that any privilege or work product that exclusively relates to the Purchased Assets or that is necessary to operate the Business (other than such privileges, protections and related Files and Records related to or in connection with the transactions contemplated by this Agreement or any Transaction Document) shall not be deemed to be an Excluded Asset whether or not in connection with the transactions contemplated by this agreement or any Transaction Document; and

(t) all shares of capital stock or other equity interests in any Seller or any Affiliate thereof or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in any Seller or any Affiliate thereof.

For clarification purposes and without implication that the contrary would otherwise be true, it is understood and agreed that all rights and remedies with respect to the Excluded Assets or the Excluded Liabilities and which rights or remedies first arise after the Closing shall be retained by Sellers and shall not be transferred to Purchaser hereunder.

1.4 Assignment of Assigned Contracts. To the maximum extent permitted by the Bankruptcy Code, but subject to applicable Law and the other provisions of this Section 1.4, Sellers shall assume and transfer, sell and assign all Business Contracts and Business Permits to Purchaser pursuant to Sections 363 and 365 of the Bankruptcy Code as of the Closing Date or such other date as specified in the Sale Order or this Agreement, as applicable. Notwithstanding any other provision of this Agreement to the contrary, this Agreement shall not constitute an agreement to assign any Business Contract or Business Permit (or any right thereunder) if an attempted assignment without the consent of a third party, which consent has not been obtained prior to the Closing (and is not provided for or satisfied by the Sale Order, the Bankruptcy Code or applicable Law), would constitute a breach or in any way adversely affect the rights of Purchaser or Sellers thereunder and the Parties acknowledge and agree that the Closing shall

proceed with respect to the remaining Business Contracts and Business Permits without any reduction in the Purchase Price; provided that the Sellers' acknowledge and agree that the Sellers shall employ its reasonable best efforts to secure any requisite consents to assume any Business Permits, or, if unable to secure such consent, shall use reasonable best efforts, at the cost of the Purchaser, to secure a new business permit in favor of the Purchaser from the issuing party prior to the Closing.

## ARTICLE II
## Assumption of Liabilities

2.1     Agreement to Assume. Purchaser shall not assume or agree to pay, perform and discharge when due, any liabilities or obligations of Sellers. As such, all liabilities and obligations of Sellers are collectively referred to herein as "Excluded Liabilities". Purchaser shall not assume, be deemed to have assumed, or otherwise be responsible for, the Excluded Liabilities.

2.2     Assumed Liabilities. Purchaser shall not assume or agree to pay, perform and discharge when due, any liabilities or obligations of Sellers; provided, however, that Purchaser shall be obligated to pay Cure Amounts and provide any adequate assurance of performance in connection with the assumption and/or assignment of any Contracts, including, without limitation, any Business Contracts and Business Permit, pursuant to Section 1.4 of this Agreement or Section 365 of the Bankruptcy Code, which amounts shall be in addition to the Purchase Price and shall be paid directly to the subject counterparty by Purchaser pursuant to the terms of the Sale Order.

2.3     Excluded Liabilities. Except as provided in Section 2.2, all liabilities and obligations of Sellers shall constitute Excluded Liabilities.

2.4     Notwithstanding the provisions of Sections 2.1, 2.2 and 2.3, Purchaser shall assume all obligations arising under any Business Contracts assigned to it to the extent such obligations are attributable to periods of time from and after the effective date of such assignments to Purchaser.

## ARTICLE III
## Purchase Price, Manner of Payment; Closing; Deposit

3.1     Purchase Price; Delivery of Funds. At the Closing, Purchaser shall in full consideration for the sale and transfer by Sellers of the Purchased Assets (a) pay to Sellers an amount (such amount, the "Closing Payment") equal to (i) the Purchase Price, less (ii) the Good Faith Deposit Amount, by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three Business Days prior to the Closing; and (b) together with Sellers, execute and deliver a joint written instruction to the Escrow Agent instructing it to release from the Escrow Account to Sellers by wire transfer of immediately available funds to an account or accounts designated by Sellers, an amount equal to the Good Faith Deposit Amount.

