| DISTRICT COURT OF THE VIRGIN ISLANDS |
| :---: |
| DIVISION OF ST. CROIX |

| | |
| :--- | :--- |
| UNITED STATES OF AMERICA,<br>THE UNITED STATES<br>VIRGIN ISLANDS,<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**HOVENSA, LLC, LIMETREE<br>BAY REFINING, LLC and<br>LIMETREE BAY TERMINALS, LLC,**<br><br>        **Defendants.** | **1:11-cv-00006-RAM-EAH** |

**TO:**    **Myles E. Flint, II, Esq.**
         *For the United States*
        **Ian S.A. Clement, Esq.**
        **Pamela R. Tepper, Esq.**
        **Stephanie Sebor, Esq.**
         *For the U.S. Virgin Islands*
        **Richard H. Dollison, Esq.**
         *For HOVENSA*
        **Douglas L. Capdeville, Esq.**
         *For Limetree Bay Refining &*
         *Limetree Bay Terminals*
        **Mark Delaquil, Esq.**
         *For Limetree Bay Refining, LLC*
        **Corinne Snow, Esq.**
         *For Limetree Bay Terminals*
        **Andrew C. Simpson, Esq.**
         *For Non-Parties Port Hamilton*
         *Refining & Transportation and*
         *Transition Refining Entity*
        **Ryan C. Stutzman, Esq.**
         *For Non-Party West Indies*
         *Petroleum Ltd.*

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 2

## ORDER

**THIS MATTER** comes before the Court on the Motion filed by Plaintiff, United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), for an Order Substituting West Indies Petroleum Limited ("WIPL"), Port Hamilton Refining and Transportation, LLLP ("PHRT"), and the Transition Refinery Entity LLC ("TRE"), for Defendant Limetree Bay Refining, LLC. Dkt. No. 67. In the alternative, the United States moves to join those three entities as Defendants. *Id.* Counsel represents that Plaintiff United States Virgin Islands does not object to the filing of the motion under LRCi 7.1(f), and Defendant Limetree Bay Terminals LLC ("LBT") does not oppose the motion. *Id.* The United States was unable to seek concurrence from Defendant Limetree Bay Refining LLC ("LBR") because that entity no longer exists. *Id.* Non-parties PHRT and WIPL filed oppositions to the motion, Dkt. Nos. 71, 77, and the United States filed replies, Dkt. Nos. 76, 78. The TRE filed a response. Dkt. No. 72.

## PROCEDURAL HISTORY

### A. Background

In an accompanying memorandum in support of its motion, Dkt. No. 68, the declaration of Attorney Myles E. Flint, II, Dkt. No. 68-1, and attached exhibits, the United States described the procedural history of this lawsuit that prompted the instant motion. In June 2011, the Court entered a Consent Decree that resolved the United States' and the Virgin Islands' claims against HOVENSA, which owned the oil refinery on St. Croix, under the Clean Air Act. *Id.* at 2. The Consent Decree included injunctive relief that directed HOVENSA to

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 3

substantially reduce the emissions of certain air pollutants from the refinery. *Id.* The Consent

Decree also required HOVENSA to condition any transfer of ownership or operation of or

other interest in the refinery on making the terms of the Consent Decree applicable to the

transferee. Dkt. No. 5-1 (Consent Decree) at 13, ¶ 7.

In September 2015, HOVENSA filed for Bankruptcy protection under Chapter 11; LBT

purchased HOVENSA's assets, with the sale closing in January 2016. Dkt. No. 68 at 2.

Thereafter, LBT transferred certain refinery assets to LBR. *Id.* Between 2016 and 2020, the

United States and the Virgin Islands negotiated a "First Modification of the Consent Decree"

with both LBT and LBR; it was lodged with the Court in August 2020 and filed in April 2021;

the Court entered the First Modification in December 2021. *Id.* at 2-3. LBT and LBR were

included as parties to the First Modification of the Consent Decree. Dkt. No. 42 (First

Modification) at 1.

Meanwhile, in September 2020, LBR restarted the refinery, which resulted in at least

six significant air emission events between December 2020 and May 2021. Dkt. No. 68 at 3.

In May 2021, the EPA issued an administrative order to LBT and LBR under Section 303 of

the Clean Air Act that required the refinery to temporarily cease operations because it

presented an imminent and substantial endangerment to public health. *Id.*

LBR and related entities ("Debtors") (but not LBT) filed for bankruptcy protection. In

August 2021, the bankruptcy court issued an order to sell substantially all of the Debtors'

assets. *Id.* After the winning bid went to another company at the November 2021 auction, the

Debtors filed an emergency motion in December 2021 to reopen the auction to allow WIPL

(which had not qualified for the November 2021 auction) to participate. WIPL delivered an executed asset purchase agreement and paid a $3 million deposit. *Id.* Later that month, following the reopened auction, WIPL and PHRT jointly were designated by the Debtors as the winning bidder; together, they would "acquire substantially all assets of the Debtors' estates, including all real property of the Debtors, for the sum of $62 million[.]" *Id.* at 4.

