IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> and ) <br> ) <br> THE UNITED STATES VIRGIN ) <br> ISLANDS, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> HOVENSA L.L.C., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1-11-cv-06 (RAM/GWC) |

**UNITES STATES OPPOSITION TO WEST INDIES PETROLEUM LIMITED'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

Plaintiff the United States, by and through its undersigned attorney, respectfully files this reply and opposition to the objections filed by West Indies Petroleum Limited (West Indies) (West Indies' Objection) (ECF 85[1]) relating to Magistrate Judge Henderson's 27-page Order (Magistrate Order) (ECF 81) granting the United States' Motion (ECF 67), pursuant to Fed. R. Civ. P. 25(c), for an order substituting West Indies, Port Hamilton, and the Transition Refinery Entity LLC for Defendant Limetree Bay Refining, LLC.

The Magistrate Order was within the Magistrate Judge's authority and within the Court's discretion. For the clear and cogent reasons contained in the 27-page Magistrate Order, the Court should affirm the Magistrate Order.

**I. BACKGROUND**

The Magistrate Order sets forth the procedural history of this case and the Limetree Bay

---

[1] West Indies' Objection was refiled as ECF 87 on October 6, 2023, and again on October 10, 2023 as ECF 88, to correct a docket error.

1

Refining, LLC bankruptcy proceeding (ECF 81, pp. 2 – 6) and a detailed summary of the arguments raised by the parties (ECF 81, p. 6 – 13), with citations to the Court docket. West Indies' Objection does not raise any issues with the procedural history or summary of the arguments.

For purposes of this response, it is important to highlight the following procedural history as it relates to West Indies. The United States' Motion to Substitute (ECF 67) and the Memorandum in Support (ECF 68) were filed with the Court on July 28, 2023. West Indies, Port Hamilton, and the Transition Refinery Entity knew that the motion was coming. (ECF 59). Because West Indies is a Jamaican entity, with no registered agent in the United States, and at the time did not have counsel of record, the United States had to properly serve West Indies with the motion prior to filing the motion with the Court. West Indies was served on July 13, 2023. (ECF 67, at p. 4). Responses to the United States' motion were due on August 11, 2023.

On August 15, 2023, Attorney Ryan Stutzman, now counsel for West Indies, contacted the United States seeking an extension of time to file a response. On August 16, 2023, West Indies filed an unopposed motion for an extension of time to file a response (ECF 74) that the Court granted. (ECF 75). West Indies filed its response on August 25, 2023. (ECF 77). On September 1, 2023, the United States filed a reply to West Indies' response. (ECF 78). On September 21, 2023, the Magistrate Judge entered an Order granting the United States' Motion to Substitute. (ECF 81).

## II. STANDARD OF REVIEW

The United States agrees with West Indies' assessment that the Magistrate Order is a non-dispositive motion. (ECF 85, p. 2). When reviewing a magistrate judge's non-dispositive order, "a district court shall 'modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law'." *Gillette v. Herbert*, 2020 WL 5579824 *2 (D.V.I. Sept. 16, 2020) (citing Fed. R. Civ. P. 72(a); and *Farmers & Merchants Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*,

174 F.R.D. 572, 585 (D.N.J. 1997) ("A magistrate judge's decision in a non-dispositive discovery dispute will be set aside only if it is clearly erroneous or contrary to law.")).

In order to be "clearly erroneous," the reviewing court must have "the definite and firm conviction that a mistake has been committed." *Gillette*, at \*3 (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992), *as amended* (Sept. 17, 1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); and *Beccerril v. Spartan Concrete Products, LLC*, 798 F, App'x 719, 721 n.4 (3d Cir. 2020)). Clear error has occurred when a factual finding "is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Gillette*, at \*3 (citing *Ramsay v. Nat'l Board of Medical Examiners*, 968 F.3d 251, 261 (3d Cir. 2020)). "To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Prosser*, 2014 WL 585346 \*5 (D.V.I. Feb. 14, 2014) (citing *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

A non-dispositive ruling is "contrary to law" if "the Magistrate Judge misinterpreted or misapplied the applicable law." *Gillette*, at \*3 (citing *Sunshine Shopping Center, Inc. v. LG Electronics Panama, S.A.*, 2018 WL 4558982, at \*3 (D.V.I. Sept. 21, 2018) and *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)). When reviewing a magistrate judge's non-dispositive conclusions of law, "the district court conducts a 'plenary review.'" *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3d Cir. 1992).

