IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and THE UNITED STATES VIRGIN ISLANDS, <br><br> Plaintiffs, <br><br> v. <br><br> HOVENSA, LLC; WEST INDIES PETROLEUM LIMITED; PORT HAMILTON REFINING AND TRANSPORTATION, LLLP; TRANSITION REFINERY ENTITY LLC; and LIMETREE BAY TERMINALS, LLC, <br><br> Defendants. | CASE NO. 1:11-cv-00006 (EAH) |

### REPLY TO LIMETREE BAY TERMINALS, LLC'S COMBINED RESPONSE IN OPPOSITION TO PHRT'S AND WIPL'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (DOC. 90)

**NOW COMES,** Defendant West Indies Petroleum Limited ("WIPL") and files this reply to Defendant Limetree Bay Terminals, LLC's ("LBT's")[1] "Combined Response" to WIPL's and Defendant Port Hamilton Refining and Transportation, LLLP's ("PHRT's") objections to the Magistrate Judge's Order concerning substitution of parties.[2] LBT's response unwittingly underscores why WIPL, a non-owner/operator, should be left out of this action.

LBT is a party to the Consent Decree. Doc. 42, p. 6, ¶ 1. LBT purchased the refinery process and terminal assets in the HOVENSA, LLC bankruptcy in 2016. *Id* pp. 1-2. An LBT affiliate subsequently formed Limetree Bay Refining, LLC

---

[1] LBT does business as Ocean Point Terminals, "OPT."
[2] ECF 81 is the Magistrate's Order, ECF 88 is WIPL's Objections (refiled per clerk's instructions), ECF 90 is LBT's response.

("LBR") in 2018. *Id* p. 4. LBT then sold the refinery process units and related property to LBR. *Id* p. 5. LBT kept the adjacent terminal facility. *Id* p. 9, ¶ NN. As such, LBT is a former owner of the refining side of the property, and a current neighbor to that property, with overlapping and/or divided responsibilities under the Consent Decree. *Id*. LBT is in a unique position to describe the facts as they actually are, and it has a powerful incentive to ensure the true transferee of the refinery interest (see Fed. R. Civ. P. 25(c)) is made part of this case. LBT does not want to be left holding the bag for the refinery owner/operator.

LBT's opposition brief is almost *entirely devoted* to why the Court should uphold the Magistrate's order substituting *PHRT*, the owner/operator of the refining side of the facility. As LBT recognizes, "the Consent Decree includes extensive substantive and reporting obligations ... obligations that can only be fulfilled by a party with control over the [refining] equipment." *Id* p. 2. Moreover, the decree requires parties to "certify under penalty of law" that the reports are "true, accurate and complete" to the best of each party's knowledge. *Id* (citing ECF No. 3 at ¶ 144; ECF No. 19-1 at 22; ECF 76-1 at 12). LBT states that it cannot ensure compliance regarding assets PHRT owns and controls. It points no finger at WIPL in this respect. Rather, it shows in depth that PHRT owns and controls the refinery assets.

LBT cites its Notice of Force Majeure Event (Doc. 76-1 at pp. 9-16)("NFME") to ("[reference] the particular Consent Decree provisions and the entity owning and operating the relevant equipment."). LBT Opp. 2 (Doc. 90). In

it, LBT states that "substantially all of LBR's assets, including **most of the HOVENSA assets subject to the Consent Decree** and LBR's interests in the shared utilities, **were sold ... to an unrelated third party, Port Hamilton Refining and Transportation**, LLLP." NFME p. 3 (emphasis added). As an addendum to the NFME, LBT submitted a chart of "Compliance Obligations In Consent Decree" and "Entity Responsible for Compliance as Owner or Operator." (Doc. 76-1, p. 15.) The chart names just two entities: LBT and PHRT. The chart breaks down ownership and control of assets that carry obligations under the Consent Decree. *Id.* <u>WIPL is conspicuously absent</u> from the NFME and the chart. *Id*.

    WIPL is also conspicuously absent from LBT's Opposition Brief, and is mentioned only as an afterthought. LBT Opp. p. 4 (Doc. 90). LBT's lack of attention to WIPL is not surprising. LBT does not want to be saddled with the refinery owner/operator's obligations under the Consent Decree, so it directs its efforts against the asset transferee, PHRT. LBT knows that the refinery assets were not ultimately transferred to WIPL and that arguing otherwise is a waste of LBT's time and money.

    Fed. R. Civ. P. Rule 25(c) provides, "[i]f an **interest is transferred**, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." (Emphasis added.) "A 'transfer of interest' in a corporate context occurs when one corporation becomes the successor to another by merger **or other acquisition of the**

**interest the original corporate party had in the lawsuit**." *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71-72 (emphasis added).

"At its core, the Consent Decree is directed at assets: it places limitations on the way certain equipment can be operated, and places obligations on the parties that own or operate those assets. These obligations are intended to run with those assets ... ." LBT Opp. at p. 3 (Doc. 90). WIPL agrees with this statement, which fits well with Rule 25(c) and *Luxliner*. Obligations can't run with assets that WIPL did not acquire.

The Magistrate's order substituting WIPL should be vacated. As LBT's straightforward Response in Opposition clearly shows, WIPL ultimately did not acquire the "interest the original corporate party [LBR] had in the lawsuit." *Luxliner* at 71-72.

Respectfully Submitted,

Dated: October 25, 2023        By:    /s/ Ryan C. Stutzman
                                      Ryan C. Stutzman, Esq. (VI Bar No. R2053)
                                      **CSA ASSOCIATES, P.C.**
                                      1138 King Street, Suite 100
                                      Christiansted, VI  00820
                                      Tel: 773-3681
                                      Attorney for West Indies Petroleum Limited