**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:11-cv-00006 (RAM/EAH) |
| | ) | |
| HOVENSA, LLC; et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY TO UNITED STATES' OPPOSITION TO WIPL'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (DOC. 91)

**NOW COMES,** Defendant West Indies Petroleum Limited ("WIPL") and files this reply to Plaintiff United States' ("United States") opposition to WIPL's objections to the Magistrate Judge's Order concerning substitution of parties.[1]

## INTRODUCTION

In its Response in Opposition, the United States continues to tilt at windmills.[2] Substitution of WIPL would only serve the United States' pointless goal to drag an imagined adversary into the fray. WIPL has no power to act in response to the Consent Decree. There is no genuine issue of fact before the Court in that respect.

---

[1] ECF 81 is the Magistrate's Order, ECF 88 is WIPL's Objections and ECF 91 is the United States' response.

[2] At the outset, the Court should disregard the United States' perfunctory assertion, at Doc. 91 subpart A, that WIPL's objections "[lack] sufficient specificity for the United States to respond." Notwithstanding the United States' assertion, which is vague in itself, the United States' response follows with seven subparagraphs of specific responses to specific points made in WIPL's objections.

Instead, the United States fixates on bankruptcy sale order language that was ambiguous when it was written, and that has become futile as it relates to WIPL.[3]

1.  THE TERM "PURCHASER" AS USED IN THE SALE ORDER IS AMBIGUOUS

The United States suggests that the Magistrate's holding – that the term "Purchaser," as used in the Sale Order, is unambiguous -- was a fact finding. The United States further suggests that the holding is subject to clear-error review. See USA Opp. Doc. 91, p. 5. The United States is wrong on both counts. A magistrate's finding that an order is unambiguous is a legal determination subject to plenary review. See *Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London*, 2012 WL 1067918 at *3 (D.V.I. Mar. 26, 2012) and *In re House of Vizia Gold Creations, Inc*., 278 B.R. 86, 90 (Bankr. D.V.I. 2002).

When interpreting another court's order, courts "apply traditional principles of contract law and look to the intent of the issuing court." *In re 1701 Com., LLC*, 2014 WL 4657314, at *9 (Bankr. N.D. Tex. Sept. 17, 2014)(quoting *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 263 (2nd Cir. 2011)). A court must interpret another court's order as a whole and give reasonable meaning and effect to all its parts and provisions. *Id*. Construing a contract first requires a determination concerning whether the contract is ambiguous. *In re House of Vizia Gold Creations, Inc.*, 278 B.R. at 90. "A contract provision is ambiguous when it is susceptible of

---

[3] The bankruptcy sale order is referenced hereinafter as the "Sale Order," and it can be found at Doc. 68-1, Ex. 1.

multiple alternative reasonable interpretations." *Id*. "If a contract provision is unambiguous—i.e., can reasonably be read only one way—the court will interpret it as a matter of law." *Id*. If it is ambiguous, interpretation is left to the finder of fact, who may consider extrinsic evidence. *Id.*

The Sale Order refers to WIPL and Port Hamilton Refining and Transportation, LLLP ("PHRT") in its introductory paragraph as "together, the 'Purchaser.'" Doc. 68-1, Ex. 1. The Sale Order states, "Purchaser must become **party** to the Consent Decree ... ." *Id* ¶ 11 (emphasis added to highlight the singular usage). "Purchaser **shall not become liable for any obligations … that do not relate to property or units purchased or to be operated by Purchaser** pursuant to this Sale Order ... ." *Id* (emphasis added).

Despite the pre-closing designation in the Sale Order as one of two "Purchasers," WIPL did not actually purchase any refinery property, units, or other assets, and has never operated the refinery in any respect. That is because the Sale Order itself required conveyance of refinery assets to PHRT, not WIPL. "The transfer of the Purchased Assets to the Purchaser with **Purchaser taking title in PHRT** pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing ... ." *Id* ¶ 12 (emphasis added).

