IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>HOVENSA L.L.C.<br><br>DEFENDANT. | CASE NO. 1:11-CV-00006 |

**PORT HAMILTON'S REPLY TO THE UNITED STATES' OPPOSITION TO PORT HAMILTON'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER ON THE UNITED STATES' MOTION TO SUBSTITUTE**

The United States' opposition to Port Hamilton's objections to the Magistrate Judge's Order is notable for two things: (1) It's failure to address the fact that a magistrate judge's authority is limited to pretrial matters and (2) its insistence upon focusing upon form instead of real world substance. The Magistrate Judge's Order has real world consequences and is not merely procedural. One expects the Department of Justice ("DOJ") to seek to do justice rather than engage in gamesmanship in an effort to gain an improper litigation advantage. Unfortunately, the DOJ has failed to live up to such expectations in this case as it is quite plainly putting expediency to achieve its goals over such rudimentary objectives as justice and fairness.

1

## I. THE UNITED STATES DOES NOT ADDRESS THE AUTHORITY OF A MAGISTRATE JUDGE TO ENGAGE IN POSTJUDGMENT PROCEEDINGS.

The United States argues that a motion that has the effect of substituting a party as a defendant **bound by a judgment** is nondispositive by citing generic Rule 25 cases that so state. This is nothing but an elevation of form over substance. As Port Hamilton explained in its objections, "[A] district judge must review *de novo* a magistrate-judge order that has an effect that is identical to that of a dispositive order" regardless as to how it is named. ***Vivint, Inc. v. NorthStar Alarm Servs., LLC***, No. 2:16-CV-00106, 2018 WL 1449516, at *2 (D. Utah Mar. 23, 2018). ***See also Ocelot Oil Corp. v. Sparrow Indus.***, 847 F.2d 1458, 1462 (10th Cir. 1988) (stating that "motions not designated on their face as [dispositive] are nevertheless to be treated as such a motion when they have an identical effect").

Here, the motion to substitute is dispositive, because with the stroke of a pen, the Magistrate Judge made Port Hamilton liable under the Consent Decree entered in this matter. (The Magistrate Judge said that his Order was merely procedural, but when a case has already gone to judgment and a new entity is substituted in as the defendant in the judgment, even Humpty Dumpty's free-verse definition of words[1]

---

[1] "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean — neither more nor less."
"The question is," said Alice, "whether you can make words mean so many different things."
"The question is," said Humpty Dumpty, "which is to be master — that's all."
Lewis Carroll, Through the Looking Glass

could not make an action with such a result "non-dispositive."

Compounding the United States' failure to address the substance over form, it displays a lack of candor to the Court when it suggests that ***Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.***, 13 F.3d 69 (3d Cir. 1993) stands for the straight-up proposition that a Rule 25(c) motion is nondispositive. What the ***Luxliner*** case actually said was that joinder under Rule 25(c) "does not ***ordinarily*** alter the substantive rights of parties but is merely a procedural device." ***Luxliner***, 13 F.3d at 71 (and the decision makes no reference to the dispositive versus nondispositive issue). Further, it was reviewing a district judge's decision to order substitution, not the authority of a magistrate judge to order substitution and in the process amend a final judgment. Finally, the Third Circuit was so concerned about the due process ramifications of substituting a party into a case where judgment had already been entered that it remanded the case for an evidentiary hearing on the issues: "In this case, Sturgis' due process interests, when weighed in the context of plaintiffs' Rule 25(c) motion, are particularly compelling, for Sturgis was joined not merely in ongoing litigation ***but on a judgment already entered*** against RDI. *Id.* at 72 (emphasis added).[2] That's not the kind of treatment that Due

---

[2] The other case cited by the United States for the authority is ***Texas v. Am. Tobacco Co.***, No. 5:96-CV-00091-JRG, 2019 WL 13219407 (E.D. Tex. May 22, 2019). While ***Texas*** at least involved a magistrate judge adding a party to a judgment, the proposed subsitute party "concede[d] that joinder under Rule 25 is appropriate. ***Id.*** at *2. A judgment can be modified by the consent of the parties, and thus there was no procedural objection raised to the magistrate judge's power to amend the judgment. (It is for this reason that TRE (also represented by undersigned counsel and wholly-owned by Port Hamilton conceded to be added to the consent decree becuase, unlike Port Hamilton, it had expressly consented to be added to the consent decree as a "party defendant.") It also does not appear that any party challenged the magistrate judge's

Process requires for nondispositive motions.

