IN DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

UNITED STATES OF AMERICA, ET AL.

PLAINTIFFS,

V.

HOVENSA L.L.C.

DEFENDANT.

CASE NO. 1:11-CV-00006

## PORT HAMILTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO CLARIFY THE CONSENT DECREE

Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") respectfully submits this Memorandum of Law in support of its Motion to Clarify the Consent Decree.

### I.      PRELIMINARY STATEMENT

Port Hamilton seeks judicial clarification of a consent decree modification the U.S. Environmental Protection Agency ("EPA") negotiated with the previous owners and operators of the St. Croix refinery, Limetree Bay Terminals, LLC ("Limetree Bay Terminals") and Limetree Bay Refining, LLC ("Limetree Bay Refining") (collectively "Limetree Bay"). Specifically, Port Hamilton seeks to confirm that, under the terms of the modified consent decree, it was and is under no obligation to install additional emission control technology known as a flare gas recovery system.

EPA has taken the position that Limetree Bay's emissions from the refinery between February 4, 2021, and May 12, 2021, triggered an obligation under the modified consent decree for Limetree Bay to install a flare gas recovery system within two years. EPA further asserts that, because Limetree Bay failed to install the flare gas recovery system within that two-year period,

and Port Hamilton is obligated under the terms of a bankruptcy order to join the consent decree, Port Hamilton cannot resume operations at the refinery unless it first installs such a system.

EPA's position is unmoored from and at odds with the provisions of the decree, however. The consent decree modification that added the obligation to install a flare gas recovery system *was not in effect* at the time the Limetree Bay's alleged emission events took place (from February to May of 2021). It became effective months later, in December of 2021. Given that the emissions events occurred before the effective date of the consent decree modification, the obligation to install a flare gas recovery system could not have been triggered by Limetree Bay and could not create an obligation on the part of the subsequent purchaser, Port Hamilton. Even if the consent decree modification had been in effect when Limetree Bay's emissions exceeded the limitations set forth in the modification, which it was not, it would be inappropriate and inequitable not to afford Port Hamilton the same two-year period in which to install a flare gas recovery system.

EPA's position also contradicts the legal framework for consent decrees generally—that decrees are proposed, receive public comment, then reviewed and entered by a court before taking effect. It also contradicts the plain language of the specific consent decree at issue, which establishes the default that its obligations will become effective on the date that the decree is entered by the Court. Resolution of this issue is particularly significant to Port Hamilton because the purchase, installation, and operation of a flare gas recovery system would require a substantial expenditure of resources that could prevent Port Hamilton from restarting the refinery or, upon restart without such a system, would expose Port Hamilton to enforcement proceedings, including significant penalty claims.

## II.    FACTUAL BACKGROUND

1.      On June 7, 2011, HOVENSA L.L.C. ("HOVENSA"), EPA and the government of the Virgin Islands ("Virgin Islands") entered into a consent decree to resolve HOVENSA's alleged violations of the Clean Air Act (the "Consent Decree"). At that time, HOVENSA operated the oil refinery on the south shore of St. Croix (the "Refinery"). The Consent Decree provided that HOVENSA's obligations were "[e]ffective from the *Date of Entry* of this Consent Decree" until they were terminated pursuant to Part XIX of the Decree.[1]

2.      On September 15, 2015, HOVENSA filed for bankruptcy in the United States District Court for the District of the Virgin Islands, Bankruptcy Division (the "Bankruptcy Court").[2] On December 1, 2015, the Bankruptcy Court approved the sale of the Refinery assets to Limetree Bay Terminals.[3] The Bankruptcy Court did not modify or supersede HOVENSA's obligations under the Consent Decree.[4] It did not address Limetree Bay Terminals' obligations related to the Consent Decree.

3.      Following the approval of the bankruptcy sale, HOVENSA and Limetree Bay Terminals entered into an Asset Purchase Agreement in 2016. Under the terms of the 2016 Agreement, Limetree Bay Terminals "assume[d] the terms, conditions, obligations and liabilities" of HOVENSA under the Consent Decree and released HOVENSA from such terms, conditions, obligations, and liabilities.[5]

---

[1] Doc. No. 6, ¶6 (emphasis added).

[2] Doc. No. 42, at 1 (third Whereas clause).

[3] Doc. No. 42, at 1 (fourth Whereas clause).