3.2   Good Faith Escrow Deposit.

(a)   Purchaser has paid to the Escrow Agent the Good Faith Deposit Amount, which funds shall be held in the Escrow Account by the Escrow Agent and invested as provided for in the Escrow Agreement and released by the Escrow Agent only in accordance with the terms of this Agreement and the Escrow Agreement.

(b)   If the Closing occurs, then the Good Faith Deposit Amount, shall be paid to Sellers and the applicable Parties shall submit joint written instructions to the Escrow Agent (in accordance with Section 3.1) to give effect to the same.

(c)   If the Closing does not occur as a result of the termination of this Agreement pursuant to Section 9.1(e), then within five Business Days of such termination, the Good Faith Deposit Amount shall be disbursed to Sellers by the Escrow Agent as liquidated damages and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(d)   If the Closing does not occur as a result of the termination of this Agreement for any reason other than as set forth in Section 3.2(c), then the Good Faith Deposit Amount shall be returned to Purchaser by the Escrow Agent within five Business Days of such termination, and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(e)   The Parties acknowledge that the agreements contained in this Section 3.2 are an integral part of the transactions contemplated by this Agreement and that without these agreements neither Sellers nor Purchaser would enter into this Agreement.

3.3   Time and Place of Closing.   Subject to the satisfaction or waiver of all of the conditions set forth in Article VII, the closing of the Purchase (the "Closing") shall take place at a time and location acceptable to both parties, as soon as practicable, but in any event the Closing Date (defined hereinafter) shall occur no later than January 21, 2022, at 5:00 p.m. (prevailing Central Time), unless extended by Sellers, with the consent of the DIP Agent and Prepetition Secured Parties. Such date of Closing is herein referred to as the "Closing Date".

3.4   Closing Deliverables.

(a)   At the Closing, Sellers shall deliver or cause to be delivered to Purchaser:

(i)   a certificate in a form reasonably satisfactory to Purchaser signed by an authorized officer of each Seller, dated as of the Closing Date, confirming the matters set forth in Sections 7.2(a) and (b) with respect to each Seller;

(ii)   counterparts to the assignment, transfer and conveyance instruments listed on Schedule 3.4, in each case, duly executed by each Seller (as applicable);

(iii)   a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by each Seller;

(iv) a properly executed deed in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property, which has the real property legal description approved by the Office of the Public Surveyor of the Government of the Virgin Islands, together with real property tax clearance letters from the Government of the Virgin Islands covering all the tax bills for all of the parcels of real property being conveyed by the deed, as well as a properly executed assignment in recordable and customary form in the United States Virgin Islands assigning any Sellers' easements, use rights or options to purchase or that such rights are used or held for use in the Business; provided, however, that if any such easements, use rights or options to purchase, or rights used or held for use in the Business, are premised upon any Business Contract, such Business Contract is assigned to Purchaser; and

(v) written instructions from the Sellers and the Purchaser to the Escrow Agent to release the Good Faith Deposit Amount pursuant to Section 3.1.

(b) At the Closing, Purchaser shall deliver or cause to be delivered to Sellers, and Sellers shall have received:

(i) the Closing Payment by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three Business Days prior to the Closing;

(ii) a certificate in a form reasonably satisfactory to Sellers signed by an authorized officer of Purchaser, dated as of the Closing Date, confirming the matters set forth in Sections 7.1(a) and (b);

(iii) counterparts to the assignment, transfer and conveyance instruments listed on Schedule 3.4, in each case, duly executed by Purchaser (as applicable);

(iv) a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by Purchaser; and

(v) written instructions from the Sellers and the Purchaser to the Escrow Agent to release the Good Faith Deposit Amount pursuant to Section 3.1.