The United States interposed a limited objection to the sale. *Id.* at 4.  It requested that the Court make clear that any obligations in the consent decree as modified were not adversely impacted by the bankruptcy court order. *Id.* at 5. At the December 2021 sale hearing, Charles Chambers, CEO of WIPL, testified that WIPL provided approximately 70% of the purchase price. *Id.* Subsequently, the bankruptcy court issued the Sale Order, which defined the "Purchaser" as both WIPL (a Jamaican corporation) and PHRT (a Virgin Islands LLP formed by WIPL). *Id.* The Asset Purchase Agreement ("APA"), attached to the Sale Order, also defined "Purchaser" as both WIPL and PHRT. *Id.* The APA stated, inter alia, that "Purchaser agrees to purchase from Sellers, and Sellers agree to sell, transfer and convey to Purchaser, with Purchaser taking title in the name of PHRT, all of Sellers' assets, properties, rights and interests as of the Closing Date[.]" Dkt. No. 77-1 at 7 ¶ 1.1.

The Sale Order contained certain paragraphs (10 and 11) which resolved the United States' limited objection and required the Purchaser to become a party to the modified Consent Decree in the *United States v. HOVENSA* action, and to the Joint Stipulation in the

*United States v. Limetree Bay Refinery* action.[1] *Id.* at 6. Those paragraphs also provided that nothing in the Sale Order or APA would release, preclude or enjoin the enforcement of any police or regulatory liability to a government unit that any entity would be subject to as the post-sale owner or operator of the property or prevent the EPA from taking other action under applicable nonbankruptcy law. *Id.* The sale closed in January 2022. *Id.* at 7.

In March 2022, the Debtors filed a Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Limetree Bay Services. *Id.* That document defined "Purchaser" as WIPL and PHRT, collectively; it gave WIPL and PHRT the option of reorganizing LBR as the Transition Refinery Entity, which would own the permits necessary for operation of the refinery. *Id.* at 8. The Purchaser would serve as the manager and sole equity interest holder in the TRE. *Id.* The United States objected, inter alia, because the Disclosure Statement/ Proposed Plan did not condition the transfer of permits on compliance with nonbankruptcy law. *Id.* at 8-9. Following the May 2022 confirmation hearing, the Debtors, the Purchaser, and the United States negotiated language of the proposed order as it related to environmental matters (including this action). *Id.* at 9.

The bankruptcy court issued the Plan Order in May 2022 that, inter alia, stated at Paragraph 31 that nothing in the Plan or Confirmation Order would modify the consent

---

[1] In 2021, after the aforementioned series of accidents that led to several air pollution events, the United States and the refinery's former owners and operators executed a Joint Stipulation which, inter alia, prohibited a restart of the refinery without notice, inspection, and equipment retrofits to protect the public from air pollution. *United States v. Limetree Bay Refining*, 21-cv-264, Dkt. No. 24 at 2.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 6

decree as modified; the TRE would be fully bound by the consent decree and joint stipulation

and would cooperate in the substitution of the TRE as a named defendant in both this case

and in *United States v. Limetree Bay Refining, LLC,* 1:21-cv-264-WAL-EAH (D.V.I.) (the

"Limetree Bay" action). *Id* at 10. The reorganization of LBR as the TRE became effective on

the Effective Date (June 10, 2022), and LBR ceased to exist. *Id*. at 11.

### B.  Arguments

### 1.  The United States' Motion

Against the backdrop of this procedural history, the United States argues that Fed. R.

Civ. P. 25 allows substitution of corporate entities if there has been a transfer of interest of

the original party to the new entities, even after a judgment has been rendered. *Id*. at 11-12

(citing Rule 25(c)). Substitution or joinder is within the Court's discretion. *Id*. at 12. WIPL's

and PHRT's acquisition of LBR's assets (being designated as the Winning Bidder and

"acquir[ing] substantially all assets of Debtors estate, including all real property") and the

Sale Order requiring that they become parties to the consent decree satisfy the Rule's

transfer of interest requirement. And in order to become parties to the consent decree, they

would have to become parties to this case. *Id.* at 13. In addition, the Plan Order required TRE

to be fully bound by the consent decree and cooperate in its substitution as a named

Defendant in this case. *Id.* Since WIPL and PHRT were transferees of an interest under Rule

25(c), they were required to become parties to the consent decree, and the Plan Order

requires the TRE to be fully bound by the consent decree, the issue is whether the Court

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 7

should exercise its discretion to substitute WIPL, PHRT, and the TRE for Defendant LBR, or

to join them as Defendants. *Id.*

 The United States posits that substitution will facilitate the conduct of the case by

bringing the entities that possess substantially all of LBR's former assets (including the

refinery) into the case. *Id.* at 14. Their presence is necessary to protect the Court's oversight

of the consent decree and insure its remaining injunctive relief obligations are completed. *Id.*

This is supported by the Sale Order's requirement that WIPL and PHRT become parties to

the consent decree. *Id.* In the alternative, the Court could exercise its discretion to join these

three entities as Defendants if the Court is not convinced that substitution would best

facilitate the litigation. *Id.* at 14-15.