West Indies "bears the burden of establishing that" the Magistrate Order is "clearly erroneous or contrary to law." *Gillette*, at \*3 (citing *Control Screening, LLC v. Integrated Trade Sys., Inc.*, 2011 WL 3417147, at \*6 (D.N.J. Aug. 3, 2011)). As a non-dispositive matter, the Magistrate Order is "accorded wide discretion." *Gillette*, \*3 (citing *National Labor Relations Board v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992)). When appealing a magistrate judge's non-dispositive order, "a party is generally

3

prohibited from raising new arguments before the district judge." *United States v. Payne*, 2023 WL 4421154, at *4 and footnote 3 (D.V.I. July 10, 2023) (citing *Bowen v. Parking Auth.*, No. 00-CV-05765, 2002 WL 1754493, at *6 (D.N.J. July 30, 2002)).

### III. ARGUMENT

West Indies has failed to meet its burden of establishing that the Magistrate Order is clearly erroneous or contrary to law. *Gillette*, at *3.

**A.  West Indies' Broad, Unsupported Objections**

West Indies' Objection begins by noting it "objects to its substitution … and all of the Magistrate's underlying legal conclusions" and asserting "the Magistrate's conclusions were based upon clearly erroneous fact determinations." (ECF 85, p. 3). First, West Indies' broad objection to "all of the Magistrate's underlying legal conclusions" fails to explain how "applicable law was misinterpreted or misapplied." *Gillette,* at *3. Absent that explanation, the objection lacks sufficient specificity for the United States to respond. Second, West Indies' broad objection that "the Magistrate's conclusions were based upon clearly erroneous fact determinations" fails to explain what factual determinations are "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Gillette*, at *3. Absent that explanation, the objection lacks sufficient specificity for the United States to respond. For these reasons, the Court should overrule West Indies' broad and unsupported objection to substitution.

**B.  West Indies' Specific Objections**

West Indies' Objection includes a few objections with sufficient specificity to enable the United States to respond.

    1.    <u>The term "Purchaser" as used in the Sale Order is not Ambiguous</u>

The Magistrate Order correctly found that there is "absolutely no ambiguity to the term

'Purchaser'" as it is used in the Sale Order. (ECF 81, p. 20). West Indies fails to explain how the "moving parts" listed in its Objection (ECF 85, p. 5) establishes that the Magistrate Order "is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Gillette*, at *3. In finding that the term "Purchaser" is not ambiguous, the court relied on the following facts:

> it was WIPL that successfully reopened the bidding process and provided the lion's share of the $62 million purchase price. Dkt. No. 68 at 3-5 (citing documents). As "Purchaser," the refinery assets were purchased by *both* WIPL and PHRT; all of the parties agreed that the "Purchaser" would be subject to the modified consent decree – even when that same Sale Order indicated that title would be taken in the name of PHRT. Whether the assets were transferred upon or after purchase to PHRT does not in any way impact the provisions of the consent decree or otherwise change the meaning of "Purchaser"; the Sale Order did not condition WIPL becoming or not becoming a party to the consent decree on any subsequent transfer of assets to PHRT.

(emphasis in Magistrate Order) (ECF 81, p. 20). The Magistrate Order's finding that there is no ambiguity to the term "Purchaser" as used in the Sale Order should be affirmed.

2. <u>There was a Transfer of Interest to West Indies</u>

The Magistrate Order correctly found that "the Debtors' rights and interests in the purchased assets were transferred to WIPL as a Purchaser." (ECF 81, p. 22). West Indies' Objection fails to show that the Magistrate Order's finding that there was a transfer of interest to West Indies is "clearly erroneous or contrary to law." *Gillette*, at *3.