The Asset Purchase Agreement ("APA"), approved and referenced by the Bankruptcy Court as described immediately above, required a deed at closing. "At the Closing, Sellers shall deliver or cause to be delivered **to Purchaser** ... a properly

executed deed in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property ... ."   APA ¶ 3.4(a)(iv) (Doc. 77-2 p. 4).   <u>Despite the use of the word "Purchaser" in the deed provision of the APA, PHRT, and PHRT alone, was the deed grantee</u> and took title to the refinery property upon closing.  See Deed and Bill of Sale, Doc. 77-9.  Thus, the Sale Order and its incorporated documents do not invariably mean WIPL <u>and</u> PHRT when the term "Purchaser" is used.

The only way real property can be conveyed in the Virgin Islands is by deed. 28 V.I.C. § 241(a).  The Magistrate's speculative conclusion that WIPL somehow retained an interest "such as any liens" in the refinery property is clearly erroneous. See USA Opp. P. 6, quoting the Magistrate's order at pp. 18-19, 22.  Liens must be recorded in the public records, or they are ineffective.  28 V.I.C. § 124.  The United States has not presented any liens, UCC financing statements, or any other, similar evidence that would support the Magistrate's conclusion.

PHRT is also the sole party to operational contracts and permits, by assignment in the APA. Doc. 77-7 p. 8.

The United States' view of the Sale Order is formalistic and nonsensical.  The United States' end goal is to enforce the Consent Decree, but WIPL has no ability to comply.  The Bankruptcy Judge could not have intended this absurd result.  Based on the provisions cited above, the Sale Order is, at best, ambiguous as to whether becoming "party" to the Consent Decree is a joint obligation of WIPL and PHRT.

2.     THERE WAS NO TRANSFER TO WIPL OF ANY INTEREST THAT HAS
ANY MATERIAL CONNECTION TO THE CONSENT DECREE

"A 'transfer of interest' in a corporate context occurs when one corporation becomes the successor to another by merger or other **acquisition of the interest the original corporate party had in the lawsuit**." *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71-72 (emphasis added).  Whatever interest WIPL acquired in the bankruptcy sale, it was not the same interest LBR had in the instant lawsuit.  As Limetree Bay Terminals, LLC ("LBT") correctly observed, "[a]t its core, the Consent Decree is directed at assets:  it places limitations on the way certain equipment can be operated, and places obligations on the parties that own or operate those assets.  These obligations are intended to run with those assets ... ."  LBT Opp. at p. 3 (Doc. 90).

Obligations cannot run with assets that WIPL did not acquire.  WIPL has NEVER owned or operated the former Limetree Bay Refining ("LBR") facility.  Among other documents, WIPL filed the aforementioned property deed, with LBR as grantor and PHRT as grantee. Doc. 77-9.  WIPL further submitted the affidavit of WIPL Senior Vice President Danville Walker, who affirmed that "[m]embers of WIPL were early investors in efforts to acquire assets of Limetree Bay Refining, LLC in bankruptcy.  Notwithstanding, WIPL never acquired any refinery assets and has never owned, operated, or otherwise controlled the refinery." Doc. 77-11.  Mr. Walker further affirmed that "WIPL ... does not control PHRT." *Id.*

No party or entity, including PHRT and the United States -- has provided evidence to challenge the deed or Mr. Walker's affirmation.  For its part, PHRT has steadfastly represented to Virgin Islands courts that PHRT acts alone and independently, and that it alone owns and controls the refinery.  See Doc. 77 pp. 4-5.  Meanwhile, the United States, looking backward to the Sale Order, demands more proof of a negative, even in light of the deed and PHRT's unequivocal statements of autonomy.  WIPL maintains that the Magistrate's order was clearly erroneous because it disregards facts after the date of the ambiguous Sale Order.  The unrebutted evidence currently before the Court shows that despite the Sale Order, WIPL does not have "the interest the original corporate party had in the lawsuit." *Luxliner* at 71-72.