But all of the above is a distraction from the first argument Port Hamilton made in its objections: that the plain language of 28 U.S.C. § 636(b)(1)(A) limits a magistrate judge's authority in a civil case to pretrial matters.[3] Since the United States did not contest that argument in its opposition, Port Hamilton will not offer anything further in reply on that issue other than to point out that the United States has essentially conceded that argument.

## B. PORT HAMILTON IS NOT A SUCCESSOR

The United States again demonstrates a lack of candor as it argues that the claim that Port Hamilton was a "successor" to Limetree Bay Refining, Inc. was raised in its initial memorandum in support of the motion to substitute. The actual argument the United States made was:

> When dealing with corporate parties, many circuit courts, including the Third Circuit, have explained that a "***transfer of interest***" occurs when "one corporation becomes the successor to another by merger ***or other acquisition of the interest*** the original corporate party had in the lawsuit."

Doc. No. at 12 (USA memo. in supp.) (quoting from ***Luxliner***) (emphasis added).

After noting that a "transfer of interest" can arise through ***either*** successorship ***or*** "other acquisition of interest," the United States proceed to argue the "other acquisition" angle and never argued successorship. Determination of successorship

---

authority to deal with posttrial proceedings in ***Texas***.

[3] Since the United States does not address that argument at all, perhaps a distraction was needed.

4

requires an entirely different analysis "acquisition of interest" and the United States did not make an argument for successor liability in its opening memorandum.[4]

---

[4] Successor liability requires an analysis of factors such as whether: the successor impliedly assumed the obligations of the predecessor; (2) the transaction is a ***de facto*** merger; (3) the successor corporation is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor. ***Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc***., 523 So. 2d 740, 742 (Fla. Dist. Ct. App. 1988). The United States' memorandum in support of its motion did not discuss any such factors. Indeed, other than the reference to "successors" in the quotation from ***Luxliner***, no form of the word "successor" appears in the section of the United States' memorandum that argued for substitution. (The United States made an alternative argument for joinder rather than substitution where it mentions "successor" twice but still never made any argument that Port Hamilton was a successor to LBR.)

The United States knows that the bankruptcy court's order specifically provided that Port Hamilton is ***not*** a successor to LBR. ***See*** "2021 Sale Order," Doc. No. 977 in Case No. 21-32351 in the SD/TX Bankruptcy Court at ¶W:

> W. As of the Closing, and pursuant and subject to the terms of the APA and Transaction Documents, the transfer of the Purchased Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Purchased Assets and will vest the Purchaser –with Purchaser taking title in PHRT – with all of the Debtors' rights, title, and interests in the Purchased Assets free and clear of all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever (excluding the Operating Agreement Assumed Liabilities), including, but not limited to,
>
> * * *
>
> (ii) all claims as defined in section 101(5) of the Bankruptcy Code, ***including all rights or causes of action*** (whether in law or in equity), . . . or ***liabilities relating to any act or omission of the Debtors or any other person, consent rights***, . . ., claims for . . ., ***alter-ego, environmental***, or tax, ***decrees of any court*** or foreign or domestic governmental entity, indentures, loan agreements, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or

5

The United States also raises a series of arguments relating to parts of the Sale Order that refer to it being bound to comply with environmental laws. That argument is a red herring. Of course Port Hamilton is subject to the environmental laws. But what Port Hamilton does *not* have responsibility for is LBR's violations of environmental laws.

C. **THE OBLIGATION IN THE CONSENT DECREE TO REQUIRE HOVENSA TO CONDITION A TRANSFER OF THE REFINERY UPON AN AGREEMENT FROM THE TRANSFEREE TO SUBSTITUTE FOR HOVENSA IN THE CONSENT DECREE DID NOT APPLY TO LBR AT THE TIME THE SALE TO PORT HAMILTON WAS APPROVED.**

As the United States notes, the original consent decree required *HOVENSA* to condition the transfer of an interest in the refinery upon the transferee becoming subject to the Consent Decree. HOVENSA complied with its obligation and the asset

---

> contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise;
>
> \* \* \*
>
> (iv) *any rights based on any successor or transferee liability*;

2021 Sale Order (emphasis added). Of course, Port Hamilton agreed to become a "party" to the Consent Decree as part of the bankruptcy proceeding and it has never shirked from that obligation. The critical point is that Port Hamilton's agreement was necessary because it is *not* a successor and received LBR's assets free and clear of all liabilities. The *only* way to join Port Hamilton is based upon the consent that it gave–which was limited to joining as a party, not a party defendant.