[4] Doc. No. 394 in the V.I. Bankruptcy Court, Case No. 1:15-bk-10003-MFW at 26.

[5] Doc. No. 55, Ex. A, ¶7.4(c).

4.    On August 25, 2020, EPA and Limetree Bay Terminals filed with this Court a modification to the Consent Decree (the "First Modification").[6] The First Modification made both Limetree Bay Terminals and a related company that had subsequently obtained title over the Refinery, Limetree Bay Refining, "Parties to the Consent Decree."[7]

5.    The First Modification stipulated (a) that the terms and conditions of the Consent Decree were applicable to both Limetree Bay Terminals and Limetree Bay Refining[8] and (b) that, **"effective upon the Date of Entry of the First Modification"** Limetree Bay would "be substituted for HOVENSA as the Defendant, for all provisions of the Consent Decree, including all rights, liabilities and obligations of HOVENSA, except as set forth in the First Modification."[9]

6.    The parties moved for entry of the First Modification on April 26, 2021.[10] In a press release accompanying that motion, EPA acknowledged that the First Modification "will become effective if the modification is approved by the court. Until that time, the 2011 consent decree remains in effect."[11]

---

[6] Doc. No. 12.

[7] Doc. No. 12, ¶4.

[8] Doc. No. 12, ¶1.

[9] Doc. No. 12, ¶5.a. (emphasis added). The few exceptions to the First Modification's general rule that the effective date is the Date of Entry are found in Paragraph 30, Revised Paragraph 124, of the First Modification. *See infra* footnote 25.

[10] Doc. No. 21. (The parties had attempted to request entry of the modification on April 8, 2021 (Doc. No. 19) but the filing was not accepted, see text "Notice of Corrected Docket Entry" entered on April 26, 2021.).

[11] Doc. No. 55, Ex. B. Notably, this press release was dated April 11, 2021—at a time when Limetree Bay Refinery was encountering numerous "upsets" that were spewing contaminants outside the boundaries of the Refinery.

7.      Revised Paragraph 50B of the First Modification ("Paragraph 50B") provides, in relevant part, that that if the quantity of gases sent to a flare for a fluid catalytic cracking unit ("FCCU Flare," also known as "Flare 8") exceeds certain specified amounts when Flare 8 is restarted, then Limetree Bay must design, install, operate and a flare gas recovery system to control all routinely-generated refinery fuel gases going to that flare. Paragraph 50B further provides that Limetree Bay must do so "by not later than two years from the end of the six-month period in which the gas quantity is exceeded."[12]

8.      During the months preceding the April 2021 filing of the motion for entry of the First Modification, Limetree Bay Refining resumed refining operations, including operation of the FCCU Flare. Due to numerous operational mistakes, Limetree Bay exceeded the emissions limits authorized under Limetree Bay Refining's Clean Air Act permits.[13] These emission events began on February 4, 2021, and continued intermittently through May 12, 2021.

9.      According to EPA, Limetree Bay Refining's restart of FCCU Flare in February through May of 2021 exceeded the specified emissions levels and therefore the "clock started ticking" on its obligation to install the flare gas recovery system, giving Limetree Bay Refining until March 14, 2023, to install and commence operation of the flare gas recovery system.[14]

10.     On December 21, 2021—while the motion for entry of the First Modification was still pending—the Southern District of Texas Bankruptcy Court approved the sale of Limetree Bay

---

[12] Doc. No. 42, ¶20, revised ¶50B(a)(i).

[13] These events are summarized in *Boynes v. Limetree Bay Ventures, LLC*, No. CV 2021-0253, 2023 WL 3166603, at *1–2 (D.V.I. Apr. 28, 2023).

[14] Exhibit A, letter from Myles E. Flint II, Senior Counsel, U.S. Dep't of Justice, to Matthew W. Morrison, Partner, Pillsbury Winthrop Shaw Pittman LLP (Jan. 10, 2024).

Refining's assets to Port Hamilton.[15] The Sale Order was followed by an Asset Purchase Agreement between Limetree Bay Refining and Port Hamilton.[16]

11.     On December 30, 2021, this Court entered the First Modification.[17] With that action by this Court, the First Modification went into effect.