3.5 Intentionally deleted.

## ARTICLE IV
### Representations and Warranties of Sellers

Except as set forth in the disclosure letter delivered by Sellers to Purchaser (the "Sellers Disclosure Letter") concurrently with the execution of this Agreement (it being agreed that any matter disclosed pursuant to any section of the Sellers Disclosure Letter shall be deemed disclosed for purposes of any other section of the Sellers Disclosure Letter to the extent the applicability of the disclosure to such other section is reasonably apparent on the face of such

disclosure), Sellers hereby represent and warrant to Purchaser as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

4.1     Due Organization, Good Standing and Limited Liability Company Power. Each Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization. Each Seller has all requisite limited liability company power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted. Each Seller is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification.

4.2     Authorization; Noncontravention.

(a)     Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, each Seller has the requisite limited liability company power and authority and has taken all limited liability company action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution, delivery and performance by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, the consummation by Sellers of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by all necessary limited liability company, member or other action. This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Sellers as contemplated hereby will be, duly executed and delivered by Sellers. Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Purchaser and each other Person (other than any Sellers or any Affiliate thereof) party hereto and thereto, this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers, enforceable against each applicable Seller in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b)     Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution and delivery by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not:

(i)     conflict with any of the provisions of any Seller's certificate of formation or other formational documents;

(ii) except as provided in Section 4.2(b)(ii) of the Sellers Disclosure Letter and subject to receipt of the Consents set forth in Section 4.3 of the Sellers Disclosure Letter, conflict with or result in a breach of, or constitute a default under or give rise to any right of termination, cancellation, modification or acceleration (including any right of first refusal or similar right) or the loss of a benefit under, or require the Consent of or giving of notice to any Person under any Business Contract, Real Property Lease or Business Permit (in each case, with or without notice or lapse or time or both); except, in the case of this clause (ii) for such conflicts or breaches or Consents or notices that (if not received) would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents;

(iii) subject to the receipt of the Consents referred to in Section 4.3 of the Sellers Disclosure Letter, contravene any Law or any Order applicable to Sellers or by which any of their properties or assets are bound except such contraventions that would not reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents; or

(iv) result in the creation or imposition of any Lien on any of the Purchased Assets.

4.3  Governmental Consents and Approvals. Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the entry of the Sale Order and the expiration, or waiver by the Bankruptcy Court, of the 14-day period set forth in rules 6004(h) and 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as applicable, except as set forth in Section 4.3 of the Sellers Disclosure Letter, no Consent of or filing with any Governmental Entity must be obtained or made by Sellers in connection with the execution and delivery of this Agreement or any Transaction Document by Sellers or the consummation by Sellers of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents that, if not obtained or made, would not reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents.

4.4  Property.

(a) Other than the Real Property, no Seller owns any other real property. One or more Sellers has good and valid title to the Purchased Real Property (other than any Excluded Asset). There are no outstanding options, rights of first offer or rights of first refusal to purchase any Purchased Real Property or any portion thereof or interest therein. No Seller has leased or otherwise granted to any Person the right to use or occupy the Purchased Real Property or any material portion thereof, except as set forth in Section 4.4(a) of the Sellers Disclosure Letter.

(b) Section 4.4(b) of the Sellers Disclosure Letter contains an accurate and complete list as of the date hereof of all Real Property Leases and all other real property

leases and subleases to which a Seller is a party. With respect to each Real Property Lease pursuant to which a Seller is a lessee or sublessee, such Seller has valid leasehold interests in all leased real property described in such Real Property Lease, free and clear of any and all Liens. Each Real Property Lease is a valid and binding obligation of the Sellers party thereto and, to the Knowledge of Sellers, is enforceable against the other parties thereto in accordance with the terms thereof, in each case, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law). Except as set forth in Section 4.4(b) of the Sellers Disclosure Letter, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Real Property Lease by a Seller or, to the Knowledge of Sellers, by any other party thereto, and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded, completely cured, or will be cured on or before the Closing Date pursuant to §365 of the Bankruptcy Code or otherwise.