### 2. PHRT's Opposition and the United States' Reply

 In its opposition to the substitution motion, PHRT argues that the bankruptcy court

Sale Order "only required Port Hamilton to become a 'party'" to the consent decree as

modified, and the later Confirmation Order required the TRE to become a party defendant

as the successor to LBR. Dkt. No. 71 at 2, 3. It contends that there are distinctions between a

party and a party defendant: the addition of PHRT (which owns the refinery and the air

monitors) as a party but not as a party defendant "allows the Court to ensure that Port

Hamilton facilitates any party defendant that requires Port Hamilton's cooperation to

comply with the consent decree." *Id.* at 3. It posits that if the bankruptcy court intended PHRT

to become a party defendant, it would have said so. *Id.* at 4. It is willing to negotiate terms

under which it would be joined as a party defendant but otherwise its only obligation is to

United States v. HOVENSA, LLC
1:11-cv-00006-RAM-EAH
Order
Page 8

join the consent decree as a party. *Id.* at 5. It adds that it believes the United States has misinterpreted the consent decree, as the United States apparently believes that PHRT is in non-compliance with certain provisions, and thus it cannot agree to become a party defendant without modifications to the United States' interpretation. *Id.* at 5-7. PHRT regards the motion to substitute as a "disguised effort to modify the consent decree." *Id.* at 7.

PHRT raises a jurisdictional argument, asserting that the Court retained jurisdiction over the consent decree "for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating disputes between the United States, the Virgin Islands and HOVENSA that may arise under the provisions of this Consent Decree[.]" *Id.* It posits that the United States does not raise any issue relating to PHRT that falls within the narrow scope of the Court's retained jurisdiction, and any violation of the Sale Order should be addressed in bankruptcy court. *Id.* at 8. It also asserts that adding new parties to the consent decree without their consent is beyond the scope of the retained jurisdiction by the Court and therefore the United States' substitution motion should be denied. *Id.* at 9-10.

In its reply, the United States points out that PHRT seeks to argue the scope of its substantive obligations and to evade being bound by the terms of the consent decree. Dkt. No. 76 at 1. But the scope of PHRT's obligations is not the subject of the pending motion, which is procedural only. *Id.* at 2. PHRT admits it owns the refinery and that the bankruptcy court ordered it to join the consent decree. In order to be a party to the consent decree, it must be a party to this case which will allow the United States and the Court to hold PHRT accountable to its agreement to become a party to the consent decree. *Id.* at 3. Further, the

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 9

Court retained jurisdiction of this matter to implement and enforce the consent decree and to interpret the Sale Order. In addition, nothing in the Sale Order divested any tribunal of jurisdiction under police or regulatory law (here, the Clean Air Act) to interpret the Order or adjudicate any defense asserted. *Id.* at 3-4. The Court also had personal jurisdiction over PHRT since case law provides that if such jurisdiction was established over the original party, it is established over the successor party as long as PHRT had an opportunity to challenge substitution/joinder. *Id.* at 4. Finally, although not a defense to substitution, PHRT's argument that it be a party but not a party defendant to this case, as owner of the refinery that plans to operate it, is counter-logical and inconsistent with the Sale Order. *Id.* PHRT as purchaser cannot evade its environmental obligations as a property owner. *Id.* at 5-6.

### 3. WIPL

WIPL interposed a "Limited Response" to the motion to substitute. Dkt. No. 77. It argues that *PHRT* took title to the refinery property and other assets and was the sole entity in possession and control of that property and assets. *Id.* at 1-2. While designated as a Purchaser, WIPL "did not actually purchase any refinery property, units or other assets, and has never operated the refinery in any respect," because the Sale Order required the conveyance of the refinery assets to PHRT not WIPL, *id.* at 3, and the deed at closing conveyed the real property to PHRT, *id.* at 4. WIPL does not have and never had "keys to the refinery," nor does it or its members control PHRT. Thus, as a nonowner, it cannot carry out any provision of the consent decree and is not a proper party for substitution. *Id.* at 2.

In this regard, the United States has not identified an actual "transfer of interest" of the refinery property or any refinery asset to WIPL: under Virgin Islands law, transfer of ownership of real property is only by written deed, and the deed was made out to PHRT. *Id*. at 8-9, 10-11. It adds that the Sale Order is "ambiguous" regarding the meaning of the word "Purchaser": while it identifies PHRT and WIPL together as the Purchaser, it required title to the refinery to be transferred to PHRT only at closing. *Id*. at 9. Read as a whole, the documents indicate that neither the bankruptcy parties or bankruptcy court understood "Purchaser" to mean both WIPL and PHRT. *Id*. at 10. WIPL posits that the United States will likely take a position that conflates WIPL with PHRT. But WIPL's "purported" role in the formation of PHRT is immaterial because it is an autonomous entity; while it "obtained certain rights" under the Sale Order (that it did not describe), those rights did not culminate in a transfer to WIPL of the ownership, possession, or control of the refinery. *Id*. at 11. In a footnote, WIPL states that it should not be joined under Rule 25(c) either. It does not offer an argument, but emphasizes a phrase from a case cited by the United States that there has to be an interest before joinder is allowed. *Id.* at 12 n.5. It adopts and incorporates PHRT's arguments that it should not be a party defendant because the Sale Order did not require it. *Id*.