The Magistrate Order notes that West Indies seized upon a provision in paragraph W of the Sale Order that "Purchaser took title in PHRT" in order "to argue that there was no transfer of interest to it." (ECF 81, p. 18). In rejecting this argument, the Magistrate Order explains:

> "that is not what the provision said. It stated that the *transfer of the purchased assets will vest the Purchaser with all of the Debtors' rights title and interests in the Purchased Assets*. It did <u>not</u> say that transfer of the purchased assets will vest PHRT with all of the Debtors' rights, title and interests in the purchased assets. The fact that the Purchaser

5

> (WILP and PHRT) decided between themselves to have PHRT take title to the assets does not alter the fact that there was a transfer of interest of the Debtors' rights, title, and interests in the assets to WIPL. The standard under Rule 25 is the transfer of a corporate interest, not who is vested with title.

(emphasis in Magistrate Opinion). (ECF 81, p. 18). The Magistrate Order's finding that there was a transfer of interest should be affirmed.

    3.    <u>Magistrate Order Considered the Affidavit of Danville Walker</u>

West Indies' Objection attempts to create an issue by highlighting that the affidavit of Danville Walker is "unrebutted." (ECF 85, p. 7). This "argument" is undone by the facts. In addition to finding that the Walker Affidavit includes conclusions of law (ECF 81, p. 11, footnote 2), the Magistrate Order discusses the Walker Affidavit on pp. 18 – 19 and pp. 22. Those passages include the following:

> While the Walker Affidavit seeks to show what WIPL's role was *not* with regard to the refinery once Purchaser purchased those assets – as PHRT is the entity that currently owns and operates it - WIPL does not explain what its role *is*. Without WIPL's substantial financial support, including the $3 million deposit to reopen the auction bidding, and its paying 70% of the $62 million purchase price, there would have been no purchase and transfer of assets at all. Moreover, the APA indicates that WIPL formed PHRT. The Walker Affidavit, by not addressing these salient facts, raises numerous questions about WIPL's actual and current interest in those assets. The Court finds it difficult to believe that WIPL investors provided over $40 million to purchase the refinery assets but have no other stake (such as any liens) in those assets and that WIPL has disappeared from the picture after contributing its largess to reopen the bid and pay the lion's share of the purchase price. This question is relevant, particularly given WIPL's and PHRT's demurring in early 2022 when the United States asked them for pertinent corporation documents explaining the relationship between the two entities, any contracts or agreements between them, and the financial viability of PHRT, so as to actually understand their position at that time that WIPL had no interest in the refinery and the United States should look only to PHRT.

(emphasis in Magistrate Order) (ECF 81, pp. 18 - 19).

> While the Walker Affidavit provides some evidence showing that WIPL does not own or operate the refinery, there is no dispute

6

> anywhere in the record that it did not *purchase* the refinery and LBR's assets. This provision does not exempt WIPL from its obligations as Purchaser under the consent decree.

(emphasis in Magistrate Order) (ECF 81, p. 22). In considering the Walker Affidavit, the Magistrate Order properly found that the Walker Affidavit fails to explain West Indies' role (*Id.*, p. 19), and that "there are no competing sworn affidavits" (Id., p, 26). The Magistrate Judge, in properly applying the *Luxliner* holding to these facts, concluded that there was no need for an evidentiary hearing. (ECF 81, p. 26). Despite agreeing with the Magistrate Order finding that there are no competing affidavits, West Indies alleges but fails to explain how the Magistrate Opinion is "not in harmony with *Luxliner.*" (ECF 85, p. 7).