## 3.   AT A MINIMUM, WIPL HAS A RIGHT TO BE HEARD IN A TESTIMONIAL HEARING

WIPL submits that the Magistrate's order was clearly erroneous for its disregard of facts after the date of the ambiguous Sale Order, and as a consequence, the legal determination (that there was a transfer of interest under Rule 25) was contrary to law.  The order should be vacated as to WIPL.  If the Court finds a genuine issue of fact regarding whether there was a material transfer of interest, a hearing is required.

The Magistrate granted substitution because he found WIPL's evidence, including Mr. Walker's Affidavit, "difficult to believe."  Doc. 81, 18-19.  He did so

even though the United States did not submit a "competing affidavit."  See *Luxliner* at p. 72.

The Magistrate's credibility determination was contrary to *Luxliner*, which "requires that a district judge hear the evidence to assess for him or herself the credibility, or lack thereof, of one side as opposed to the other."  *Luxliner*, 13 F.3d at 72.  WIPL is pleased with the United States' admission that WIPL would be able to contest liability on the merits upon substitution, and WIPL intends to do so if substitution is affirmed.  See USA Opp. p. 7.  However, there is a consent judgment in the instant case, and there was a judgment in *Luxliner*, so the United States' attempt to distinguish *Luxliner* gives WIPL limited comfort.

The Court should exercise its discretion and settle this dispute on review of the Magistrate's order, rather than follow the United States on a futile search for a legally material connection between WIPL and the refinery.  *See* Fed. R. Civ. P. 1 ("These rules ... should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

4.    SERVICE OF PROCESS WAS IMPROPER

The United States asserts, "[a]s explained in the United States' Reply to West Indies, the case West Indies cited for the proposition that it should have been served with a copy of the **summons <u>and</u> complaint** involved service under **Rule 5**, not under Rule 25."  Doc. 91, p. 9 (emphasis added).  This is not correct.  The case,

*Omni Cap. Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987), involved service under Rule 4.  Rule 4 requires service of the summons and complaint.  Fed. R. Civ. P. 4(c)(1).  Rule 25 states, service must be made "on nonparties as provided in Rule 4."  Fed. R. Civ. P. 25(a)(3).  As such, it is true that the plain language of the rules required service of the summons and complaint.

Further, the United States admits that the Magistrate did not address WIPL's other service of process argument.  The "ritual" and "mechanism" of Rule 4 (that is, to give a non-party notice that it is being haled into court) was turned upside down in this case by purported service of the motion to substitute more than two weeks before that motion was filed with the Court.  See WIPL's argument, ECF No. 77, pp. 13-14, and 4 Fed. Prac. & Proc. Civ. § 1063 (Wright & Miller).

The prematurely served motion indicated the United States' future intentions, but did not signal initiation of an actual proceeding against WIPL.  The Magistrate's failure to even mention the argument leaves the Court and parties with no guideposts for review.  In any event, as a matter of law, the issue is subject to de novo review.

The United States argues that WIPL knew about the Consent Decree.  Doc. 91 pp. 9-10.  The United States also asserts, "one must assume that given the relationship between West Indies and Port Hamilton" that WIPL would be aware of the case's developments.  *Id.*  The rules governing service of process do not rest on assumptions and general knowledge.  A nonparty may be aware of a matter, but that does not relieve an opposing party of the ritual and mechanism of properly serving

the nonparty, at the proper time, to give the non-party notice that he is actually being

haled into court.

Respectfully Submitted,

Dated: October 26, 2023          By:     */s/ Ryan C. Stutzman*
                                         Ryan C. Stutzman, Esq. (VI Bar No. R2053)
                                         **CSA ASSOCIATES, P.C.**
                                         1138 King Street, Suite 100
                                         Christiansted, VI  00820
                                         Tel: 773-3681
                                         Attorney for West Indies Petroleum Limited