By not making the argument in its opening brief, the United States deprived Port Hamilton of the argument to point out the express language used by the bankruptcy court. This is yet another example of the DOJ's pursuit of a result rather than justice.

purchase agreement emerging from *HOVENSA's* bankruptcy required Limetree Bay *Terminals* ("LBT") to become a party to the Consent Decree and assume HOVENSA's liabilities under the Consent Decree. (A detailed analysis of this history is found in Doc. No. 55 filed in this matter.) But that never happened in the first five years of LBT's ownership. Indeed, it did not happen until after LBT had transferred the refinery to LBR and even then it did not happen until this Court entered the First Modification to the Consent Decree on December 30, 2021—nine days *after* the bankruptcy court in the LBR bankruptcy approved the sale of LBR's assets to Port Hamilton. Thus, even if the United States is correct that Limetree Bay Terminals would have been subject to the same requirement as HOVENSA with respect to purchases by transferees, the mechanics of amending the Consent Decree had not been finalized as of the time the bankruptcy court approved the sale of LBR's assets to Port Hamilton. Consequently, there was no basis at the time of the approval of the asset sale to Port Hamilton to condition the sale upon Port Hamilton being substituted as a party defendant for HOVENSA (or LBR).[5]

The United States also argues that the bankruptcy court put in the requirement

---

[5] There is an additional problem with the delay in making LBT subject to the Consent Decree restrictions on transfers: At some point in 2018 or 2019, LBT transferred some refinery assets, and attempted (unsuccessfully) to transfer other refinery assets, to LBR. It was not subject to the Consent Decree at that time and there was no requirement, and LBT imposed no requirement in its sale documents, upon LBR to substitute in as the party defendant on the Consent Decree. Thus, when Port Hamilton purchased the assets out of the LBR bankruptcy, there was no legally binding requirement on LBR to require Port Hamilton to substitute for LBR on the Consent Decree.

that Port Hamilton become a "party" to the Consent Decree in recognition of the transferee requirement. To the contrary, the bankruptcy court recognized that in order to bring Port Hamilton under the umbrella of the Consent Decree (as a "party," not a party defendant), it was necessary to include language in the Sale Order to accomplish that—because the Consent Decree did ***not*** accomplish that. (If the transferee requirement in the Consent Decree had any legal force, the United States would be bringing an enforcement action ***to enforce the Consent Decree*** rather than trying to shoehorn Port Hamilton into the Consent Decree using a motion to substitute.

### D. THIS COURT'S RETAINED JURISDICTION IS LIMITED.

Port Hamilton noted in its Objections that the terms of the Court's retained jurisdiction were limited and criticized the United States for trying to argue that enforcement of a bankruptcy court's order to join a consent decree (which is not within this Court's retained jurisdiction) is somehow a part of enforcing the Consent Decree itself (which is within the retained jurisdiction). Rather than refuting Port Hamilton's criticism, the United States simply doubles down on its flawed reasoning.

Federal courts are courts of limited jurisdiction. The United States had a significant hand in negotiating the terms of the Consent Decree. It could have proposed that the Court retain broader jurisdiction than what is set forth in the Consent Decree but it did not. Now that the Court's jurisdiction is limited by the retained jurisdiction clause, there is no way to unring that bell.

### CONCLUSION

The Magistrate Judge lacked the power to order substitution of Port Hamilton in

this matter. There was no basis to order substitition based upon the arguments put forward by the United States and the Magistrate Judge's adoption of the argument put forth by the United States in its reply was not properly raised. For all of the reasons raised by Port Hamilton's objections and its opposition to the underlying motion, the Court should vacate the Order and enter an Order that denies the United States Motion to Substitute.

                                        Respectfully submitted,

                                        **ANDREW C. SIMPSON, P.C.**,
Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: November 2, 2023

                                        /s/ Andrew C. Simpson
By: Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com