12.     On September 21, 2023, Magistrate Judge Henderson ordered Port Hamilton to substitute for Limetree Bay Refining in these proceedings and be named as a party defendant pursuant to Federal Rule of Civil Procedure 25(c).[18] Magistrate Judge Henderson stated that in ordering Port Hamilton to join the Consent Decree as a party defendant, he was not deciding the issue of Port Hamilton's liability:

> [Port Hamilton's] concerns are with the United States' purportedly incorrect interpretation of the consent decree which, in its view, would improperly impose liability on it. But this argument is directed to liability on the merits, not to whether [Port Hamilton] should be substituted in this action. Given that substitution ordinarily does not alter the substantive rights of the parties but is merely a *procedural* device designed to facilitate the conduct of a case, this argument is premature and can be thrashed out once [Port Hamilton] becomes a party to this case.[19]

Now that it is a party defendant to the Consent Decree, Port Hamilton seeks this Court's clarification regarding its obligations under Paragraph 50B of the First Modification.

---

[15] "2021 Sale Order," Doc. No. 977 in Case No. 21-32351 in the SD/TX Bankruptcy Court.

[16] The 2021 Sale Order defined the "Purchaser" as both Port Hamilton and West Indies Petroleum Limited. 2021 Sale Order at 2. However, West Indies Petroleum Limited never acquired any of the refinery assets.

[17] Doc. No. 42.

[18] *United States v. HOVENSA,* No. 1:11-cv-00006-RAM-EAH, 2023 WL 6160084, at *6 (D.V.I. Sept. 21, 2023).

[19] *Id.* (internal quotations removed). Port Hamilton has appealed the Magistrate Judge's Order and that appeal is pending.

### III.    ARGUMENT

#### A. Standard

The purpose of a motion for clarification is to ask a court "to explain or clarify something ambiguous or vague, not to alter or amend" it. *United States v. Philip Morris USA, Inc*., 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (quotation marks omitted). A court can clarify a prior order "by applying it in a concrete context or particular factual situation." *Id*. at 168-69; *see also Int'l Rectifier Corp. v. Samsung Electronics Co.*, 361 F.3d 1355, 1359–62 (Fed. Cir. 2004) (finding the district court erred in denying appellant's motion to clarify, vacate, or modify the injunction); *Pimentel v. Dreyfus*, No. C11–119 MJP, 2011 WL 1085886, at *3–*4 (W.D. Wash. Mar. 22, 2011) (clarifying a preliminary injunction in response to motion to clarify); *Knighten v. Palisades Collections, LLC*, No. 09–CIV–20051, 2011 WL 835783, at *3 (S.D. Fla. Mar. 4, 2011) (granting motion to clarify); *Potter v. District of Columbia*, 382 F. Supp. 2d 35, 42 (D.D.C. 2005) (granting motion to clarify a preliminary injunction).

#### B. Consent Decree Obligations Are Not Enforceable Until Approved by a Court

Port Hamilton should not be obligated to install a flare gas recovery system under Paragraph 50B of the First Modification because that provision was not in effect when the relevant emissions events allegedly occurred that could have given rise to such an obligation. The First Modification did not become effective until December 30, 2021—over seven months after Limetree Bay sent refinery gases to the FCCU Flare above the levels specified in the First Modification. Because these emissions preceded the effective date of the First Modification, no legal obligation to install a flare gas recovery system could have ever been triggered.

Using the date on which the First Modification was entered by the Court ("Date of Entry") as the effective date is also consistent with established case law. Numerous courts have held that a consent decree does not have the force of law until it is approved by a court. *See, e.g., Overton*

*v. City of Austin*, 748 F.2d 941, 949 (5th Cir. 1984) (declining to grant temporary injunctive relief or writ of mandamus from parties because the district court never entered the proposed consent decree); *United States v. Atlas Lederer*, No. C-3-91-309, 2000 WL 364045, at *1 (S.D. Ohio Feb. 16, 2000) (overruling plaintiff's motion for summary judgement because the proposed consent decree, which was being held for public comment, would fully resolve the plaintiff's claims, if approved by the court).

A consent decree is distinguishable from a contract between parties because it "is also in the form of a judicial order that the parties expect will be subject to the rules generally applicable to other judgments and orders." *Holland v. N.J. Department of Corrections*, 246 F.3d 267, 277 (3d Cir. 2001). It is the court's role to review and approve proposed consent decrees, and until its review is complete, the consent decree is merely a proposal. *See Berne Corp. v. Gov't of Virgin Islands*, No. CV 2000-141, 2011 WL 13228471, at *1 (D.V.I. Jan. 22, 2011) (A consent decree "is an enforceable order of the Court" that "reflects the Court's approval of the agreement's terms and suggests that such terms are legally enforceable."); *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (en banc) (Rubin, J.) ("[T]he court, therefore, should examine [a consent decree] carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence."). For these reasons, a consent decree obligation cannot be triggered until the decree has been entered by a court and becomes enforceable.