(c) To the Knowledge of Sellers, there is no, and no Seller has received written notice of any, existing or threatened change in the zoning classification of any Business Real Property (or any portion thereof) from that in effect on the date of this Agreement, in each instance, which would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. All water, sewer, gas, electric, telephone and drainage facilities and all other utilities and public or quasi-public improvements related thereto required by Law with respect to, or required for the operation of, the Business at the Business Real Property, are installed and available to serve the Business Real Property. No condemnation proceeding, lawsuit or administrative action or other matter affecting and adversely impairing the current use or occupancy of the Business Real Property is pending or, to the Knowledge of Sellers, threatened in writing with respect to any Business Real Property which has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. To the Knowledge of Sellers, there has been no material casualty damage at any of the Business Real Property that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, except as disclosed in Schedule 4.11.

4.5 Title to Purchased Assets. Except as set forth in Section 4.5 of the Sellers Disclosure Letter, and excluding Purchased Real Property (which is governed by Section 4.4(a)), one or more Sellers own and has good and valid title to, or a valid leasehold interest in, all personal property included in the Purchased Assets, free and clear of all Liens.

4.6 Affiliate Transactions. Except as disclosed in Section 4.6 of the Sellers Disclosure Letter and except for employment and consultant relationships and compensation, benefits, travel advances and employee or consultant loans to any officer, director, employee or consultant of Sellers, in each case, in the ordinary course of business, there is no Contract or Liability relating primarily to the Business, or the Purchased Assets between (a) a Seller, on the one hand, and (b) any Affiliate, equity holder, option holder, officer, member, partner or director of a Seller (in each case that is not also a Seller), on the other hand, that remains in force and provides for obligations of any party from and after the Closing.

4.7   Material Contracts.

(a)   Section 4.7(a) of the Sellers Disclosure Letter sets forth an accurate, correct and complete list of the following Contracts which a Seller is a party and which are currently in effect as of the date hereof:

(i)   each Contract whereby a Seller has created a Lien in respect of any of the Purchased Assets;

(ii)   each Business Contract containing any covenant limiting the freedom of a Seller or any of its Affiliates (A) to compete with any Person, engage in any line of business or exploit the Purchased Assets, in each case, in any geographic territory, (B) which grants to any Person any exclusivity with respect to any geographic territory, any customer or any product or service, or (C) to solicit for employment, hire or employ any Person;

(iii)   each Business Contract that requires capital expenditures or other outstanding payments to be made by a Seller in excess of $100,000, in each case, following the date hereof;

(iv)   each Business Contract involving the sharing of profits, losses, costs or liabilities with any other Person relating to the Business, or the Purchased Assets;

(v)   each Business Contract that requires (or may require in certain circumstances) in accordance with its terms the provision of credit support, collateral, a guarantee or similar financial assurance in respect of the Business, or the Purchased Assets;

(vi)   each Business Contract that (A) provides services for a fixed price or maximum fee, or pursuant to any cap or similar provisions; (B) grants "most favored nation" status (or similar status) to a Person (whether in respect of pricing or otherwise); or (C) provides any performance guarantee, material rebates, discounts, incentive or volume credits; and

(vii)   each Contract with any Governmental Entity relating to the Business, or the Purchased Assets.

(b)   The Contracts required to be listed in Section 4.7(a), together with the Business Contracts and the Real Property Leases are referred to as "Material Contracts". True, correct and complete copies of each Material Contract have been made available to Purchaser prior to the date hereof. Each Business Contract is a valid and binding obligation of a Seller (except for any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts) and to the Knowledge of Sellers, enforceable against the other parties thereto in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law). Except as set forth in Section 4.7(b) of the Sellers Disclosure Letter and any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through