WIPL also contends that service upon it was insufficient because the substitution motion had to be served along with the summons and complaint, pursuant to Fed. R. Civ. P. 4—implying that the summons and complaint were not served with the motion. *Id.* at 13-14. It objects to service two weeks before the motion was filed with the Court. *Id.* at 13.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 11

WIPL attached a number of documents to its opposition, including the Affidavit of Danville Walker, a Senior Vice President of WIPL, which he submitted in both this case in opposition to the motion for substitution, and in the *Limetree Bay* case in opposition to the United States' motion to direct Defendants to abide by the Joint Stipulation. Dkt. No. 77-11. Walker avers, inter alia, that WIPL: is not a successor in interest to Hovensa or LBR; it did not take title to the refinery property or possession of the property; it did not control the refinery or PHRT; and it did not acquire the refinery property or assets.[2] *Id.*

In its reply, the United States agrees with WIPL that the motion to substitute hinges on the Sale Order, emphasizing the provision therein that WIPL must become party to the consent decree. Dkt. No. 78 at 1. It asserts that WIPL asks the Court to look beyond the language in the Sale Order to unwind WIPL's obligations imposed in that Order. The fact that WIPL is not on the property deed is beside the point since the Sale Order did not impose such a condition in order for WIPL to be subject to the consent decree. *Id.* In addition, the Sale Order provided that, "[n]otwithstanding anything in [the Sale] Order or in the APA to the contrary, the Purchaser must become party to (i) the Consent Decree as modified." *Id.* at 3.

The United States attached documents showing that it had been discussing the issue of WIPL's adherence to the terms of the consent decree in early 2022. Dkt. No. 78-1. In the documents, the United States disagreed with PHRT's position that only PHRT (not PHRT and

---

[2] Some of Walker's statements are factual, such as "WIPL did not take title to the refinery property," but others are legal conclusions, such as WIPL is not a "successor-in-interest to Limetree Bay Refining." Dkt. No. 77-11.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 12

WIPL) needed to be a signatory on any filing because WIPL was the entity that qualified as viable under the sale process and PHRT's financial status was unknown. *Id*. at 4-16. The United States asked PHRT and WIPL to provide certain corporate documents, such as their formation documents, ownership structure, subsidiaries, officers, and investors, which neither entity did. *Id.* at 15-16.

Further, there was never any misunderstanding about the meaning of the term "Purchaser" or that WIPL must become party to the consent decree. Dkt. No. 78 at 4. The United States highlighted WIPL's motion for reconsideration of the order granting the United States' motion for substitution in the *Limetree Bay* case. There, WIPL admitted that the Sale Order provided that they must become party to the Joint Stipulation. Since the obligation to become party to the Joint Stipulation in Sale Order paragraph 11 was the same for WIPL becoming party to the consent decree, the United States asks the Court to take judicial notice of the statement related to the Joint Stipulation. *Id*. at 4-5. And while WIPL asserts that it would be in no position to comply with the consent decree, its contentions were incomplete, as it had provided no evidence about its relationship or contractual agreements with PHRT or PHRT's financial viability. *Id.* at 5. The Sale Order contemplated that both entities would, as parties to the consent decree, be responsible for ensuring that any restart to the refinery would protect public health and safety. That WIPL chose not to become a party to the property deed did not change that requirement. *Id*.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 13

The United States adds that WIPL was properly served under Rules 25(c) and 4, citing the Court's holding rejecting WIPL/PHRT's similar argument offered in the *Limetree Bay* case, *Id.* at 6-7.

### 4.  Transition Refining Entity

On August 11, 2023, the TRE filed a response to the United States' motion to substitute. Dkt. No.  72. The TRE agreed that it should be added as a party defendant to the consent decree as modified by the First Modification, but did not agree to any other modification of the consent decree. *Id.*

## DISCUSSION

Federal Rule of Civil Procedure 25, "Substitution of Parties," provides, in pertinent part:

> Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c). A transfer of interest occurs when "one corporation becomes the successor to another by merger or other acquisition of the interest the original corporate party had in the lawsuit." *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) (citing cases).  Substitution under Rule 25(c) "ordinarily does not alter the substantive rights of the parties but is merely a *procedural* device designed to facilitate the conduct of a case," *Id.* at 71-72 (emphasis added); *see also Rodriguez-Miranda v. Benin*, 829 F.3d 29, 40 (1st Cir. 2016) ("In other words, the rule serves as a procedural mechanism to bring a

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 14

successor in interest into court when it has come to own the property in issue.") (internal

quotation marks omitted); *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) ("'Rule 25(c) is not

designed to create new relationships among parties to a suit but is designed to allow the

action to continue unabated when an interest in the lawsuit changes hands.'") (quoting *In re*

*Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981)). Substitution and joinder after

judgment is proper when necessary for the enforcement of the judgment. *Luxliner*, 13 F.3d

at 71; *Texas v. Am. Tobacco Co.*, No. 5:96-CV-00091-JRG, 2019 WL 13219407, at *2 (E.D. Tex.

May 22, 2019) ("A party who receives any interest in assets that are subject to a settlement

agreement may be joined in settlement enforcement proceedings pursuant to Fed. R. Civ. P.

25. *See* Fed. R. Civ. P. 25(c) (omitting limitations on the type of interest or the procedural

posture of the action).").

## I.     PHRT

WIPL and PHRT purchased Defendant Limetree Bay Refining's assets in a sale

overseen by the Bankruptcy Court. The December 2021 Sale Order clearly defined both

entities, together, as the "Purchaser" in this transaction. Dkt. No. 68-1 (Sale Order) at 5.

Pursuant to Paragraph 11 of the Sale Order, "[t]he Purchaser must become party to (i) the

Consent Decree as modified by the First Modification and Second Modification" in *United*

*States v. HOVENSA*, Civ. No. 1:11-cv-0006, and to the Joint *Stipulation in United States v.*

*Limetree Bay Refining*, Civ. No. 1:21-cv-00264." *Id.* at 41. At the closing, "the transfer of the

Purchased Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of

the Purchased Assets and will vest the Purchaser—with Purchaser taking title in PHRT—

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 15

with all of the Debtors' rights, title, and interests in the Purchased Assets." Dkt. No. 68-1 (Sale

Order ¶ W) at 29-30. The APA also defined Purchaser as WIPL and PHRT. *Id*. at 44.