The Magistrate Order found that there was no need for an evidentiary hearing, consistent with *Luxliner*, because of the absence of competing affidavits. Based on the facts before the Court, the Magistrate Order properly found that there was a transfer to West Indies, that the Walker Affidavit only focused on Port Hamilton's role post-purchase, and that West Indies has not been deprived of any property interest. (ECF 81, p. 26). The latter is consistent with *Luxliner*, 13 F.3d at 71-72, and with the Magistrate Order finding that substitution under Rule 25(c) "ordinarily does not alter the substantive rights of the parties but is merely a *procedural* device designed to facility the conduct of a case." (emphasis in Magistrate Order). The United States' Memorandum in Support (ECF 68, p. 12) and Reply to West Indies (ECF 78, p.2) have made clear that it views a Fed. R. Civ. P. 25(c) motion to substitute as a procedural mechanism. The Magistrate Order explains that once West Indies is part of the lawsuit "it is free to argue whether it should shoulder any liability based on the terms of the consent decree." (ECF 81, p. 26).

    4.    <u>Magistrate Order Applied the Applicable Law</u>

After determining that there was a transfer of interest, and assessing the Walker Affidavit, the Magistrate Order applied the applicable law and concluded that there was a transfer of interest

7

within the meaning of Fed. R. Civ. P. to West Indies.

> As indicated above, Rule 25(c) is implicated if "an interest is transferred." The text of the Rule does not identify what interest must be transferred. *See Kowalski v. Mommy Gina Tuna Res.*, No. 05-cv-0679, 2008 WL 976911, at *3 (D. Haw. Apr. 10, 2008) ("Rule 25(c), however does not require that the party to be joined be a continuation of the other party, just that the transfer of 'an interest' have occurred."). The Third Circuit has held that a corporate interest is transferred "when one corporation becomes the successor to another by merger or *other acquisition* of the interest the original corporate party had in the lawsuit." *Luxliner*, 13 F.3d at 71 (emphasis added). It, too, leaves open the definition of interest" to be satisfied under the Rule. In the Court's view, while the Walker Affidavit shows that certain assets were vested in PHRT after purchase by both WIPL and PHRT, it does not paint a complete picture of what interests remain with WIPL, and WIPL has not clarified this point. But what is crystal clear is that the Debtors' rights and interests in the purchased assets were transferred to WIPL as a Purchaser.

(emphasis in Magistrate Order) (ECF 81, p. 22).

The Magistrate Order's determination that there was a transfer of interest to West Indies within the meaning of Fed. R. Civ. P. 25(c) should be affirmed.

5.  Joinder[2]

Alternatively, the Magistrate Order properly found sufficient basis to join West Indies as a party defendant. (ECF 81, pp. 23 – 25). The Magistrate Order summarized its reasoning for that finding as follows:

> Given that an interest was transferred to WIPL, but it is unclear from the record what that interest is, and given that WIPL, in order to purchase the assets, agreed to become a party to the consent decree, and given that this litigation is focused on determining what rights and obligations WIPL and PHRT both have with regard to the enforcement of that consent decree, the Court also finds that WIPL could be joined as a Defendant in this action under Rule 25(c) so as to expedite the resolution of these issues and avoid separate litigation. *Mars, Inc.*, 2007 WL 776786, at *2 (Court exercised discretion to join

---

[2] In footnote 9, the Magistrate Order "observes that, in the motion for consideration of the substitution order in the Limetree Bay case, WIPL argued that joinder, rather than substitution was 'the appropriate procedural mechanism to accomplish the requirement of joinder to the Joint Stipulation.' Limetree Bay, 21-cv-264, Dkt. No. 27 at 8."

> a party under Rule 25 "in an effort to assure that the proper parties
> are named in this case").

West Indies' Objection seeks to vacate the Magistrate Order on the premise that there was no transfer of interest. (ECF 85, p. 6). As set forth above, West Indies' objection to the Magistrate Order's finding of a transfer of interest fails. For the same reasons, West Indies' objection to the Magistrate Order's finding of sufficient basis for joinder also fails. The Magistrate Order's finding on the issue of joinder should be affirmed.