In this case, it is uncontroverted that the emissions exceedances EPA alleges under Paragraph 50B occurred before the First Modification was entered by the Court. The Court had not completed its review of the decree to determine if the agreement was fair and should become

enforceable by law. Because the emissions occurred before the First Modification went into effect, the requirement to install a flare gas recovery system was never triggered.

**C. The Text of the First Modification also Confirms that the Requirements Under Paragraph 50B Did Not Take Effect Until They Were Entered by the Court**

Even if some consent decrees purport to create legal obligations after they are lodged but before they are entered, such is not the case here. EPA and Limetree Bay specifically agreed in the First Modification that the provisions governing the potential requirement to install a flare gas recovery system under Paragraph 50B would not take effect until the First Modification was entered by the Court. This Court should enforce those provisions as written. *See Kean v. Adler*, 65 F. App'x 408, 412 (3d Cir. 2003) ("'[I]t is axiomatic that where the language of a contract is clear and unambiguous, it must be given its plain meaning.'") (quoting *Tamarind Resort Assocs. v. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir. 1998)).

The plain language of the original Consent Decree and the First Modification show that the parties contemplated and recognized that the obligations would not take effect until the Date of Entry.[20] The Consent Decree provides that "[e]ffective from the *Date of Entry* of this Consent Decree until termination pursuant to Part XIX (Termination), HOVENSA agrees that the Refinery is covered by this Consent Decree."[21] This provision covers the entirety of the Consent Decree and incorporated modifications. Consistent with this overarching provision, the Consent Decree and

---

[20] The First Modification defines "Date of Entry of the First Modification of the Consent Decree" and "Date of Entry of the First Modification" to mean "the date on which the First Modification of the Consent Decree is approved and signed by a District Court Judge for the District of the Virgin Islands and entered in the Court docket by the Clerk of the United States District Court for the District of the Virgin Islands." (Doc. No. 42, ¶12. FFF).

[21] Doc. No. 6, ¶6 (emphasis added).

First Modification contain similar repeated statements to emphasize the understanding that obligations begin only at the Date of Entry.[22]

Other provisions similarly underscore this reading. The Consent Decree sets forth additional review procedures to indicate that, while judicial review is still pending, the Consent Decree is not enforceable, and in fact may still be rejected. The Consent Decree states:

> The Parties agree to this Consent Decree and agree that this Consent Decree ***may be entered*** upon compliance with the public notice procedures set forth at 28 C.F.R. § 50.7, and upon notice to the Court from the United States Department of Justice requesting entry of this Consent Decree. ***The United States reserves the right to withdraw or withhold its consent to this Consent Decree at any time prior to the Date of Entry*** if public comments disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate. (emphasis added).[23]

Similarly, under the public notice requirements of the Consent Decree, the public is given 30 days to comment on the Consent Decree after it is lodged,[24] and the Consent Decree provides that EPA may withdraw or withhold consent for the Consent Decree in response to any comments received. These notice provisions highlight the fact that the lodged Consent Decree is merely a proposal, subject to the Court's and public's review. Until those reviews had been completed, the Consent Decree was not in effect.

---

[22] *See, e.g.*, Doc. No. 6, ¶11 ("By no later than the Date of Entry"), ¶18 ("By no later than the Date of Entry"), ¶21 ("By no later than the Date of Entry"), ¶44 ("As of the Date of Entry"), ¶53 ("On and after the Date of Entry"), ¶59 ("After the Date of Entry"), ¶124 ("by no later than 180 Days after the Date of Entry"), ¶132 ("By no later than the Date of Entry"); Doc. No. 42, ¶8 ("As of the Date of Entry of the First Modification"), ¶29, revised ¶103, ("No later than three (3) months after the Date of Entry of the First Modification"), ¶29, revised ¶113 ("By no later than the Date of Entry of the First Modification, for all Covered Equipment"), ¶30, revised ¶124 ("by no later than 180 Days after the Date of Entry of the First Modification").