Nowhere in its brief does PHRT discuss Rule 25(c)'s substitution requirement—i.e.,

whether it is a successor to LBR—and how that requirement would not apply here. That may

well be because *WIPL* argued extensively that PHRT was the successor to Hovensa/LBR in

that the deed to the refinery property and the assets were transferred to PHRT (as opposed

to WIPL) following the sale. Dkt. No. 77 at 2-6, 8-11. WIPL provided a copy of the deed to the

property, showing that it was in PHRT's name, and cited the Sale Order indicating that the

assets were transferred to PHRT. *Id.* at 3. Based on this evidence, PHRT certainly qualified as

a successor to Hovensa/LBR and satisfied the Rule 25(c) requirement that it be substituted

in place of LBR as a Defendant in this action.

PHRT's arguments seeking to avoid this result are unavailing. PHRT's main assertion

is that Sale Order required only that it become a "party" to the consent decree (as modified).

From that premise, it asserts that being a party is not equivalent to being a party defendant

and, if the Court were to so conclude, such a position would impermissibly modify the terms

of the consent decree and immediately subject PHRT to "potential fines for issues of (alleged)

non-compliance claimed by the United States" based on the United States' "*mis*interpretation

of the consent decree." Dkt. No. 71 at 5. The Court rejects this string of suppositions. First,

PHRT does not explain a critical point: how it could become some sort of freestanding "party"

subject to the consent decree but unattached to either side of the "v." in this litigation as

neither a plaintiff nor a defendant. For instance, it does not explain how the Court could

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 16

enforce any obligation regarding the consent decree on it: its statement that it would "facilitate[] any party defendant that requires Port Hamilton's cooperation to comply with the consent decree," Dkt. No. 71 at 3 is inapposite as well as incomprehensible.

Second, PHRT's concerns are with the United States' purportedly incorrect interpretation of the consent decree which, in its view, would improperly impose liability on it. But this argument is directed to liability on the merits, not to whether PHRT should be substituted in this action. Given that substitution "ordinarily does not alter the substantive rights of the parties but is merely a *procedural* device designed to facilitate the conduct of a case," *Luxliner*, 13 F.3d at 71-72 (emphasis added), this argument is premature and can be thrashed out once PHRT becomes a party to this case. *See Am. Tobacco Co.*, 2019 WL 13219407, at *2 ("[A] preliminary determination that 'an interest [has been] transferred' for Rule 25 purposes does not constitute a decision on the merits or otherwise affect the legal relationship between the parties."). And the only way PHRT may be a party to this case is as a defendant.

In a similar vein, PHRT posits that "adding new parties to the consent decree without their consent (or with their consent but in a status as a 'party defendant' that is contrary to the consent given) is beyond the scope of the retained jurisdiction clause."[3] Dkt. No. 71 at 10.

---

[3] The consent decree provided that the Court retained jurisdiction "for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating disputes between the United States, the Virgin Islands, and HOVENSA that may arise under the provisions of the Consent Decree until the Decree terminates. . . " Dkt. No. 3 at 128-29 (¶ 190).

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 17

Here, too, PHRT raises a merits argument against liability in the guise of a jurisdictional argument against substitution. However, PHRT and WIPL both consented, as Purchasers, to become subject to the consent decree, as modified, as a condition of the sale of LBR's assets to them. Given that the district court has retained jurisdiction to enforce the terms of the consent decree and adjudicate disputes arising under the consent decree, and that nothing in the Sale Order divested this Court "of any jurisdiction it may have under police or regulatory law to interpret this [Sale] Order or to adjudicate any defense asserted under this Order," Dkt. No. 68-1 at 44, this Court has jurisdiction to interpret the consent decree. The merits argument PHRT raises falls squarely within that context.[4]

Accordingly, the Court will grant the United States' motion to substitute PHRT as a Defendant which will "facilitate the conduct of this case." *Luxliner,* 13 F.3d at 71.

### 2. WIPL

WIPL's primary argument is that only PHRT—not PHRT *and* WIPL—became the sole entity in possession and control of the refinery property and other assets following the 2021 sale in bankruptcy court; PHRT is thus responsible for obligations concerning the refinery's

---

[4] The Court rejects PHRT's two-sentence argument raised in a footnote, that the Magistrate Judge does not have the authority to grant the substitution motion because it would "have the effect of altering the final judgment." Dkt. No. 71 at 10 n.8. Because PHRT has not presented any argument on this issue, the Court declines to address it. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"). In any event, the substitution motion is solely procedural, *Luxliner,* 13 F.3d at 70-71, and PHRT will have ample opportunity to raise merits arguments on the scope of its liability as this case proceeds.

operation; WIPL cannot carry out any provision of the consent decree because it does not

own or operate the refinery; making it a party to the consent decree would be "inconsistent"

with the Sale Order, and therefore it should not be substituted because there was no transfer

of interest to it. Dkt. No. 77. WIPL cites the Walker Affidavit in support. Dkt. No. 77-11.