6. <u>West Indies was Properly Served</u>

The Magistrate Order correctly held that West Indies was properly served. This finding is supported by *Benacquisto v. American Express Financial Corp.*, 44 F.4th 741 (8th Cir. 2022). As noted in the Magistrate Order, in *Benacquisto*, the Eighth Circuit "ruled that service of a summons and complaint was not required by Rule 25(a) and not serving those documents with the substitution motion did not cause service to be deficient. *Id.* at 745." (ECF 81, p. 25). West Indies' sole response is that *Benacquisto* "is inconsistent with the plain language of the rules." (ECF 81, p. 8). West Indies' response fails to explain how the Magistrate Order's reliance on *Benecquisto* resulted in a misinterpretation or misapplication of the applicable law. *Gillette*, at \*3. As explained in the United States' Reply to West Indies, the case West Indies cited for the proposition that it should have been served with a copy of the summons and complaint involved service under Rule 5, not under Rule 25. (ECF 78, p. 7).

West Indies' remaining service argument is that it was disadvantaged by the fact that it was served with the motion to substitute "more than two weeks before that motion was filed with the Court." (ECF 85, p. 8). The United States' Reply to West Indies (ECF 78, pp. 7-8) previously responded to this argument noting the following:

> West Indies was provided sufficient notice. First, West Indies knew
> about this action given that they agreed, and the bankruptcy court
> Sale Order requires, that they become subject to the Consent Decree.

9

> (Doc. 977, ¶ 11). Second, West Indies admits that it was served with the Motion to Substitute two weeks before it was filed. (Doc. 77, p. 13). A step the United States was required to take in order to comply with the LRCi 5.4(i)(4) requirement to "include a certificate of service with all documents that are served that identifies the date and manner of service upon the non-Filing User." LRCi 5.4(i)(4).
>
> Additionally, one must assume that given the relationship between West Indies and Port Hamilton, and the interaction between counsel for Port Hamilton and West Indies representatives (see, Doc. 59, pp. 2-3), West Indies was aware of Port Hamilton's Motion For Informal Status Conference (Doc. 54) and the United States' Response (Doc. 59). The United States' Response noted its intent to file the pending motion, and the need to serve West Indies prior to filing the Motion with the Court. (Doc. 59, p. 3). Given the extent of this notice, there was no due process violation. *See United States v. Harold*, 423 F. Supp. 3d 410, 419 (E.D. Mich. 2019), *aff'd* 847 F. App'x 296 (6th Cir. 2021) (additional corrective measures unnecessary where the substituted party had some notice of the ongoing proceeding).

(ECF 78, pp. 7-8). West Indies objection appears to be that the Magistrate Order did not address this argument. However, by rejecting West Indies' improper service argument the Magistrate Order rejected all of West Indies' service arguments. The Magistrate Order's rejection of West Indies' service arguments should be affirmed.

7. West Indies' Closing Objection

West Indies concludes its objection by asserting that it is adopting Port Hamilton's anticipated objections on the issue of party defendant. (ECF 85, p. 8). To the extent the court decides that West Indies can do so, the United States will rely on its separately filed opposition to Port Hamilton's objection.

## IV. CONCLUSION

For the foregoing reasons, the Court should overrule West Indies' Objection and affirm the Magistrate Order.

        Respectfully submitted,

        FOR THE UNITED STATES OF AMERICA
        TODD KIM
        Assistant Attorney General
        Environment and Natural Resources Division

        */s/ Myles E. Flint, II*
        Myles E. Flint, II
        Senior Counsel
        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice - P.O. Box 7611
        Washington, DC 20044-7611
        Tel: 202-307-1859
        myles.flint@usdoj.gov

OF COUNSEL:
Teresa Dykes
Senior Attorney
U.S. Environmental Protection
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Ave. NW (2242A)
Washington, DC 20460

Sara Froikin
Sara Amri
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, NY 10007

CERTIFICATE OF SERVICE

      The undersigned certifies that on October 19, 2023, he filed the *UNITED STATES' OPPOSITION TO WEST INDIES PETROLEUM LIMITED'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER* electronically with the Clerk of Court using the CM/ECF system, which will send notifications of this filing to all who have made appearances.

      */s/ Myles E. Flint, II*