[23] Doc. No. 6, ¶224.

[24] *See* Notice of Proposed Consent Decree Under the Clean Air Act, 76 Fed. Reg. 5609, 5609-10 (Feb. 1, 2011).

Nor can EPA argue the First Modification was binding upon lodging or the execution of signatures, when the Consent Decree and First Modification expressly provide otherwise. "[T]he 'scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' or by what 'might have been written had the plaintiff established his factual claims and legal theories in litigation.'" *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)).

Although the Consent Decree and First Modification include certain obligations that are timed to the dates they were lodged with the Court ("Date of Lodging"), rather than the Date of Entry, [25] Paragraph 50B is not one of them. Moreover, even obligations under the First Modification to perform duties after the Date of Lodging but before the Date of Entry are still not enforceable unless and until the First Modification is entered. [26] But given that the default presumption that the Consent Decree and First Modification do not take effect until the Date of Entry, the Consent Decree and First Modification had to make explicit when an obligation begins

---

[25] *See, e.g.*, Doc. No. 6, ¶37 ("Effective thirty (30) Days after the Date of Lodging"), ¶78 ("On and after the Date of Lodging"), ¶81 ("As of the Date of Lodging"); Doc. No. 42, ¶27, revised ¶83 ("After the Date of Lodging of the First Modification"), ¶27, revised ¶101 ("No later than the Date of Lodging of the First Modification"), ¶30, revised ¶124 ("that are effective on or before the Date of Entry").

The First Modification also defines "Date of Lodging of the First Modification of the Consent Decree" and "Date of Lodging of the First Modification" as "the date First Modification of the Consent Decree is lodged with the United States District Court for the District of the Virgin Islands." (Doc. No. 42, ¶11. GGG).

[26] *See* Doc. No. 42, ¶48, revised ¶221 ("Obligations of Limetree Bay under this Consent Decree to perform duties after the Date of Lodging of the First Modification but prior to the Date of Entry of the First Modification shall be legally enforceable only on or after the Date of Entry of the First Modification.").

on the Date of Lodging. If that was EPA's intention with respect to Paragraph 50B, it failed to say so.

These provisions also reflect the reality that EPA knew how to draft language to impose obligations post-lodging, but it chose not to do so regarding the installation of flare gas recovery systems under Paragraph 50B. When a contract uses certain terms in some sections, but excludes them from others, the omission is considered intentional. *See Madar v. United States Citizenship & Immigration Services.,* 918 F.3d 120, 123 (3d Cir. 2019) ("Under the interpretive canon *expressio unius est exclusio alterius*, we presume that '[t]he expression of one thing implies the exclusion of others.'") (quoting Antonin Scalia & Bryan A. Garner, Reading Law 107 (2012)).

At bottom, the interpretation advanced by EPA ignores the explicit terms of the First Modification that were agreed to by the parties. The Court should interpret the First Modification as written and clarify that no obligation for installation of a flare gas recovery system was triggered.

**D. The United States' Interpretation of Paragraph 50B Would Cause Port Hamilton to Suffer Undue Hardship**

Port Hamilton is working toward restarting the Refinery soon. The restart of the Refinery will benefit the economy of St. Croix, including providing high-paying jobs for the community. In restarting the Refinery, Port Hamilton is making every effort to comply fully with all applicable environmental laws, and regulations, including those detailed in the Consent Decree and First Modification. Until there is a resolution on the obligations set forth under Paragraph 50B of the First Modification, Port Hamilton will remain unable to resume operation of the Refinery.

Port Hamilton will also face the risk of substantial penalties if it decides to proceed with a restart of the Refinery absent greater clarity on its obligations under the First Modification. If Port Hamilton fails to meet the terms of the First Modification and EPA pursues an enforcement action,

Port Hamilton could face claims for stipulated penalties as high as $5,000 per day per violation or 1.2 times any economic benefit EPA may allege, in addition to other civil penalties EPA might pursue. [27] These could quickly accrue to millions of dollars, which could prevent Port Hamilton from resuming operations at the Refinery at all.

## CONCLUSION

For the foregoing reasons, Port Hamilton hereby requests that the Court issue an Order clarifying the Consent Order in accordance with the language of the attached Proposed Order.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**

Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: March 29, 2024

/s/ Andrew C. Simpson
Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

---

[27] Doc. No. 42, ¶41, revised ¶162(A)-(C).

13