The Sale Order and Asset Purchase Agreement explicitly provide that the "Purchaser"

obtained all of the refinery's assets, transferring interest to the "Purchaser"—WIPL and

PHRT. Specifically, the Sale Order stated that, at the closing, "the transfer of the Purchased

Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the

Purchased Assets and will vest the Purchaser—with Purchaser taking title in PHRT—with

all of the Debtors' rights, title, and interests in the Purchased Assets." Dkt. No. 68-1 (Sale

Order ¶ W) at 29-30. WIPL seizes upon the provision that Purchaser took title in PHRT to

argue that there was no transfer of interest to it.  But that is not what the provision said. It

stated that the *transfer of the purchased assets will vest the Purchaser with all of the Debtors'*

*rights title and interests in the Purchased Assets*. It did <u>not</u> say that transfer of the purchased

assets will vest *PHRT* with all of the Debtors' rights, title and interests in the purchased

assets. The fact that the Purchaser (WIPL and PHRT) decided between themselves to have

PHRT take title to the assets does not alter the fact that there was a transfer of interest of the

Debtors' rights, title, and interests in the assets to WIPL. The standard under Rule 25 is the

transfer of a corporate interest, not who is vested with title.

While the Walker Affidavit seeks to show what WIPL's role was *not* with regard to the

refinery once Purchaser purchased those assets—as PHRT is the entity that currently owns

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 19

and operates it—WIPL does not explain what its role *is*. Without WIPL's substantial financial

support, including the $3 million deposit to reopen the auction bidding, and its paying 70%

of the $62 million purchase price, there would have been no purchase and transfer of assets

at all. Moreover, the APA indicates that WIPL formed PHRT. The Walker Affidavit, by not

addressing these salient facts, raises numerous questions about WIPL's actual and current

interest in those assets. The Court finds it difficult to believe that WIPL investors provided

over $40 million to purchase the refinery assets but have no other stake (such as any liens)

in those assets and that WIPL has disappeared from the picture after contributing its largesse

to reopen the bid and pay the lion's share of the purchase price. This question is relevant,

particularly given WIPL's and PHRT's demurring in early 2022 when the United States asked

them for pertinent corporation documents explaining the relationship between the two

entities, any contracts or agreements between them, and the financial viability of PHRT, so

as to actually understand their position at that time that WIPL had no interest in the refinery

and the United States should look only to PHRT. [5]

---

[5] In correspondence with WIPL in July 2022, the United States noted that its focus was not
on the post-closing ownership of assets but the requirements of the Sale Order directing
WIPL and PHRT to become parties to the consent decree. The United States' position was
that the deed was not sufficient documentation to demonstrate that WIPL was relieved from
its obligations in the May 2022 Final Order Approving Disclosure Statement. It requested
that WIPL and PHRT provide additional information, such as: the individuals/entities that
provided the $62 million to close the bankruptcy sale, corporate formation documents, its
management structure and investors, shareholders, directors, all subsidiaries and joint
ventures. Dkt. No. 78-1 at 13-16. WIPL and PHRT did not provide those documents.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 20

But that result was not contemplated by WIPL, PHRT, or the Government.  As WIPL

notes in its brief, "this case requires analysis of the Sale Order. When interpreting another

court's order, courts 'apply traditional principles of contract law and look to the intent of the

issuing court.' A court must interpret another court's order as a whole and give reasonable

meaning and effect to all its parts and provisions." Dkt. No. 77 at 8 (quoting *In re 1701 Com.,*

*LLC*, 2014 WL 4657317, at *9 (Bankr. N.D. Tex. Sept. 17, 2014)). In an effort to parry any

obligation possibly owed under the consent decree, WIPL contends that the definition of

"Purchaser" in the Sale Order was "ambiguous": how could it be a Purchaser when title to the

assets was transferred to PHRT only? In WIPL's view, neither the parties nor the bankruptcy

court "understood the term 'Purchaser' to invariably[6] mean both WIPL and PHRT." Dkt. No.

77 at 10.

There is absolutely no ambiguity to the term "Purchaser." As stated above, it was

WIPL that successfully reopened the bidding process and provided the lion's share of the $62

million purchase price. Dkt. No. 68 at 3-5 (citing documents). As "Purchaser," the refinery

assets were purchased by *both* WIPL and PHRT; all of the parties agreed that the "Purchaser"

---

[6] The Court notes that the insertion of "invariably" makes what would have otherwise been
a definitive statement into a conditional statement where WIPL acknowledges some
application of the definition "Purchaser" to it. Similarly, WIPL has acknowledged that it
"obtained certain rights under the Sale Order," but that "those rights did not (and were not
intended to) culminate in a transfer to WIPL of the interest at issue, which is ownership,
possession, and/or control of the refinery." Dkt. No. 77 at 11. This vague admission of
undescribed rights, along with a conclusory assertion of what those rights were not intended
for, undercuts WIPL's position that it should not be considered a "Purchaser," and shows
there was a distinction between its purchasing the "rights, title and interests" in the assets,
Dkt. No. 77-1 at 8 (¶ 1.2(m)), and PHRT taking title to those assets.

would be subject to the modified consent decree—even when that same Sale Order indicated that title would be taken in the name of PHRT. Whether the assets were transferred upon or after purchase to PHRT does not in any way impact the provisions of the consent decree or otherwise change the meaning of "Purchaser": the Sale Order did not condition WIPL becoming or not becoming a party to the consent decree on any subsequent transfer of assets to PHRT. And as the Sale Order provides, "[N]otwithstanding anything in this Order or the APA to the contrary, the Purchaser must become party to (i) the Consent Decree as modified[.]" Dkt. No. 68 at 6 (quoting Sale Order). The Sale Order contemplated that both WIPL and PHRT, together, as parties to the consent decree, would be responsible for ensuring that any restart of the refinery would protect public health and safety against any further serious air pollution events. That WIPL chose not to take title under the deed does not change this legal requirement. Dkt. No. 78 at 5. WIPL's view of the word "Purchaser" contained in the Sale Order is unreasonable. The Court is not inclined to ignore the clear directive in the Sale Order requiring WIPL to be part of the consent decree.

While acknowledging Paragraph 11 of the Sale Order, which defined it and PHRT as the "Purchaser," and provided that the Purchaser must become party to the consent decree in this action, as modified, WIPL contends that another sentence in Paragraph 11, providing that "Purchaser shall not become liable for any obligations, other than air monitoring obligations under such consent decree that do not relate to property or units *purchased* or operated by Purchaser pursuant to this Sale Order" shows that, since WIPL neither owns or operates the refinery, it has no liability under the consent decree. Dkt. No. 77 at 10 (emphasis

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 22

added). What WIPL reads out of that sentence is the word "purchased." While the Walker

Affidavit provides some evidence showing that WIPL does not own or operate the refinery,

there is no dispute anywhere in the record that it did not *purchase* the refinery and LBR's

assets. This provision does not exempt WIPL from its obligations as Purchaser under the

consent decree.

As indicated above, Rule 25(c) is implicated only if "an interest is transferred." The

text of the Rule does not identify what interest must be transferred. *See Kowalski v. Mommy

Gina Tuna Res.*, No. 05-cv-0679, 2008 WL 976911, at * 3 (D. Haw. Apr. 10, 2008) ("Rule 25(c),

however, does not require that the party to be joined be a continuation of the other party,

just that the transfer of 'an interest' have occurred."). The Third Circuit has held that a

corporate interest is transferred "when one corporation becomes the successor to another

by merger or *other acquisition* of the interest the original corporate party had in the lawsuit."

*Luxliner*, 13 F.3d at 71 (emphasis added). It, too, leaves open the definition of "interest" to be

satisfied under the Rule. In the Court's view, while the Walker Affidavit shows that certain

assets were vested in PHRT after purchase by both WIPL and PHRT, it does not paint a

complete picture of what interests remain with WIPL, and WIPL has not clarified this point.

But what is crystal clear is that the Debtors' rights and interests in the purchased assets were

transferred to WIPL as a Purchaser. Accordingly, the Court holds that WIPL should also be

substituted for LBR in this action, and that such substitution will "facilitate the conduct of

this case." *Luxliner,* 13 F.3d at 71. WIPL will have ample opportunity to set forth its merits

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 23

arguments to the district judge that it should not be governed by or liable under the consent decree.

Because the Court firmly believes that WIPL should be present in this action as a party Defendant, the Court further provides an additional basis for WIPL's inclusion as a party defendant. If the Court were to accept WIPL's argument—that PHRT took possession and control of the property, not WIPL; it is "incapable of carrying out any provision of the Consent Decree"; and it should not be substituted—the Court would find its joinder as a Defendant under Rule 25(c) as appropriate and required.

Case law provides that "[w]hen there is uncertainty regarding the nature and extent of the alleged transfers of interest from a named party to a third party, it is more appropriate to join the alleged transferees, rather than to substitute them." *Eastman Chem. Co. v. Alphapet, Inc.*, 2011 WL 13054223, at *4 (D. Del. Dec. 9, 2011) (citing cases); *see also Purdue Pharma L.P. v. Amneal Pharms., LLC*, No. CV 15-1152, 2018 WL 3725772, at *3 (D. Del. July 25, 2018) ("Where questions remain as to the extent of the transfer of an ownership interest in the patents-in-suit, the court in its discretion may choose to join a party pursuant to Rule 25(c), rather than substitute one party for another") (citing *Mars, Inc. v. JCM Am. Corp.*, 2007 WL 776786, at *2 (D.N.J. Mar. 9, 2007)). As indicated above, while PHRT's interest in the assets is relatively clear at this juncture, if the Court accepts WIPL's arguments, then WIPL's interests are not as clear.[7]

---

[7] It is arguable whether WIPL addressed joinder under Rule 25(c). In a footnote, WIPL quoted and underscored a line from *Eastman Chemical Company v. Alphapet, Inc.*, 2011 WL

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 24

The Third Circuit has emphasized that a court's focus when assessing a Rule 25(c) motion must be on whether substitution or joinder would best "facilitate the conduct of the litigation." *Luxliner,* 13 F.3d at 72; *see also Fed. Deposit Ins. Corp. v. Tisch,* 89 F.R.D. 446, 448 (E.D.N.Y.1981) (noting that because the decision to order substitution or joinder does not impact a party's substantive rights, the decision should "be made by considering how the conduct of the lawsuit will be most facilitated"). "[C]ourts and the public have an interest in promoting trial convenience, expediting the settlement of disputes, and preventing multiple lawsuits." *Field v. Volkswagenwerk AG,* 626 F.2d 293, 299 (3d Cir.1980) (disagreed with on other grounds by *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 228 (1989)). "Rule 25(c) applies to a broad spectrum of situations." *Potvin v. Speedway LLC*, 891 F.3d 410, 416 (2d Cir. 2018). In deciding a substitution or joinder motion under Rule 25(c), courts use a similar standard when determining whether to exercise its discretion: "whether substitution will expedite and simplify the action." *In re Rates-Viper Patent Litig.,* 2011 WL 856261, at *1 (S.D.N.Y. March 10, 2011) (internal quotation marks omitted).

---

13054223, at *4 (D. Del. Dec. 9, 2011), that the United States included in its brief: "Courts in the Third Circuit have held that in situations **where the transfer of interests has been established** but the court is unconvinced that substitution would best facilitate the conduct of the litigation, joinder of corporate successors is appropriate." Dkt. No. 77 at 12 n.5. WIPL implies, but does not explicitly argue, that a transfer of interests has not been established. The Court concludes that WIPL has not presented an argument on this issue sufficient to oppose Rule 25(c) joinder. *See John Wyeth & Bro. Ltd.*, 119 F.3d at 1076 n.6 ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"). In any event, the Court rejects WIPL's position that no interests or rights were transferred to it.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 25

Given that an interest was transferred to WIPL, but it is unclear from the record what that interest is, and given that WIPL, in order to purchase the assets, agreed to become a party to the consent decree, and given that this litigation is focused on determining what rights and obligations WIPL and PHRT both have with regard to the enforcement of that consent decree, the Court also finds that WIPL could be joined as a Defendant in this action under Rule 25(c) so as to expedite the resolution of these issues and avoid separate litigation.[8] *See Mars, Inc.*, 2007 WL 776786, at *2 (Court exercised discretion to join a party under Rule 25 "in an effort to assure that the proper parties are named in this case").

Finally, WIPL contends that service upon it was improper, given that the requirements of both Rules 4 and 25 must be followed when serving a motion under Rule 25. Dkt. No. 77 at 13-14. It acknowledges that the Court rejected the same argument when adjudicating WIPL's and PHRT's motion for reconsideration in the Limetree Bay case, but included it in this case to "preserve the issue." *Id.* at 13 n.6. The Court rejects that argument based on the same reasoning set forth in the Limetree Bay case, 21-cv-264, Dkt. No. 39 at 13-15. There, the Court relied on *Benacquisto v. American Express Financial Corp.*, 44 F.4th 741 (8th Cir. 2022), in which the Eighth Circuit ruled that service of a summons and complaint was not required by Rule 25(a) and not serving those documents with the substitution motion did not cause service to be deficient. *Id.* at 745.

---

[8] The Court notes that, in the motion for reconsideration of the substitution order in the *Limetree Bay* case, WIPL argued that joinder, rather than substitution, was "the appropriate procedural mechanism to accomplish the requirement of joinder to the Joint Stipulation." Limetree Bay, 21-cv-264, Dkt. No. 27 at 8.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 26

WIPL also mentions in passing that "there is no genuine issue of material fact supporting substitution. At minimum, under *Luxliner*, an evidentiary hearing should be set to determine the issues." Dkt. No. 77 at 13. It is unclear what "issues" WIPL envisions the evidentiary hearing to address. In *Luxliner*, a judgment had already been entered against the original defendant. Despite competing affidavits concerning whether the party sought to be substituted for the defendant had actually succeeded to that defendant's liability, the district court ordered substitution. The Third Circuit reversed and remanded, holding that where the facts were disputed and the credibility of explanations were at issue, the district court should have conducted an evidentiary hearing before the substituted party could be deprived of a property interest. *Luxliner*, 13 F.3d at 75. Here, however, there are no competing sworn affidavits. Nor has WIPL been deprived of a property interest. Once it is part of the lawsuit, it is free to argue whether it should shoulder any liability based on the terms of the consent decree. This is what it is doing in the Limetree Bay case, 21-cv-264, where it has been substituted, and is relying on the Walker Affidavit to argue that it should not be liable under the Joint Stipulation.[9] Dkt. No. 77-11.

Based on the above discussion, the Court concludes that joinder under Rule 25(c) could provide an additional basis for WIPL's inclusion as a party defendant as it will expedite

---

[9] The Court observes that, in the motion for reconsideration of the substitution order in the *Limetree Bay* case, WIPL argued that joinder, rather than substitution, was "the appropriate procedural mechanism to accomplish the requirement of joinder to the Joint Stipulation." Limetree Bay, 21-cv-264, Dkt. No. 27 at 8.

*United States v. HOVENSA, LLC*
1:11-cv-00006-RAM-EAH
Order
Page 27

the resolution of these issues and avoid separate litigation. *See Mars, Inc.*, 2007 WL 776786,

at *2.

<u>**CONCLUSION**</u>

WHEREFORE, it is hereby **ORDERED**:

1.     The United States' Motion, Pursuant to Fed. R. Civ. P. 25(c), for an Order Substituting West Indies Petroleum Limited, Port Hamilton Refining and Transportation, LLLP, and the Transition Refinery Entity LLC for Defendant Limetree Bay Refining, LLC, Dkt. No. 67, is **GRANTED**.

2.     West Indies Petroleum Limited, Port Hamilton Refining and Transportation, LLLP, and the Transition Refinery Entity LLC, are **SUBSTITUTED** as Defendants in the place of Defendant Limetree Bay Refining, LLC in the above-captioned matter pursuant to Fed. R. Civ. P. 25(c).

ENTER:

Dated: September 21, 2023                    /s/ Emile A. Henderson III
                                             EMILE A. HENDERSON III
                                             U.S. MAGISTRATE JUDGE